Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
GUTNICKI LLP
10440 N. Central Expressway, Suite 800
Dallas, Texas 75231
Telephone: (469) 895-4413
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

Max Schlan (*Pro Hac Vice* Pending)
Ren-Ann Wang (*Pro Hac Vice* Pending)
GUTNICKI LLP
45 Rockefeller Plaza, Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com
rwang@gutnicki.com

*Proposed Counsel to Debtors and Debtors in Possession*

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOMMY'S FORT WORTH, LLC, *et al.*,[1] | ) | Case No. 24-90000 |
| | ) | |
| Debtors. | ) | (Joint Administration Requested) |
| | ) | |

**DEBTORS' <u>EMERGENCY</u> MOTION FOR ENTRY OF INTERIM
AND FINAL ORDERS AUTHORIZING PAYMENT OF (I) CERTAIN PREPETITION
WORKFORCE CLAIMS, INCLUDING WAGES, SALARIES, AND OTHER
COMPENSATION, (II) CERTAIN EMPLOYEE BENEFITS AND CONFIRMING
RIGHT TO CONTINUE EMPLOYEE BENEFITS ON POSTPETITION BASIS, (III)
REIMBURSEMENT TO EMPLOYEES FOR PREPETITION EXPENSES, (IV)
WITHHOLDING AND PAYROLL RELATED TAXES (V) WORKER'S
<u>COMPENSATION OBLIGATIONS, AND (VI) GRANTING RELATED RELIEF</u>**

**EMERGENCY RELIEF HAS BEEN REQUESTED. RELIEF IS
REQUESTED NOT LATER THAN 1:30 P.M. (CENTRAL TIME) ON MAY
28, 2024.**

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

**IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH.  OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON MAY 28, 2024, AT 1:30 P.M. (CENTRAL TIME) IN ROOM 204, UNITED STATES BANKRUPTCY COURT FOR THE NORTHERN DISTRICT OF TEXAS, 501 W. 10TH STREET, FORT WORTH, TX 76102.**

**YOU MAY PARTICIPATE IN THE HEARING EITHER IN PERSON OR BY AND AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT (650) 479-3207. VIDEO COMMUNICATION WILL BE BY USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MORRIS' HOME PAGE.[2] THE MEETING CODE IS 2309-445-3213. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARING. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE MORRIS' HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

The above-captioned debtors and debtors in possession (the "**Debtors**" or "**Tommy's**") hereby move this Court (this "**Motion**") for entry of an interim order, in substantially the form attached hereto as **Exhibit A** (the "**Interim Order**") pursuant to sections 105(a), 363(b), 507, 1107(a), and 1108 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**"); authorizing,

---

[2] HTTPS://US-COURTS.WEBEX.COM/MEET/MORRIS

but not directing, the Debtors to (i) pay accrued prepetition wages, salaries, and other compensation to their Workforce (as defined below); (ii) honor any prepetition obligations in respect of, and continue in the ordinary course of business until further notice (but not assume), certain of the Debtors' paid time off policies, and employee benefit plans and programs, as described below; (iii) reimburse Employees (as defined below) for prepetition expenses that Employees incurred on behalf of the Debtors in the ordinary course of business on a prepetition basis; (iv) pay all related prepetition payroll taxes and other deductions; (v) honor worker's compensation and related obligations; and (vi) pay any prepetition claims of administrators and providers in the ordinary course of business to the extent that any of the foregoing programs are administered, insured, or paid through a third-party administrator or provider. In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Monica S. Blacker in Support of the Chapter 11 Petitions and First Day Pleadings* [Dkt. No. 23] (the "**First Day Declaration**") and the *Supplemental Declaration of Monica S. Blacker in Support of Chapter 11 Petitions and First Day Pleadings* (the "**Supplemental Declaration**")[3], to be filed before the May 28, 2024 hearing. In further support of this Motion, the Debtors, by and through their undersigned counsel, respectfully represent as follows:

<u>**JURISDICTION AND VENUE**</u>

1.      This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334. This is a core proceeding under 28 U.S.C. § 157(b). The Debtors consent to entry of a final order under Article III of the United States Constitution.

2.      Venue is proper in this District under 28 U.S.C. §§ 1408 and 1409.

---

[3] Capitalized terms used but not otherwise defined in this Motion shall have the meaning set forth in the First Day Declaration and the Supplemental Declaration.

3.     The statutory predicates for the relief requested herein are Bankruptcy Code §§ 105(a), 363(b), and 507, and Bankruptcy Rules 6003 and 6004, rules 9007-1 and 9013-1 of the Local Bankruptcy Rules of the United States Bankruptcy Court for the Northern District of Texas (the "**Local Rules**"), and the *General Order Regarding Procedures for Complex Chapter 11 Cases* (the "**Complex Case Procedures**").

## EMERGENCY CONSIDERATION

4.     In accordance with the N.D. Tex. L.B.R. and Complex Case Procedures, the Debtors request emergency consideration of this Motion.  The Debtors submit that emergency relief in connection with this Motion is essential to the success of these Cases.  As discussed in detail below and in the Supplemental Declaration (as defined below), any delay in granting the relief requested could hinder the ultimate success of the Debtors' chapter 11 cases and cause immediate and irreparable harm.  As such, the Debtors believe that emergency consideration is necessary and request that this Motion be heard at the Debtors' second-day hearings.

## RELIEF REQUESTED

5.     By this Motion, the Debtors request entry of the Interim Order, substantially in the form of **Exhibit A**, respectively, attached hereto, authorizing, but not directing, the Debtors to (a) pay prepetition claims and honor obligations incurred or related to the Compensation Obligations, the Withholding Obligations, the Commission Programs, PTO, Sick Leave, Holiday Pay, the Reimbursable Expense Obligations, the Employee Benefits Obligations, Workers' Compensation Claims, and all fees and costs incident to the foregoing, including amounts owed to third-party administrators (including the Administrative Fee Obligations) (collectively, the "**Employee Obligations**"), and (b) maintain, continue, and honor, in the ordinary course of business, the Commission Programs, PTO, Sick Leave, and Holiday Pay policies, postpetition Reimbursable

4

Expense Obligations, the Employee Benefits Plans, and the Workers' Compensation Claims (collectively, the "**Employee Plans and Programs**").

6.      To enable the Debtors to implement the relief requested, the Debtors also request that the Court authorize all applicable banks and financial institutions (collectively, the "**Banks**"), and BambooHR (together with the Banks, the "**Processors**"), to receive, process, honor, and pay all checks presented for payment and all electronic payment requests made by the Debtors relating to the Employee Obligations and the Employee Plans and Programs, whether such checks were presented or electronic-payment requests were submitted prior to or after the Petition Date.[4]

## BACKGROUND

### A.  GENERAL BACKGROUND

7.      The Debtors are the largest Ski and Wake dealer globally and one of the largest pontoon dealers in North America. The Debtors' dealerships offer a full suite of boat repair services, rental services, and retail goods and apparel. The Debtors currently operate 14 dealerships in eight (8) states. A decline in boat sales, the failure of the Debtors' business relationship with Malibu Boats, and the mismanagement of the Debtors' assets by a state court receiver appointed at the request of the Debtors' lender, M&T Bank, has culminated in these Cases, through which the Debtors aim to implement a sale to a strategic buyer and an orderly liquidation.

8.      On May 20, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition in this Court commencing a case for relief under chapter 11 of the Bankruptcy Code (the "**Cases**"). The Debtors continue to manage and operate their business as debtors in possession pursuant to Bankruptcy Code §§ 1107 and 1108. These Cases have been consolidated for

---

[4] Concurrently herewith, the Debtors have filed a motion for authority to, among other things, continue utilizing their cash management system.

procedural purposes only and are being administered jointly. No trustee or examiner has been

requested in these Cases and no official committee of creditors has yet been appointed in the Cases.

9.     Additional factual background regarding the Debtors and these Cases, including the

Debtors' business operations, capital structure, financial condition, and the reasons for and

objectives of these chapter 11 cases is set forth in detail in the First Day Declaration and the

Supplemental Declaration, which are fully incorporated herein by reference.

**B.   THE DEBTORS' WORKFORCE AND RELATED OBLIGATIONS**

10.     In connection with the operation of their businesses, as of the Petition Date, the

Debtors employ approximately: 279 employees consisting of 91 full-time, salary employees, 170

full-time, hourly employees, 18 part-time hourly employees (collectively, the "**Employees**" or

"**Workforce**"). The Employees are employed at the Debtors' fourteen (14) dealerships located

throughout the United States (each a "**Dealership**" and collectively the "**Dealerships**"). None of

the Employees are represented by a union or are subject to a collective bargaining agreement.

11.     The Employees are critical to the Debtors' business, and their value cannot be

overstated. The Debtors rely on the services of employed personnel to conduct their business

operations, and the Debtors incur obligations to or on account of such Employees in the ordinary

course of business. The Employees perform a wide variety of functions that support the Debtors'

operations and will be critical to the administration of these Cases and to maximizing the value of

the Debtors' estates. Their skills, knowledge, and understanding of the Debtors' operations are

essential to preserving operational stability and efficiency during these Cases. Without the

continued, uninterrupted services of the Employees, the Debtors' business operations will suffer

immediate and irreparable harm.

12.     If the Debtors cannot assure their Employees that they will promptly pay prepetition Employee Obligations (as defined below) to the extent allowed under the Bankruptcy Code, and continue to honor, as applicable, the Employee Benefits Obligations (as defined below), certain Employees will likely seek employment elsewhere. The loss of Employees at this critical juncture would have a material adverse impact on the Debtors' business and ability to maximize value through these Cases.

13.     The vast majority of the Employees rely exclusively on their compensation and benefits from the Debtors to pay their daily living expenses and support their families. Thus, the employees will be exposed to significant personal financial hardship if the Debtors are not permitted to continue paying their compensation and providing benefits in the ordinary course. Consequently, the relief requested herein is necessary and appropriate.

14.     In the ordinary course of business, the Debtors incur payroll and other compensation obligations for their Workforce. The Debtors also provide other benefits to their Employees for the performance of services. These benefits and obligations are described in more detail below.

### C. WORKFORCE COMPENSATION OBLIGATIONS

#### i.  *Employee Compensation Obligations*

15.     In the ordinary course of business, the Debtors incur payroll obligations to their Employees, comprised generally of salaries and wages. Approximately 91 Employees are paid a salary and approximately 188 Employees are paid on an hourly basis, and of the 279 Employees, 78 are also paid based on commission or other incentive-based program.

16.     The Debtors' Employees are paid in arrears on a biweekly basis for pay periods of fourteen (14) days. Immediately following each regular pay date, Employees are owed

7

approximately one week of earned but unpaid compensation, and payroll obligations are funded by Debtors approximately one (1) day before each regular pay date.

17.     On average, per pay date, the Debtors' payroll obligations with respect to the Employees is approximately $500,000.00, plus applicable employer-paid payroll taxes of approximately $40,000.00 related to such earnings. Additionally, these estimates include employer contributions for 401k matching. The last payroll date before the Petition Date was approximately May 17, 2024, and the Debtors paid payroll obligations for work completed through May 11, 2024. The next payroll date will be May 31, 2024, and the Debtor's payroll obligations will include work completed from May 12, 2024 through May 25, 2024.

18.     The Debtors estimate that as of the Petition Date, approximately $522,000.00 has accrued and remains unpaid, which includes gross wages and compensation earned, approximately $156,000.00 in Commission (defined hereinafter),  and employer-paid payroll taxes related to such earnings (the "**Employee Compensation Obligations**"). To the best of the Debtors' understanding, no Employee is owed more than $15,150.00 in accrued and unpaid general prepetition wages or salaries; thus, falling below the priority cap.[5] Nevertheless, if it appears an Employees is owed more than the priority cap, this Motion seeks to pay wages only up to the $15,150.00 priority cap.

19.     The Debtors seek authorization, but not direction, to pay any unpaid Employee Compensation Obligations. In addition, the Debtors seek authority to cause any prepetition checks or electronic payment requests that were given in payment of Employee Compensation Obligations

---

[5] To the extent that any Employee is owed more than $15,150.00, the Debtors will seek the authority to pay such amounts by separate motion pursuant to Bankruptcy Code § 502.

to be honored and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

### ii.    *Administrative Fee Obligations*

20.    The Debtors use BambooHR Software, Inc. ("**BambooHR**") to process their payroll and coordinate the payment of Withholding Obligations (as defined below). BambooHR will play a crucial role for the Debtors, effectively providing the Debtors with a comprehensive HR back-office system, including the management of all Employee data, payroll processing, recruiting services, tax filings, time and attendance services, self-service benefits administration, and a review and compensation module.

21.    BambooHR's services are imperative to the smooth functioning of the Debtor's business and payroll system. On average, the Debtors have paid BambooHR approximately $9,000.00 per month, which includes $3,900.00 per month for the platform itself plus payroll processing fees. The Debtors do not expect this will increase and believe it could even decrease. As of the Petition Date, the Debtors estimate that they owe BambooHR approximately $2,983.00 in outstanding fees in connection with BambooHR's services.

22.    The Debtors seek authorization, but not direction, to pay all unpaid administrative fee obligations due to the Third Party Administrators (collectively, the "**Administrative Fee Obligations**") and to continue paying the Administrative Fee Obligations postpetition in the ordinary course of business. In addition, the Debtors seek authority to cause any prepetition checks or electronic payment requests that were given in payment of Administrative Fee Obligations to be honored and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

### iii.    Withholding Obligations

23.    For each applicable pay period, the Debtors routinely deduct certain amounts directly from Employees' paychecks, including, without limitation, pre- and after-tax deductions payable pursuant to certain of the Employees' benefit plans programs, policies and arrangements, including, but not limited to, those discussed herein, including an Employee's share of health care benefits and insurance premiums, legally-ordered deductions, and other miscellaneous deductions (collectively, the "**Deductions**"). The Debtors withhold approximately $32,000.00 per month in the aggregate from Employees' wages on account of Deductions, which the Debtors remit to the appropriate third-party recipients and/or retain on account of "self-insured" benefit and insured benefit programs as further described below.

24.    In connection with the salaries and wages paid to Employees, the Debtors are required by law to withhold amounts related to federal, state, and local income taxes, as well as social security and Medicare taxes from Employees' wages (collectively, the "**Employee Withholding Taxes**") and to remit the same to the applicable taxing authorities. In addition, the Debtors are required to make matching payments from their own funds for, among other things, social security and Medicare taxes and to pay, based on a percentage of gross payroll, state, and federal unemployment insurance, employment training taxes, and state disability insurance contributions (the "**Employer Payroll Tax Obligations**," and together with Employee Withholding Taxes, the "**Payroll Tax Obligations**"). Each pay cycle, the Debtors withhold any applicable Employee Withholding Taxes from the Employees' wages, and BambooHR remits (and BambooHR will remit) the same to the applicable taxing authorities. The Debtors withheld approximately $296,245.00 for April 2024 Employee Withholding Taxes. The amounts in satisfaction of the Payroll Tax Obligations have historically been transferred to BambooHR in

advance of the relevant payroll processing day and, going forward, the Debtors will transfer such amounts to BambooHR.

25.     The Debtors seek authorization, but not direction, to continue to make the Deductions and satisfy the Payroll Tax Obligations and Dues (collectively, the "**Withholding Obligations**") and to remit amounts withheld on behalf of third parties postpetition in the ordinary course of business.

### D.  COMMISSION PROGRAMS

26.     In the ordinary course of business, the Debtors have typically maintained performance-based commission and bonus programs for certain categories of Employees (collectively, the "**Commission Program(s)**"). The Commission Program is based on a percentage of Gross Profit on sales, plus discretionary extras to boost sales (the "**Commission**"). The Commissions earned are paid at the end of the next month. For instance, the Commissions due on May 31st are for sales made in April of 2024.

27.     Approximately 78 Employees are eligible to receive compensation under the Commission Programs. As of the Petition Date, the Debtors estimate that they owe $225,000.00 on account of the Commission Program available to eligible Employees. That amount includes $156,000 to be paid on the May 31, 2024 payroll, and the remainder is an estimate for what will be due at the end of June for commissions earned in May up to the Petition Date.

28.     For those Employees who receive them, the Commissions earned under the Commission Programs are an important aspect of their overall compensation. Maintaining historical prepetition practices regarding the Commission Programs is essential to ensuring that the Debtors can retain their Employees and continue to operate their business and maximize value through the duration of these Cases. Therefore, the Debtors seek authority, but not direction, to

honor their obligations under the Commission Programs and to maintain the Commission Programs in the ordinary course of the Debtors' business.

### E. PTO, HOLIDAY PAY, AND SICK LEAVE

29.     The Debtors offer their full-time Employees paid time off ("**PTO**"), which encompasses vacation, sick, and personal days. The Debtors also offer holiday pay ("**Holiday Pay**"). These programs are typical and customary, and continuing to offer them is necessary for the Debtors to retain Employees during the reorganization or sale process.

30.     There are two separate PTO policies applicable to the Employees: (a) the Salaried-Exempt PTO Policy (the "**Salaried PTO Policy**"), and (b) the Hourly PTO Policy. The Salaried PTO Policy is applicable to all salaried full-time employees and the Hourly PTO Policy is applicable to all hourly, full-time employees.

31.     The Debtors' paid time off policies are summarized below:

    a.  <u>Salaried PTO Policy</u>: This PTO Policy allows salaried exempt employees to take as much pre-planned time off as they need. The employees, however, must submit requests for time off with as much advance notice as possible, and the managers can consider rejecting vacation requests if: (i) other team members with similar or complementary duties have already asked for pre-planned time off during the same time; (ii) the time in question is too busy or includes an important deadline for the Employee asking for pre-planned time off; or (iii) an Employee appears to abuse the policy.

    b.  <u>Hourly PTO Policy</u>: This PTO Policy encompasses vacation, sick, and personal days, and is awarded based on time worked. PTO accrual rates increase as years of service with the company rise with a maximum of 200 hours allowed per year. With up to 40 hours of PTO carried over every year.

The following chart shows the accrual rates for PTO:

| Employment Year | Accrual Per Hour | Est. PTO Hours Accrued Per Year | Week Equivalent |
|---|---|---|---|
| 0 | 0.0385 | 80 | 2 |
| 1 | 0.0425 | 88 | 2.2 |
| 2 | 0.0465 | 96 | 2.4 |
| 3 | 0.0505 | 104 | 2.6 |
| 4 | 0.0545 | 112 | 2.8 |
| 5 | 0.0585 | 120 | 3 |
| 6 | 0.0625 | 128 | 3.2 |
| 7 | 0.0665 | 136 | 3.4 |
| 8 | 0.0705 | 144 | 3.6 |
| 9 | 0.0745 | 152 | 3.8 |
| 10 | 0.0785 | 160 | 4 |
| 11 | 0.0825 | 168 | 4.2 |
| 12 | 0.0865 | 176 | 4.4 |
| 13 | 0.0905 | 184 | 4.6 |
| 14 | 0.0945 | 192 | 4.8 |
| 15 | 0.0985 | 200 | 5 |

    c.   <u>Holiday Pay</u>: In the ordinary course of business, the Debtors provide certain other paid and unpaid leave, including holidays, and leave provided for under the Family Medical Leave Act, and all legally required leaves. Eligible full-time employees qualify for Holiday Pay for Thanksgiving Day, Christmas Day and New Year's Day even though Tommy's is closed on those days. Eligible full-time employees also qualify for Holiday Pay in addition to their hours worked for Memorial Day, 4th of July, and Labor Day.

32.     The Debtors believe that the continuation of the PTO Policies and the Holiday Pay and other leave benefits in the ordinary course of business and consistent with past practices is essential to maintaining Employee moral during these chapter 11 cases. The Debtors request that they be authorized, but not directed, to continue to honor their PTO and Holiday Pay policies going forward, including during the administration of these Cases. The Debtors also request authority to pay any PTO and Holiday Pay that accrued prepetition.

### F.   REIMBURSABLE EXPENSE OBLIGATIONS

33.     Prior to the Petition Date, in the ordinary course of business, the Debtors reimbursed Employees for reasonable and legitimate expenses incurred on behalf of the Debtors

in the scope of the Employee's employment ("**Reimbursable Expense Obligations**"). Reimbursable Expense Obligations typically include expenses for, among other things, air travel, meals, parking, mileage, and certain other business and travel-related expenses. All such expenses are incurred with the applicable Employee's understanding that he or she will be reimbursed by the Debtors in accordance with the Debtors' reimbursement policy, as described in more detail below. In all cases, reimbursement is contingent on the Debtors' determination that the charges are for legitimate, reimbursable business expenses.

34.     The Debtors process expense and reimbursement claims on a rolling basis. Generally, the Debtors try to reimburse everything submitted on the following payroll cycle. As such, it is difficult for the Debtors to determine the exact amount of Reimbursable Expense Obligations outstanding as of the Petition Date because, among other things, Employees may have expenses that they have yet to submit to the Debtors for reimbursement. On average, over the past year, the Debtors have paid approximately $15,000.00 per month on account of Reimbursable Expense Obligations. To the extent that any Reimbursable Expense Obligations are outstanding, the Debtors request the authority to reimburse Employees. In addition, the Debtors seek authority to cause any prepetition checks or electronic payment requests that were given in reimbursement of Reimbursable Expense Obligations to be honored and to reissue any check or electronic payment request that is not cleared by the applicable bank or other financial institution, to the extent necessary.

35.     The Reimbursable Expense Obligations are ordinary course expenses that the Debtors' Employees incur in performing their job functions, including all expenses incurred on corporate credit cards. It is essential to the continued operation of the Debtors' business that the

14

Debtors be permitted to continue reimbursing or making direct payments on behalf of Employees for such expenses.

36.     Indeed, Employees incurred the Reimbursable Expense Obligations as business expenses on behalf of the Debtors and with the understanding that they would be reimbursed. To avoid harming Employees who incurred the Reimbursable Expense Obligations, the Debtors request authority, but not direction, to satisfy all prepetition Reimbursable Expense Obligations to the extent Employees have paid for such expenses directly from their own funds or are otherwise personally liable for such expenses. The Debtors also seek authority to continue their reimbursement policy and corporate cards policy in the ordinary course of business during the administration of these Cases.

### G. EMPLOYEE BENEFIT PROGRAMS

37.     In the ordinary course of business, the Debtors implement various benefit plans and policies for their Employees that can be divided into the following categories, all as are described in more detail below: (a) medical and health care benefits, including, but not limited to, telephone health consultation, supplemental medical expense insurance coverage, health savings accounts, health reimbursement arrangements and employee and dependent preventive care benefit plan (the "**Medical Plans**"), dental care (the "**Dental Plan**"), and vision care (the "**Vision Plan**," and collectively, with the Medical Plans, and the Dental Plan, the "**Health Plans**"); (b) employee paid Critical Illness, Accidental Death or Hospitalization insurance, optional life insurance, short and long term disability insurance, and other voluntary insurance plans (collectively, the "**Income Protection Plans**"); and (c) 401(k) retirement savings plan (the "**401(k) Plan**") (the 401(k) Plan and the Income Protection Plans with the Health Plans are collectively the "**Employee Benefits Plans**"). In certain instances, the Debtors deduct specified amounts from the participating

Employees' wages in connection with the Employee Benefits Plans. All obligations with respect to the Employee Benefits Plans are hereinafter referred to as the "**Employee Benefits Obligations**."

        *(a) Health Plans*

38.      Employee contributions to the Health Plans have been and are collected through payroll deductions from participating Employees. The Debtors believe that it is necessary and appropriate to continue to honor their obligations to current and former Employees under the Health Plans. The Debtors request authority, but not direction, to pay all prepetition amounts due under the Health Plans. The Debtors also request authority, but not direction, to continue to offer the Health Plans and honor their obligations thereunder in the ordinary course of business during the administration of these Cases.

    a.   <u>Medical Plans</u>. The Debtors offer Employees and eligible dependents compressive medical coverage through Blue Cross Blue Shield or Blue Care Network of Michigan ("**BCBS**"). The Debtors also offer a health savings account service through Lively. Approximately 164 Employees are enrolled in Medical Plans with BCBS. Approximately 58 Employees participate in the health savings account offering. Not including employee contributions, the Debtors pay BCBS approximately $94,150.00 per month in connection with the Medical Plans. Finally, the Debtors offer a telemedicine program that is included as a benefit the BCBS medical plan.

    b.   <u>COBRA.</u> The Debtors maintain an account with BCBS to provide health insurance benefits under the Consolidated Omnibus Budget Reconciliation Act ("**COBRA**") to certain employees who have been terminated from

coverage and participated in one of the other Health Plans prior to such termination. There are currently no former employees who participate in COBRA insurance. The Debtors do not owe any administrative fees to BCBS in connection with the COBRA insurance program. The Debtors seek authority to continue the COBRA insurance program.

c.  Dental Plan. The Debtors offer their Employees dental insurance administered through Delta Dental of Michigan (the "**Dental Plan**"). Approximately 166 Employees are enrolled in the Dental Plan and the Debtors pay a part of the Dental Plan policy premiums. As of the Petition Date, the Debtors owe $3,291.48 to Delta Dental.

d.  Vision Plan. The Debtors offer their Employees vision insurance administered through Mutual of Omaha ("**MoO**") (the "**Vision Plan**"). Approximately 151 Employees are enrolled in the Vision Plan and these Employees satisfy 100% of the Vision Plan policy premiums. Thus, the Debtors do not owe any amount in connection with the Vision Plan.

### (b) Income Protection Plans

39.    The Debtors maintain certain Income Protection Plans including certain policies providing coverage for Critical Illness, Accidental Death or Hospitalization through Mutual of Omaha. Additionally, the Debtors offer long-term and short-term disability and voluntary life insurance. All full-time Employees are offered such coverage through MoO, the following chart shows approximately the number of employees enrolled in the programs:

| Coverage Type | Number of Employees Enrolled | Voluntary |
|---|---:|---|
| Accident Insurance | 87 | Voluntary |
| Basic Employee Life & AD&D | 249 | Employer Provided |
| Basic Long Term Disability | 249 | Employer Provided |
| Voluntary Child Life | 17 | Voluntary |
| Voluntary Employee Life | 63 | Voluntary |
| Voluntary Long Term Disability | 68 | Voluntary |
| Voluntary Short Term Disability | 72 | Voluntary |
| Voluntary Spouse Life | 15 | Voluntary |

40.     As of the Petition Date, the Debtors estimate that approximately $14,874.65 has accrued and remains outstanding on account of the Income Protection Programs as well as the other applicable Employee Benefits Plans outlined below for all Employees.

### (c) Employee Assistance Program

41.     The Debtors offer their Employees an EAP help line administered through MoO. The Debtors seek authority, but not direction, to continue with the EAP in place prior to the Petition Date in the ordinary course and honor any payments owed by the Debtors with respect to the EAP, regardless of when they arose.

### (d) 401(k) Plan

42.     The Debtors provide all eligible Employees with the ability to participate in a 401(k) retirement savings plan (the "**401(k) Plan**"), which is administered by Transamerica. The

Debtors pay Transamerica a quarterly administrative fee in the ordinary course of business in connection with the 401(k) Plan (the "**401(k) Administrative Fees**").

43.     Employees are generally eligible to participate in the 401(k) Plan after completing 90 days of employment at the Debtors. Currently, 225 Employees are enrolled in the 401(k) Plan. The 401(k) Plan generally provides for pre-tax deductions of compensation up to limits set by Internal Revenue Code, as well as for certain post-tax deductions. Employee contributions to the 401(k) Plan are deducted automatically from each paycheck and transferred to a trust established under the 401(k) Plan (collectively, the "**401(k) Deductions,**" and together with the 401(k) Administrative Fees, the "**401(k) Obligations**").

44.     The Debtors seek authority to remit and/or pay the Unpaid 401(k) Obligations in the ordinary course of business, consistent with past practices, and, out of an abundance of caution, to continue remitting and/or paying the 401(k) Obligations on a postpetition basis in the ordinary course of business.

### H.  WORKERS' COMPENSATION PROGRAM

45.     The Debtors maintain workers' compensation insurance for their Workforce. The Debtors maintain workers' compensation coverage and the Injury Benefit Plan ("**Workers' Compensation Insurance**") for claims ("**Workers' Compensation Claims**") through Nationwide Agriculture ("Nationwide") on a self-insured basis (together, the "**Workers' Compensation Insurers**"). As of the Petition Date, there are eight (8) open Workers' Compensation Claims.

46.     The Debtors seek authority, but not direction, to pay any Workers' Compensation Claims in the ordinary course and honor payments owed with respect to the Workers' Compensation Claims regardless of when such obligations arose.

**BASIS FOR RELIEF**

47.    The Debtors' ability to successfully operate is contingent on a reliable and loyal Workforce. It is essential to assure the Employees that the Debtors will honor the Employee Obligations and continue to maintain the Employee Plans and Programs in the ordinary course of business throughout these Cases. A failure to promptly do so will create concern and discontent among the Employees and could lead to resignations or, in the case of Contract Workers, the decision to not complete work for the Debtors or accept future hiring proposals. The loss of even a few key personnel would immediately and irreparably harm the Debtors' ability to conduct their business to the detriment of all interested parties.

48.    Therefore, pursuant to Bankruptcy Code §§ 105(a), 363, 507, 1107(a), and 1108, the Debtors seek authority to pay the Employee Obligations and to maintain and continue the Employee Plans and Programs in the ordinary course of business and exercise of their business judgment. This relief is necessary to retain the Workforce, the loss of which would disable the Debtors' business.

**A.  THE EMPLOYEE OBLIGATIONS ARE ENTITLED TO PRIORITY TREATMENT**

49.    Bankruptcy Code § 507(a)(4)(A) grants priority status to up to $15,150 for employee claims for "wages, salaries, or commission, including vacation, severance, and sick leave pay" earned within 180 days before the Petition Date. *See* 11 U.S.C. § 507(a)(4)(A). Similarly, Bankruptcy Code § 507(a)(5) grants priority to contributions to employee benefit plans, up to an aggregate amount of $15,150 multiplied by the number of employees covered, less any amounts paid to such employees under Bankruptcy Code § 507(a)(4).

50.    Indeed, "[w]age priority has been a feature of the bankruptcy law since 1898." *In re Garden Ridge Corp.*, No. 04-10324 (KJC), 2006 WL 521914, at *2 (Bankr. D. Del. Mar. 2,

2006) (citing 4 Alan N. Resnick & Henry J. Sommer, *Collier on Bankruptcy* ¶ 507.05[1] (15th ed. 2005)). Its purpose is to "alleviate hardship on workers . . . who may have no other source of income and "to encourage employees to stand by an employer in financial difficulty." *Id.* (citing *Collier on Bankruptcy* ¶ 507.05[1]). This priority extends to certain other "benefits that are considered akin to compensation, such as vacation, severance and sick leave pay." *Id.*

51.    The Debtors believe that the Employee Obligations relating to the period prior to the Petition Date constitute priority claims under Bankruptcy Code §§ 507(a)(4) and (5). Amounts that are paid on account of priority claims for the majority of the Employee Obligations would not otherwise be available for distribution to unsecured creditors. Therefore, the Debtors' unsecured creditors will not be prejudiced by permitting priority obligations to be satisfied in the ordinary course of business during the Cases rather than at the conclusion of the Cases. Indeed, the Debtors submit that payment of Employee Obligations at this time enhances value for the benefit of the Debtors and all interested parties by retaining the Workforce. The Debtors believe that honoring the Employee Obligations is important to sustain morale for the current Workforce and ensure their retention.

## B.    PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE  §§ 1107 AND 1108.

52.    The Debtors, operating their businesses as debtors in possession under Bankruptcy Code §§ 1107(a) and 1108, are fiduciaries "holding the bankruptcy estate and operating the business for the benefit of its creditors and (if the value justifies) equity owners."  *In re CoServ, LLC*, 273 B.R. 487, 497 (Bankr. N.D. Tex. 2002). "Implicit in the duties" of a chapter 11 debtor in possession is the duty "to protect and preserve the estate, including an operating business's going-concern value." *Id. See also Official Comm. of Unsecured Creditors of Cybergenics Corp.*

*ex rel. Cybergenics Corp. v. Chinery*, 330 F.3d 548, 573 (3d Cir. 2003); *In re Mushroom Transp. Co., Inc.*, 382 F.3d 325, 339 (3d Cir. 2004).

53.     Courts have noted that there are instances in which a debtor in possession can fulfill its fiduciary duty "only . . . by the preplan satisfaction of a prepetition claim." *In re CoServ, LLC*, 273 B.R. at 497. The *CoServ* Court specifically noted that preplan satisfaction of prepetition claims is a valid exercise of a debtor's fiduciary duty when the payment "is the only means to effect a substantial enhancement of the estate." *Id.* The court provided a three-pronged test for determining whether a preplan payment on account of a prepetition claim is a valid exercise of a debtor's fiduciary duty:

> First, it must be critical that the debtor deal with the claimant. Second, unless it deals with the claimant, the debtor risks the probability of harm, or, alternatively, loss of economic advantage to the estate or the debtor's going concern value, which is disproportionate to the amount of the claimant's prepetition claim. Third, there is no practical or legal alternative by which the debtor can deal with the claimant other than by payment of the claim.

*Id.* at 498.

54.     Payment of the Employee Obligations as set forth herein meets each element of the *CoServ* Court's standard. The Debtors' business is complex and depends on the skill and expertise of the Debtors' Employees. The Employees possess unique knowledge regarding specific aspects of the Debtors' business, which would be virtually irreplaceable should such Employees be lost through a failure to pay the Employee Obligations. In addition, any failure by the Debtors to pay the Employee Obligations as set forth herein would negatively impact the morale of the Workforce at a critical time for the Debtors and their business when the Workforce is most needed. The Workforce is also critical to the Debtors' ability to maintain their business consistent with past practices, which would be impossible without the continued efforts of the Workforce. The damage to the value of the Debtors' business and, hence, the costs to creditors as a whole, would be

22

immediate and irreparable if the Employee Obligations were not met. In short, the potential harm and economic disadvantage that would stem from the failure to pay the Employee Obligations as set forth herein greatly outweighs the amount of any prepetition claims that the Debtors are seeking authorization to pay.

55.     After careful consideration, the Debtors have determined in their business judgment that to avoid significant disruption to their business there exists no practical or legal alternative to the payment of the Employee Obligations as set forth herein. Therefore, the Debtors can meet their fiduciary duties as debtors in possession under Bankruptcy Code §§ 1107(a) and 1108 only by payment of the Employee Obligations as set forth herein.

### C. PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 541.

56.     The Debtors also seek authority to pay the Withholding Obligations to the appropriate entities. These amounts principally represent the Employees' earnings that governments, the Employees, and the judicial authorities have designated for deduction from the Employees' paychecks. Indeed, certain Withholding Obligations are not property of the Debtors' estates because the Debtors have withheld such amounts from Employees' paychecks on another party's behalf. *See* 11 U.S.C. § 541. *See also City of Farrell v. Sharon Steel Corp. (In re Sharon Steel Corp.)*, 41 F.3d 92, 95 (3d Cir. 1994) (observing the "well-settled principle that debtors do 'not own an equitable interest in property . . . [they] hold[] in trust for another,' and that therefore funds held in trust are not 'property of the estate'") (quoting *Begier v. IRS*, 496 U.S. 53, 59 (1990)).

57.     Further, federal and state laws require the Debtors to withhold certain tax payments from Employees' paychecks and to pay such amounts to the appropriate taxing authority. *See* 26 U.S.C. §§ 6672 and 7501(a). S*ee also Old Republic Nat'l Title Ins. Co. v. Tyler (In re Dameron)*, 155 F.3d 718, 721 (4th Cir. 1998) (holding that deposits subject to an express trust are excluded

from the bankruptcy estate); *In re Sharon Steel Corp.*, 41 F.3d at 95-97 (finding that state law requiring a corporate debtor to withhold city income tax from its employees' wages created a trust relationship between debtor and the city for payment of withheld income taxes); *In re DuCharmes & Co.*, 852 F.2d 194, 196 (6th Cir. 1988) (noting that individual officers of a company may be held personally liable for failure to pay trust fund taxes). A failure to pay over these amounts could subject the Debtors and their officers and directors to liability. *See, e.g.*, John F. Olson, et al., Director & Officer Liability: Indemnification and Insurance § 3:21 (2003).

58.     To avoid the potential of such liability, and because the Withholding Obligations are not property of the Debtors' estates, the Debtors request that the Court authorize them to remit these amounts to the appropriate parties in the ordinary course of business.

**D.  PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 363.**

59.     Bankruptcy Code § 363(b)(1) provides that a debtor may "after notice and a hearing, use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). A debtor's decision to use, sell, or lease assets outside the ordinary course of business must be based upon that debtor's sound business judgment. *See Official Comm. of Unsecured Creditors of LTV Aerospace & Def. Co. v. LTV Co. (In re Chateaugay Corp.)*, 973 F.2d 141, 143 (2d Cir. 1992) (holding that a court determining an application pursuant to section 363(b) must find from the evidence a good business reason to grant such application). *See also In re Ionosphere Clubs, Inc.*, 100 B.R. 670, 675 (Bankr. S.D.N.Y. 1989) (standard for determining a § 363(b) motion is whether the debtor has a "good business reason" for the requested relief). "Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct." *Comm. of Asbestos-Related Litigants and/or Creditors v. Johns-Manville Corp.*

24

*(In re Johns-Manville Corp.)*, 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986). Consistent with a debtor's fiduciary duties, where there is a sound business purpose for the payment of prepetition obligations, and where the debtor is able to "articulate some business justification, other than the mere appeasement of major creditors," courts have authorized debtors to make such payments under Bankruptcy Code § 363(b). *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 175 (accepting debtor's argument that payment of employee wage claims was "critical . . . in order to preserve and protect its business and ultimately reorganize, retain its currently working  employees and maintain positive employee morale," and finding that the debtor had "clearly demonstrated sound business reasons to justify such payments").

60.    In addition, the Debtors pay the Employee Obligations in the ordinary course of business, as permitted by Bankruptcy Code § 363(c). However, to the extent the Court finds that approval is necessary, and in an abundance of caution, the Debtors request that the Court grant the relief requested herein and enter an order authorizing them to pay the Employee Obligations, consistent with their compensation, vacation, and other benefit policies and plans, and to permit, but not require, the Debtors, in their discretion, to maintain and continue the Employee Plans and Programs for their Employees as those practices, programs, policies, and plans were in effect as of the Petition Date, as such may be modified, terminated, amended, or supplemented from time to time hereafter.

### E.    PAYMENT IS APPROPRIATE UNDER BANKRUPTCY CODE § 105(A) AND THE DOCTRINE OF NECESSITY.

61.    Courts have also authorized payment of prepetition claims in appropriate circumstances pursuant to Bankruptcy Code § 105(a), which codifies the inherent equitable powers of the bankruptcy court, empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).

Under Bankruptcy Code § 105(a), courts may permit pre-plan payments of prepetition obligations when such payments are essential to the continued operation of the debtor's business and, in particular, where nonpayment of a prepetition obligation would trigger a withholding of goods or services essential to the debtor's business reorganization plan. *See, e.g., In re Ionosphere Clubs*, 98 B.R. at 177 (finding that section 105 empowers bankruptcy courts to authorize payment of prepetition debt when such payment is needed to facilitate the rehabilitation of the debtor).

62.    Numerous courts have used their § 105(a) powers under the "doctrine of necessity" to authorize payment of prepetition obligations where, as here, such payment is an essential element of the preservation of the debtor in possession's potential for rehabilitation. *See In re CoServ*, 273 B.R. at 497 (reasoning that because the debtor-in-possession has fiduciary duties it must meet, it is logical that the bankruptcy court may "use Section 105(a) of the Code to authorize satisfaction of the prepetition claim in aid of preservation or enhancement of the estate"); *In re Synteen Techs., Inc.*, No. 00-02203-W, 2000 WL 33709667, at *2 (Bankr. D.S.C. Apr. 14, 2000) (courts have permission to "allow payment of a prepetition claim when essential to the continued operation of the debtor") (citation omitted); *In re Just For Feet, Inc.*, 242 B.R. 821, 824 (D. Del. 1999) ("[C]ourts have used their equitable power under section 105(a) . . . to authorize the payment of pre-petition claims when such payment is deemed necessary to the survival of a debtor in a chapter 11 reorganization."); *In re NVR L.P.*, 147 B.R. 126, 127 (Bankr. E.D. Va. 1992) ("Under [section 105] the court can permit pre-plan payment of a prepetition obligation when essential to the continued operation of the debtor"); *In re Eagle-Picher Indus., Inc.*, 124 B.R. 1021, 1023 (Bankr. S.D. Ohio 1991) (approving payment of prepetition unsecured claims of tool makers as "necessary to avert a serious threat to the Chapter 11 process"); *In re Quality Interiors, Inc.*, 127 B.R. 391, 396 (Bankr. N.D. Ohio 1991) ("payment by a debtor-in- possession of pre-petition

claims outside of a confirmed plan of reorganization is generally prohibited by the Bankruptcy Code," but "[a] general practice has developed...where bankruptcy courts permit the payment of certain pre-petition claims, pursuant to 11 U.S.C. § 105, where the debtor will be unable to reorganize without such payment.").

63.     The "doctrine of necessity" is frequently invoked early in reorganization cases, during the so-called "breathing spell," when preservation of the estate is most critical and often extremely difficult. *See* 2 Collier on Bankruptcy ¶ 105.02[4][a] (16th ed.) (discussing cases in which courts have relied upon the "doctrine of necessity" or the "necessity of payment" rule to pay prepetition claims immediately). For example, in *In re Structurlite Plastics Corp.*, the court embraced "the principle that a bankruptcy court may exercise its equity powers under section 105(a) to authorize payment of prepetition claims where such payment is necessary to 'permit the greatest likelihood of survival of the debtor.'" *In re Structurlite Plastics Corp.*, 86 B.R. 922, 931 (Bankr. S.D. Ohio 1988) (quoting *In re Chateaugay Corp.*, 80 B.R. 279, 287 (S.D.N.Y. 1987)). The court explained that "a per se rule proscribing the payment of prepetition indebtedness may well be too inflexible to permit the effectuation of the rehabilitative purposes of the Code." *Id.* at 932. Flexibility of payment is particularly critical when the prepetition creditor provides vital goods or services to the debtor.

64.     Here, many of the Employees rely on their compensation, benefits, and reimbursement of expenses to satisfy their daily living expenses and maintain their health and well-being. Consequently, these Employees will be exposed to significant financial hardships if the Debtors are not permitted to honor the Employee Obligations. If the Debtors are unable to satisfy such obligations, Employee morale and loyalty will suffer at a time when Employee support is critical. Further, if the Court does not authorize the Debtors to honor their various obligations

under the Employee Benefits Plans, the Employees' health coverage could be threatened, potentially burdening individual Employees with the costs of health care. At a minimum, the loss of health care coverage, or uncertainty regarding coverage, would result in considerable anxiety for the Employees at a time when the Debtors need their Employees to perform their jobs at peak efficiency. For all of the foregoing reasons, a sound business purpose exists to pay the Employee Obligations.

65.    In the absence of such payments, the Debtors believe that their Employees may seek alternative employment opportunities, perhaps with the Debtors' competitors. Such a development would deplete the Workforce, hinder the Debtors' ability to operate their business, and likely diminish creditor and counterparty confidence in the Debtors. Moreover, the loss of valuable Employees and the recruiting efforts that would be required to replace such Employees would be a substantial and costly distraction at a time when the Debtors must focus on sustaining their business. Accordingly, the Debtors must be able to pursue all reasonable measures to retain the Employees by, among other things, continuing to honor wages, benefits, and related obligations, including those that accrued prior to the Petition Date, consistent with the terms set forth in the Interim Order attached hereto.

66.    Taken together, the nature of the Employee Obligations, the substantial harm to the Debtors' business that would be caused if those obligations were not honored, the related potential for loss of value in the Debtors' estates, and the fact that a significant portion of the obligations in question relates to priority wage claims, lead to the conclusion that the Employee Obligations fall well within the scope of obligations whose payments may be authorized pursuant to the doctrine of necessity.

67.     The relief requested herein is commonly granted by Bankruptcy Courts in this District. *See, e.g.*, *Senior Care Centers, LLC,* Case No. 18-33967 (SGJ) (Bankr. N.D. Tex 2018); *In re 4 West Holdings, Inc.*, Case No. 18-30777 (HDH) (Bankr. N.D. Tex. Apr. 18, 2018) [Docket No. 257] (entering final order authorizing debtors to pay prepetition wages and other benefits); *In re BAMBOOHRT DFW Holdings LLC*, Case No. 17-31432 (SGJ) (Bankr. N.D. Tex. May 19, 2017) [Docket No. 207] (same); *In re Reddy Ice Holdings, Inc.*, Case No. 12-32349 (Bankr. N.D. Tex. Apr. 17, 2012) [Docket No. 93]. Accordingly, for all of the foregoing reasons, the relief requested herein will benefit the Debtors' estates and creditors by allowing the Debtors' business to continue without interruption and should therefore be approved.

## F.   THE COURT SHOULD AUTHORIZE APPLICABLE BANKS AND OTHER PROCESSORS TO HONOR CHECKS AND ELECTRONIC FUND TRANSFERS IN ACCORDANCE WITH THE MOTION.

68.     In connection with the foregoing, the Debtors respectfully request that the Court: (a) authorize all applicable Processors to receive, process, honor, and pay all checks and transfers issued by the Debtors in accordance with this Motion, without regard to whether any checks or transfers were issued before or after the Petition Date; (b) provide that all Processors may rely on the representations of the Debtors with respect to whether any check or transfer issued or made by the Debtors before the Petition Date should be honored pursuant to this Motion (such Banks and other Processors having no liability to any party for relying on such representations by the Debtors provided for herein); and (c) authorize the Debtors to issue replacement checks or transfers to the extent any checks or transfers that are issued and authorized to be paid in accordance with this Motion are dishonored or rejected by the Processors.

## G.   IMMEDIATE RELIEF IS JUSTIFIED.

69.    Pursuant to Bankruptcy Rule 6003, the Court may grant relief within twenty-one (21) days after the filing of the petition regarding a motion to "use, sell, lease, or otherwise incur an obligation regarding property of the estate" only if such relief is necessary to avoid immediate and irreparable harm. Fed. R. Bankr. P. 6003(b). Immediate and irreparable harm exists where the absence of relief would impair a debtor's ability to reorganize or threaten the debtor's future as a going concern. *See In re Ames Dep't Stores, Inc.*, 115 B.R. 34, 36 n.2 (Bankr. S.D.N.Y. 1990) (discussing the elements of "immediate and irreparable harm" in relation to Bankruptcy Rule 4001).

70.    Moreover, Bankruptcy Rule 6003 authorizes the Court to grant the relief requested herein to avoid harm to healthcare patients and other third parties. Unlike Bankruptcy Rule 4001, Bankruptcy Rule 6003 does not condition relief on imminent or threatened harm to the estate alone. Rather, Bankruptcy Rule 6003 speaks of "immediate and irreparable harm" generally. *Cf*. Fed. R. Bankr. P. 4001(b)(2), (c)(2) (referring to "irreparable harm to the estate"). Indeed, the "irreparable harm" standard is analogous to the traditional standards governing the issuance of preliminary junctions. *See* 9 Collier on Bankruptcy ¶ 4001.07[b][3] (discussing source of "irreparable harm" standard under Rule 4001(c)(2)). Courts will routinely consider third-party interests when granting such relief. *See, e.g., Capital Ventures Int'l v. Argentina*, 443 F.3d 214, 223 n.7 (2d Cir. 2006); *see also Linnemeir v. Bd. of Trs. of Purdue Univ.*, 260 F.3d 757, 761 (7th Cir. 2001). Although the Fifth Circuit has not interpreted the phrase "immediate and irreparable harm" with regard to Bankruptcy Rule 6003, is has with regard to preliminary injunctions. *See Chacon v. Granata*, 515 F.2d 922, 925 (5th Cir. 1975). In that context, Courts have found that this standard requires "(1) the harm to Plaintiffs is imminent (2) the injury would

be irreparable and (3) that Plaintiffs have no other adequate legal remedy." *Gonannies, Inc. v. Goupair.com, Inc.*, 464 F. Supp. 2d 603, 608 (N.D. Tex. 2006).

71.    As described herein and in the First Day Declaration and the Supplemental Declaration, the Debtors will suffer immediate and irreparable harm without Court authorization to pay the Employee Obligations and other related relief requested herein. Accordingly, Bankruptcy Rule 6003 has been satisfied, and the relief requested herein should be granted.

## WAIVER OF BANKRUPTCY RULES

72.    To the extent that any aspect of the relief sought herein constitutes a use of property under Bankruptcy Code section 363(b), the Debtors seek a waiver of the notice requirements under Bankruptcy Rule 6004(a) and the 14-day stay under Bankruptcy Rule 6004(h), to the extent applicable. *See* Fed. R. Bankr. P. 6004(a), (h). As described above, the relief that the Debtors seek in this Motion is immediately necessary in order for the Debtors to be able to continue to conduct their business and preserve the value of their estates. The Debtors respectfully request that the Court waive the notice requirements imposed by Bankruptcy Rule 6004(a) and the 14-day stay imposed by Bankruptcy Rule 6004(h), as the exigent nature of the relief sought herein justifies immediate relief.

## RESERVATION OF RIGHTS

73.    Nothing contained herein is intended or should be construed as an admission as to the validity of any claim against the Debtors, a waiver of the Debtors' rights to dispute any claim, or an approval or assumption of any agreement, contract, or lease under Bankruptcy Code section 365. The Debtors expressly reserve their rights to dispute any claim asserted by a member of the Workforce under applicable law and to assume or reject any Workforce agreements in accordance with the applicable provisions of the Bankruptcy Code. Likewise, if this Court

grants the relief sought herein, any payment made pursuant to the Court's order is not intended and should not be construed as an admission as to the validity of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## CONSENT TO JURISDICTION

74.     The Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that the Court would lack Article III jurisdiction to enter such final order or judgment absent consent of the parties.

## NOTICE

75.     Notice of this Motion shall be provided to: (a) the Office of the United States Trustee for the Northern District of Texas (Attn: Erin Schmidt at erin.schmidt2@usdoj.gov); (b) the Office of the Attorney General of Texas; (c) the Debtors' 30 largest unsecured creditors on a consolidated basis; and (d) the Internal Revenue Service.

76.     The Debtors respectfully submit that such notice is sufficient and that no further notice of this Motion is required.

## NO PRIOR REQUEST

77.     No previous request for relief sought herein has been made to this Court or any other Court.

*[Remainder of page intentionally left blank.]*

**WHEREFORE**, for the reasons stated herein, the Debtors respectfully request that the Court enter the Proposed Interim Order substantially in the form attached hereto as **Exhibit A**, granting the relief requested in the Motion, and granting such other relief as the Court deems just and proper.

Dated: May 28, 2024
Dallas, Texas

GUTNICKI LLP

*/s/ Alexandria Rahn*
Liz Boydston (SBN 24053684)
Alexandria Rahn (SBN 24110246)
10440 N. Central Expy., Suite 800
Dallas, Texas 75231
Telephone: (469) 935-6699
Facsimile: (469) 895-4413
lboydston@gutnicki.com
arahn@gutnicki.com

-and-

Max Schlan (*Pro Hac Vice* Pending)
Ren-Ann Wang
Gutnicki LLP
45 Rockefeller Plaza
Suite 2000
New York, New York 10111
Telephone: (646) 825-2330
Facsimile: (646) 825-2330
mschlan@gutnicki.com
rwang@gutnicki.com

*Proposed Attorneys for the Debtors and Debtors in Possession*

**Exhibit A**

Proposed Interim Order

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| TOMMY'S FORT WORTH, LLC, *et al.*,[1] | ) | Case No. 24-90000 |
| | ) | |
| Debtors. | ) | (Jointly Administered) |
| | ) | |

**INTERIM ORDER AUTHORIZING PAYMENT OF (I) CERTAIN PREPETITION
WORKFORCE CLAIMS, INCLUDING WAGES, SALARIES, AND OTHER
COMPENSATION, (II) CERTAIN EMPLOYEE BENEFITS AND CONFIRMING
RIGHT TO CONTINUE EMPLOYEE BENEFITS ON POSTPETITION BASIS, (III)
REIMBURSEMENT TO EMPLOYEES FOR PREPETITION EXPENSES, (IV)
WITHHOLDING AND PAYROLL RELATED TAXES (V) WORKER'S
COMPENSATION OBLIGATIONS, AND (VI) PREPETITION CLAIMS OWING TO
<u>ADMINISTRATORS AND THIRD PARTY PROVIDERS</u>**

Upon the motion (the "**Motion**")[2] of the Debtors for entry of an interim order (this
"**Interim Order**") authorizing payment of (i) certain prepetition Workforce claims, including
wages, salaries, and other compensation, (ii) certain employee benefits and confirms right to
continue employee benefits on postpetition basis, (iii) reimbursement to employees for expenses
incurred prepetition, (iv) withholding and payroll-related taxes, (v) workers' compensation
obligations, and (vi) prepetition claims owing to administrators and third-party providers; the
Court having reviewed the Motion and the Supplemental Declaration; and the Court having

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

[2] A list of definitions from the Motion is attached hereto as <u>Exhibit 2</u>.

1

jurisdiction over this matter pursuant to 28 U.S.C. 157 and §§ 1334(b); and the Court having found

that this matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2), and that the Debtors

consent to entry of a final order under Article III of the United States Constitution; and the Court

having found that venue of this proceeding and the Motion in this District is proper pursuant to 28

U.S.C. §§ 1408 and 1409; and the Court having determined that the relief requested in the Motion

is in the best interests of the Debtors, their estates, their creditors, and other parties in interest; and

it appearing that proper and adequate notice of the Motion has been given and that no other or

further notice is necessary; and upon the record herein; and after due deliberation thereon; and

good and sufficient cause appearing therefore, it is hereby

**ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED on an interim basis, as set forth herein.

2.      The Debtors are authorized, but not directed to (i) pay prepetition claims and honor

obligations incurred or related to the Employee Obligations, in an aggregate amount not to exceed

$620,000 (exclusive of Withholding Obligations), and (ii) maintain, continue, and honor, in the

ordinary course of business, the Employee Plans and Programs.

3.      The Debtors are authorized, but not directed, to continue the programs and policies

described in the Motion on a postpetition basis and to alter, modify or discontinue such programs

and policies as they deem necessary or appropriate in the ordinary course of business, without

further notice to or order of the Court.

4.      Except as otherwise set forth herein, the Debtors are authorized, pursuant to

Bankruptcy Code sections 105(a) and 363(b), but not obligated or directed, in the reasonable

exercise of their business judgment and in the ordinary course of business, to pay and honor

amounts on account of Employee Compensation Obligations and Contractor Obligations

2

(exclusive of Withholding Obligations); provided, however, that without prejudice to the  Debtors'

right to seek additional payments at the Final Hearing (as defined below) or any other time

subsequent thereto, the Debtors shall not make any payments in excess of $15,150 on  account of

prepetition Employee Compensation Obligations or Contractor Obligations to any one Employee

or Contractors, respectively, absent further order of the Court.

5.      The Debtors and any applicable third parties are authorized to continue to allocate

and distribute Withholding Obligations to the appropriate third-party recipients or taxing

authorities in accordance with the Debtors' stated policies and prepetition practices.

6.      The Debtors are authorized, but not directed, to maintain the Commission Programs

in the ordinary course of business.

7.      The Debtors are authorized, but not directed, (i) to continue the Debtors' PTO, Sick

Leave, and Holiday Pay policies in the ordinary course of business and (ii) to honor all obligations

under the Debtors' PTO policies.

8.      The Debtors are authorized, but not directed, to continue to honor their

Reimbursable Expense Obligations including any prepetition obligations, and to continue in

accordance with the Debtors' stated policies and prepetition practices; *provided, however,* that

satisfaction of prepetition Reimbursable Expense Obligations shall only be allowed to the extent

Employees have paid for such expenses directly from their own funds or are otherwise personally

liable for such expenses.

9.      The Debtors are authorized, but not directed, to honor the Employee Benefits  Plans

in the ordinary course of business and in accordance with the Debtors' prepetition policies and

programs, and to make any necessary contributions to such programs and pay any unpaid premium,

claim, or amount owed as of the Petition Date with respect thereto.

3

10.     The Debtors are authorized, but not directed, to pay all processing and administrative fees associated with and all costs and expenses incidental to payment of the Compensation Obligations or the Employee Benefits Obligations, including the Administrative Fee Obligations.

11.     Nothing in the Motion or this Interim Order, nor as a result of any payment made pursuant to this Interim Order, shall be deemed or construed as an admission as to the validity or priority of any claim against the Debtors, an approval or assumption of any agreement, contract or lease pursuant to Bankruptcy Code § 365, or a waiver of the right of the Debtors, or shall impair the ability of the Debtors, or any other party in interest, to the extent applicable, to contest the validity and amount of any payment made pursuant to this Interim Order.

12.     Each of the Processors are authorized to receive, process, honor, and pay all checks and transfers issued or requested by the Debtors, to the extent that sufficient funds are on deposit in the applicable accounts, in accordance with this Interim Order and any other order of this Court.

13.     The Debtors are authorized to issue postpetition checks, or to effect postpetition fund transfer requests, in replacement of any checks or fund transfer requests in connection with any Employee Obligations that are dishonored or rejected.

14.     The Debtors are authorized to take all actions necessary to effectuate the relief granted pursuant to this Interim Order in accordance with the Motion.

15.     The requirements set forth in Bankruptcy Rule 6003(b) are satisfied.

16.     Notwithstanding Bankruptcy Rule 6004(h), to the extent applicable, this Interim Order shall be effective and enforceable immediately upon entry hereof.

17.     The requirements set forth in Bankruptcy Rule 6004(a) are hereby waived.

18.     The final hearing (the "**Final Hearing**") to consider the entry of a final order granting the relief requested in the Motion shall be held on June 27, 2024, at 1:30 p.m. Prevailing Central Time.

19.     Any objection to the entry of a final order granting the relief requested in the Motion shall be filed with the Court and served on, no later than seven (7) days prior to the commencement of the final hearing to: (a) the Debtors at Gutnicki LLP (Attn: Liz Boydston lboydston@gutnicki.com, Max Schlan mschlan@gutnicki.com, and Alexandria Rahn arahn@gutnicki.com); (b) the Office of the United States Trustee for the Northern District of Texas, Earle Cabell Federal Building, 1100 Commerce Street, Room 976, Dallas, TX 75242 Office of the United States Trustee for the Northern District of Texas (Attn: Erin Schmidt at erin.schmidt2@usdoj.gov); (c) the Debtors' secured lender, M&T Bank; and (d) the Debtors' 30 largest unsecured creditors on a consolidated basis.

20.     This Court shall retain jurisdiction over any and all matters arising from the interpretation, implementation, or enforcement of this Interim Order.

**# # # End of Order # # #**