Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:   (214) 954-4135
Facsimile:   (214) 953-1332
Email:       jbrookner@grayreed.com
             akaufman@grayreed.com
             lwebb@grayreed.com
             eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TOMMY'S FORT WORTH, LLC., *et al.*,[1] | § | Case No. 24-90000 (ELM) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

## EMERGENCY MOTION FOR ENTRY OF
## AN ORDER (I) AUTHORIZING THE TRUSTEE TO ENTER
## INTO WIND-DOWN CONSULTING AGREEMENT, EFFECTIVE
## AS OF OCTOBER 7, 2024, AND (II) GRANTING RELATED RELIEF

> **EMERGENCY RELIEF IS BEING REQUESTED NOT LATER THAN OCTOBER 10, 2024 AT 1:30 P.M. CENTRAL TIME.**
>
> **IF YOU OBJECT TO THE RELIEF REQUESTED OR YOU BELIEVE THAT EMERGENCY CONSIDERATION IS NOT WARRANTED, YOU MUST APPEAR AT THE HEARING IF ONE IS SET, OR FILE A WRITTEN RESPONSE PRIOR TO THE DATE THAT RELIEF IS REQUESTED IN THE PRECEDING PARAGRAPH.**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

**OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HYBRID HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 10, 2024 AT 1:30 P.M. (CT) IN ROOM 204, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102. YOU MAY PARTICIPATE IN THE HEARING IN PERSON OR BY AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MORRIS'S HOME PAGE. THE MEETING CODE IS 473 581 124. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**VIRTUAL HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE MORRIS'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Mark E. Andrews, as the Chapter 11 Trustee appointed in the above-captioned chapter 11 bankruptcy cases (the "Trustee"), respectfully states the following in support of this emergency motion (this "Motion"):

### Relief Requested

1.      By this Motion, the Trustee seeks entry of an order, substantially in the form attached hereto as **Exhibit A** (the "Proposed Order"): (i) authorizing the Trustee to enter into that certain Wind-Down Consulting Agreement, attached to the Proposed Order as Exhibit 1 (the "Agreement"), with MW Development Group, LLC (the "Consultant") effective as of October 7, 2024, to provide certain consulting services to effectuate the liquidations of the remaining estate assets and wind down of the Debtors' operations; and (ii) granting related relief.

### Jurisdiction and Venue

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

3.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

4.      The bases for the relief requested herein are sections 105 and 363(b) of title 11 of the United States Code (the "Bankruptcy Code"), and rule 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

5.      On May 20, 2024, 2024 (the "Petition Date"), each Debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

6.      On June 14, 2024, the Court entered its *Order Granting Agreed Emergency Motion to Appoint Chapter 11 Trustee* [Docket No. 173]. On June 17, 2024 (the "Appointment Date"), the United States Trustee for the Northern District of Texas (the "U.S. Trustee") filed its *Chapter 11 Notice of Appointment of Trustee and Amount of Bond* [Docket No. 174], and on June 18, 2024, the Court entered the *Order Approving Appointment of Chapter 11 Trustee* [Docket No. 178], appointing Mark E. Andrews as the chapter 11 trustee in these chapter 11 cases.

7.      On June 24, 2024, the U.S. Trustee appointed an Official Committee of Unsecured Creditors in these cases (the "Committee").

8.      A detailed description of the Debtors and their businesses, and the facts and circumstances supporting the Debtors' chapter 11 cases, are set forth in the *Declaration of Monica Blacker in Support of First Day Motions* [Docket No. 23].

9.      The Trustee is currently liquidating the Debtors' inventory pursuant to this Court's *Final Order (I) Authorizing Entry into Liquidation Consulting Agreement with Gordon Brothers; (II) Approving Procedures for the Dealership Liquidation Sales; (III) Approving the Sale of Inventory Free and Clear of All Liens, Claims and Encumbrances; (IV) Waiving Compliance With Applicable Restrictions on Liquidation and Approving Dispute Resolution Procedures; and*

*(V) Granting Related Relief* [Docket No. 364] (together with the interim order entered at Docket No. 285, the "Liquidation Procedures Order").

## A.      The Wind-Down Consulting Agreement

10.      The Consultant's principal, Mark Wells, is a current employee of the Debtors and has worked for the Debtors throughout these chapter 11 cases.  As set forth more fully in the Agreement, Wells will terminate his employment with the Debtors as of October 4, 2024, and the Trustee will hire the Consultant for a period of up to four months as an independent contractor, effective as of October 7, 2024.

11.      The Consultant will assist with (a) liquidations of the Debtors' watercraft inventory; (b) assignment of the Debtors' unexpired leases of nonresidential real property; (c) the sale of the Debtors' dealer operations and related property, including pro-shop merchandise, service center parts, equipment and inventory, and customer data and boat purchase history; (d) the sale of other valuable estates' assets; and (e) such other reasonable wind-down tasks as Company and Consultant may mutually agree upon (collectively, the "Services").  In exchange for such Services, the Trustee will pay the Consultant as follows, as set forth in the Agreement and as may be modified by agreement by the parties thereto:

- $27,908.64, which is the equivalent of six (6) weeks normal salary, which was previously approved by this Court pursuant to its *Order Authorizing and Approving Trustee's Compensation Plan for Non-Insider Employees and Granting Related Relief* [Docket No. 363].[2]

- For Services rendered during the month of October 2024, the Debtors will pay Consultant $18,605.76, which is the equivalent to four (4) weeks ordinary salary.[3]

---

[2] Consultant acknowledges that he has already received $9,302.88, which is the equivalent to two (2) weeks ordinary salary.  The Debtors propose to pay Consultant the remaining $18,605.76 within two (2) business days of entry of an order by the Bankruptcy Court approving the terms of this Agreement.

[3] This amount shall be payable as follows: $9,302.88 in each payroll for the next two (2) payroll cycles following the Effective Date.

4

- For Services rendered on or after November 1, 2024, the Debtors will pay Consultant a negotiated fee of $375.00 per hour as needed.  Consultant shall submit invoices in writing to the Trustee on a weekly basis, and invoices shall be paid within seven calendar (7) days of Trustee's written approval of such invoice.

- $1,800.00 to subsize the cost of health insurance and other benefits of the Consultant's choosing on or prior to November 30, 2024.

- Four percent (4%) of any net cash consideration received by the Trustee and generated from any Non-Watercraft Sale Transaction or Lease Assignment identified by Consultant on or after October 7, 2024 and ultimately approved by this Court.[4]

- Two percent (2%) of any net cash consideration received by the Trustee and generated from any Watercraft Sale Transaction or Other Sale Transaction identified by Consultant on or after October 7, 2024.[5]

- Reimbursement of documented actual and necessary reasonable expenses incurred in connection with providing the Services; *provided, however*, that Consultant shall obtain written approval from the Trustee prior to incurring any expense in excess of $1,000.00.

12.    During the Term of the Agreement, Consultant shall cooperate with the Trustee and agrees to provide any information and documentation reasonably requested by the Trustee or his professionals as necessary for the Trustee to discharge his duties in connection with the Debtors' liquidation.

---

[4] "Non-Watercraft Sale Transaction" means a sale of the Debtors' dealer operations and related property, including but not limited to pro-shop merchandise, service center parts, equipment and inventory, and customer data and boat purchase history.  "Lease Assignment" means an assignment of the Debtors' unexpired leases of nonresidential real property.  For the avoidance of doubt, Consultant shall not receive four (4%) percent of the Clermont Non-Watercraft Sale Transaction because such transaction was documented while Consultant was still an employee of the Debtors.

[5] "Watercraft Sale Transaction" means the sale of any of the Debtors' boats in their watercraft inventory (new or used) subject to the Liquidation Procedures Order.  "Other Sale Transactions" means the sale of other Debtor assets of value approved by the Trustee and ultimately approved by the Court, if necessary.

4893-4670-0268

## Basis for Relief Requested

**A.     Sections 105 and 363(b) of the Bankruptcy Code Allows the Trustee to Enter into the Agreement.**

13.     Section 363(b)(1) of the Bankruptcy Code provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b). Section 105(a) of the Bankruptcy Code provides that "[t]he court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). The Trustee respectfully submits that the Court may authorize the Trustee to enter into the Agreement to hire the Consultant to assist the Trustee with the remaining liquidations and final wind down of the estates.

**B.     Entry into the Agreement Constitutes a Sound Exercise of the Trustee's Business Judgment.**

14.     The Trustee must "satisfy [his] fiduciary duty to . . . creditors and equity holders, [by articulating some] business justification for using, selling, or leasing the property outside the ordinary course of business." *In re Continental Air Lines, Inc.*, 780 F.2d 1223, 1226 (5th Cir. 1986). Great judicial deference is given to a trustee's exercise of business judgment. *In re Gulf States Steel*, 285 B.R. 497, 516 (Bankr. N.D. Ala. 2002) (citing *In re Bakalis*, 220 B.R. 525, 531-32 (Bankr. E.D.N.Y. 1998)). "'As long as [proposed use of property] appears to enhance a debtor's estate, court approval of a debtor-in-possession's decision to [use property] should only be withheld if the debtor's judgment is clearly erroneous, too speculative, or contrary to the provisions of the Bankruptcy Code[.]'" *Richmond Leasing Co. v. Capital Bank, N.A.*, 762 F.2d 1303, 1309 (5th Cir. 1985) (quoting A*llied Tech., Inc. v. R.B. Brunemann & Sons*, 25 B.R. 484, 495 (Bankr. S.D. Ohio 1982)) (upholding debtor's exercise of business judgment in a decision to assume a lease).

15.     The Trustee, in his sound business judgment, has determined that entry into the Agreement is valuable and integral to the Trustee's efforts to liquidate the Debtors' remaining inventory and to facilitate the wind down of the estates.  The Consultant's institutional knowledge of the Debtors and their operations make him uniquely positioned to assist the Trustee with the Services set forth in the Agreement.  Accordingly, entry into the Agreement will benefit the Debtors' estates.

### **Request for Waiver of Stay**

16.     To implement the foregoing successfully, the Trustee seeks a waiver of the fourteen-day stay under Bankruptcy Rule 6004(h).  As explained herein, the relief requested in this Motion is immediately necessary for the Trustee to be able to preserve the value of the estates.

### **Notice**

17.     The Trustee will provide notice of this motion to the following parties or their counsel: (a) the U.S. Trustee for the Northern District of Texas; (b) counsel to the Official Committee of Unsecured Creditors; (c) counsel for M&T Bank; (d) the Consultant; (e) the United States Attorney's Office for the Northern District of Texas; (f) the Internal Revenue Service; and (g) any party that has requested notice pursuant to Bankruptcy Rule 2002.  In light of the nature of the relief requested, the Trustee submits that no other or further notice is needed.

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order attached hereto as **Exhibit A**, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

4893-4670-0268

Respectfully submitted this 4th day of October, 2024.

**GRAY REED**

By: _/s/ Aaron M. Kaufman_
  Jason S. Brookner
  Texas Bar No. 24033684
  Aaron M. Kaufman
  Texas Bar No. 24060067
  Lydia R. Webb
  Texas Bar No. 24083758
  Emily F. Shanks
  Texas Bar No. 24110350
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone: (469) 320-6050
Facsimile: (469) 320-6886
Email:  jbrookner@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com
    eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

## Certificate of Service

I certify that on October 4, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

_/s/ Aaron M. Kaufman_
Aaron M. Kaufman

8

4893-4670-0268

## **Exhibit A**

### **Proposed Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | |
|---|---|
| In re: | § Chapter 11 |
| | § |
| TOMMY'S FORT WORTH, LLC., *et al.*,[1] | § Case No. 24-90000 (ELM) |
| | § |
| Debtors. | § (Jointly Administered) |
| | § |

**ORDER (I) AUTHORIZING THE TRUSTEE
TO ENTER INTO WIND-DOWN CONSULTING AGREEMENT
EFFECTIVE AS OF OCTOBER 7, 2024 AND (II) GRANTING RELATED RELIEF**

Upon the motion (the "Motion")[2] of the Chapter 11 Trustee (the "Trustee") for the entry of

an order (the "Order"), (i) authorizing the Trustee to enter into that certain Wind-Down Consulting

Agreement, (the "Agreement") with MW Development Group, LLC (the "Consultant") to provide

certain consulting services to effectuate the liquidations of the remaining estate assets and wind

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

[2] Capitalized terms not otherwise defined herein shall have the meanings ascribed to them in the Motion.

down of the Debtors' operations; and (ii) granting related relief; and this Court having found that

this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2); and this Court having found that venue

of this proceeding and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409;

and this Court having found that the relief requested in the Motion is in the best interests of the

chapter 11 estates, their creditors, and other parties in interest; and this Court having found that

the Trustee's notice of the Motion and opportunity for a hearing on the Motion were appropriate

and no other notice need be provided; and this Court having reviewed the Motion and having heard

the statements in support of the relief requested therein at a hearing before this Court, if any; and

this Court having determined that the legal and factual bases set forth in the Motion and at a hearing

establish just cause for the relief granted herein; and upon all of the proceedings had before this

Court; and after due deliberation and sufficient cause appearing therefor, it is HEREBY

ORDERED THAT:

1.      The Motion is granted as set forth herein.

2.      Effective as of October 7, 2024, the Trustee is authorized pursuant to section 363(b)

of the Bankruptcy Code to enter into the Agreement attached hereto as **<u>Exhibit 1</u>** pursuant to the

terms set forth therein. The Trustee has shown sound business reasons to enter into the Agreement

with the Consultant.

3.      The Trustee is authorized to pay Consultant the compensation for Services set forth

in the Agreement without further order of this Court.

4.      In the event of any conflicts between the Motion and this Order, the terms of this

Order shall control.

5.      The Trustee is authorized and empowered to take any and all further actions as may

be reasonably necessary or appropriate to give effect to this Order.

4893-4670-0268

6.      Notwithstanding Bankruptcy Rule 6004(h) the terms and conditions of this Order

are immediately effective and enforceable upon its entry.

7.      The Bankruptcy Court reserves jurisdiction to interpret and enforce all provisions

of this Order, including any disputes arising from this Order.

# # # END OF ORDER # # #

<u>Submitted by:</u>

Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:        jbrookner@grayreed.com
                  akaufman@grayreed.com
                  lwebb@grayreed.com
                  eshanks@grayreed.com

*Counsel to the Mark E. Andrews, Chapter 11 Trustee*

## Exhibit 1

**Wind-Down Consulting Agreement**

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF63246E06C0

EXECUTION VERSION

## WIND-DOWN CONSULTING AGREEMENT

This Wind-Down Consulting Agreement ("**Agreement**") is made and entered into effective as of October 7, 2024 (the "**Effective Date**"), by and between Mark E. Andrews, in his capacity as chapter 11 trustee (the "Trustee") of Tommy's Fort Worth, LLC and its affiliates (collectively, the "**Company**")[1] and MW Development Group, LLC ("**Consultant**"), by and through its principal, Mark Wells ("**Wells**"). Company and Consultant are sometimes collectively referred to as "**Parties**" or singularly as a "**Party**."

WHEREAS, Company filed for Chapter 11 bankruptcy and the Trustee was appointed to liquidate the Company's assets and otherwise wind down its affairs. *See In re Tommy's Fort Worth, LLC*, Case No. 24-90000 (Bankr. N.D. Tex.) (the "**Bankruptcy Case**"), pending in the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division (the "**Bankruptcy Court**");

WHEREAS, Wells is presently an employee of the Company, entitled to regularly compensation, benefits, and certain incentive payments previously approved by the Bankruptcy Court;

WHEREAS, Company requires certain consulting services to effectuate the liquidations of its remaining assets and wind down of its operations;

WHEREAS, in lieu of Wells' continued employment by Company and the associated benefits previously associated with such employment, the Company desires to contract with Consultant as an independent contractor to provide wind-down consulting services to the Company;

WHEREAS, the Parties desire to enter into an independent contractor relationship pursuant to the terms of this Agreement; and

WHEREAS, all of the recitals contained herein are true and correct and are made a part hereof.

NOW, THEREFORE, for and in consideration of the premises set forth above, and the mutual promises, covenants, conditions, and obligations set forth herein, and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties agree as follows:

---

[1] Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF45B4E4E6E0

1.    <u>Obligations of Consultant</u>.

1.1    Wells hereby resigns as an employee of the Company effective as of October 4, 2024.

1.2    Company hereby engages and retains Consultant, and Consultant hereby agrees to provide wind-down consulting services to the Company, as an independent contractor to Company, including, but not limited to, assisting with liquidations of the Company's watercraft inventory; assignment of the Company's unexpired leases of nonresidential real property; sale of the Company's dealer operations and related property, including pro-shop merchandise, service center parts, equipment and inventory, and customer data and boat purchase history; sale of other Company assets of value; and such other reasonable wind-down tasks as Company and Consultant may mutually agree upon (collectively, the "**Services**").

1.3    Consultant agrees that the relationship of Consultant to Company shall be that of an independent contractor and that neither Consultant nor any individual engaged or employed by Consultant shall be an employee of Company, and no employment relationship shall be deemed to exist. As such, Consultant will have full and complete control of the work details and the manner of Consultant's performance of the Services. Company will not have any control, direction, or dominion over Consultant's provision of the Services. Company will not provide Consultant with any supplies or equipment necessary to perform the Services, and Consultant agrees to provide all such supplies or equipment needed to perform the Services. Consultant will perform Consultant's duties hereunder in a manner consistent with the requirements of all applicable local, state, and federal laws, rules, and regulations.

1.4    Because neither Consultant nor any individual engaged or employed by Consultant is to be considered an employee of Company, neither Consultant nor any individual engaged or employed by Consultant is entitled to participate in any employee benefit plans, bonus plans, or any other similar plans that Company may now or hereafter offer or provide to its employees.

1.5    Consultant is solely responsible for: (1) any and all local, state, and federal taxes on compensation provided by Company in exchange for the Services; (2) any and all salaries, wages, fees, or expenses of any person or entity retained by Consultant in performance of Consultant's obligations to Company; (3) determining the manner in which to perform services for Company, including the hours Consultant and Consultant's employees and agents, if any, will work and the instructions given to any such persons in performance of Consultant's obligations to Company; and (4) acquiring and utilizing all supplies and equipment necessary to perform the Services.

1.6    Consultant expressly acknowledges that Consultant shall not be considered an agent for Company. Consultant shall not enter into any contract on behalf of Company by the terms of which Company is obligated to purchase or obtain services from any third party. The Trustee has the sole right to authorize and approve on behalf of

2

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF65B4304909

the Company, and subject to approval in the Bankruptcy Case, any and all potential transactions identified by Consultant in the scope of providing the Services.

1.7 During the Term of this Agreement, Consultant shall cooperate with the Trustee and agrees to provide any information and documentation reasonably requested by the Trustee or his professionals as necessary for the Trustee to discharge his duties in connection with the liquidation of the Company in the Bankruptcy Case.

2. <u>Compensation for the Services</u>. In exchange for the Services, Consultant agrees to forego any and all future compensation, benefits, or other amounts due from the Company, and from the Effective Date, Consultant's sole compensation from Company shall be as follows:

2.1 Company will pay to Consultant the following in connection with provision of the Services:

- $27,908.64, which is the equivalent to six (6) weeks ordinary salary.[2] Consultant acknowledges that he has already received $9,302.88, which is the equivalent to two (2) weeks ordinary salary. Company shall pay Consultant the remaining $18,605.76 within two (2) business days of entry of an order by the Bankruptcy Court approving the terms of this Agreement.

- For Services rendered during the month of October 2024, Company will pay Consultant $18,605.76, which is the equivalent to four (4) weeks ordinary salary. This amount shall be payable as follows: $9,302.88 in each payroll for the next two (2) payroll cycles following the Effective Date.

- For Services rendered on or after November 1, 2024, Company will pay Consultant a negotiated fee of $375.00 per hour as needed, which shall be invoiced pursuant to Section 2.2 below.

- $1,800.00 to subsize the cost of health insurance and other benefits of the Consultant's choosing on or prior to November 30, 2024.

- Four percent (4%) of any net cash consideration received by the Trustee and generated from any Non-Watercraft Sale Transaction or Lease Assignment identified by Consultant on or after the Effective Date and ultimately approved by the Bankruptcy Court in the Bankruptcy Case. "**Non-Watercraft Sale Transaction**" means a sale of the Company's dealer operations and related property, including but not limited to pro-shop merchandise, service center parts, equipment and inventory, and customer data and boat purchase history. "**Lease Assignment**" means an assignment of the Company's unexpired leases

---

[2] Immediately prior to the Effective Date, Consultant was paid a gross salary of $241,875.00. Consultant's equivalent weekly salary based on a 52-week work year is $4,651.44.

3

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF4264036000

of nonresidential real property. For the avoidance of doubt, Consultant shall not receive four (4%) percent of the Clermont Non-Watercraft Sale Transaction because such transaction was documented prior to the Effective Date while Consultant was still an employee of the Company.

- Two percent (2%) of any net cash consideration received by the Trustee and generated from any Watercraft Sale Transaction or Other Sale Transaction identified by Consultant on or after the Effective Date. "**Watercraft Sale Transaction**" means the sale of any of the Company's boats in its watercraft inventory (new or used) subject to the liquidation procedures approved by the Bankruptcy Court. "**Other Sale Transactions**" means the sale of other Company assets of value approved by the Trustee and ultimately approved by the Bankruptcy Court in the Bankruptcy Case, if necessary.

- Reimbursement of documented actual and necessary reasonable expenses incurred in connection with providing the Services; *provided, however*, that Consultant shall obtain written approval from the Trustee prior to incurring any expense in excess of $1,000.00.

2.2    Consultant shall submit invoices in writing to the Company on a weekly basis before 11:59 p.m. (prevailing Eastern Time) every Friday during the Term. Invoices shall be paid by the Company within seven calendar (7) days of Trustee's written approval of Consultant's invoice. All Company payments to Consultant will be paid as 1099-MISC income which requires Consultant to provide a W-9 in advance of the first payment from Company.

3.    <u>Term and Termination</u>.

3.1    This Agreement shall only become effective upon entry of an order by the Bankruptcy Court approving the terms hereof or otherwise authorizing the Trustee to enter into such Agreement on behalf of the Company and shall continue for a period of **four (4) months** (the "**Term**"), unless extended by mutual consent of the parties and or terminated earlier in accordance with the terms of this Agreement.

3.2    This Agreement may be terminated immediately by Company, at its sole discretion, upon the occurrence of any of the following events: (1) Consultant materially breaches any provision of this Agreement; (2) Consultant fails to provide the Services in a good and workmanlike manner; (3) Consultant violates any local, state, or federal law, rule, or regulation in the provision of the Services to Company; (4) Consultant fails to provide documents or information reasonably requested by the Trustee or his professionals as contemplated in Section 1.6 above; or (5) Consultant discloses any Confidential Information to any person, employee, or entity in violation of Section 4.

3.3    Consultant agrees that, upon termination of this Agreement, Consultant shall: (i) deliver to Company any and all property belonging to Company; (ii) return to

4

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF4B29E5E8BB

Company all equipment or devices supplied by Company, if any; and (iii) return to Company all documents, information, or materials of whatever kind or nature, whether in hard copy or in electronic form, developed by or for Company. And, after termination of this Agreement, Consultant shall not use or access any such materials of Company nor supply or make available such documents, information, or materials to any third party.

4.    <u>Confidentiality</u>.

4.1    Consultant agrees that Company has provided and/or will provide and continue to provide Consultant access to some or all of Company's Confidential Information and/or specific trade secrets related to Company's business. "**Confidential Information**" means any trade secrets, confidential technology, proprietary information, or other confidential information of any kind, nature, or description concerning any matters affecting or relating to the business of Company, including, but not limited to: (1) any list of customers or potential customers or information compiled by Company which identifies Company's customers, services or goods sold to customers, or any other information related to current or prospective customers kept or maintained by Company, including contact information, decision-makers, and preferences, needs or requirements of any current or prospective customers; (2) sales strategies, including training and other internal manuals, forms and documents, contacts, leads, customer proposals, opportunities and other business development and sales pipeline information of Company; (3) Company's internal processes and procedures used in the Company's business; (4) financial information of any kind about Company, including, but not limited to, budgets, pricing, costs of goods or services, profit margins, expenses, earnings or financial projections, strategic plans, forecasts, market analyses, and geographic plans; and (5) all information about Company's employees and contractors, including their addresses and phone numbers, pay rates, benefits, compensation packages, or job history. Company and Consultant agree that Confidential Information includes current, updated and future data, information, reports, evaluations and analyses of Company, its financial performance and results, its customers, and its employees, including their compensation, performance or evaluations, and includes information, data, reports, and evaluations: (i) provided to Consultant after the date hereof; (ii) created by Consultant, in whole or in part, during the Term; (iii) contributed to by Consultant; or (iv) used by Consultant in connection with providing the Services to Company.

4.2    Consultant acknowledges that, because of the highly competitive nature of Company's business, the use and protection of Company's Confidential Information is critical to the Trustee's efforts to wind down the Company's operations and maximize value in the Bankruptcy Cases and is an essential element of this Agreement. During the Term and at any time thereafter, Consultant will keep all Confidential Information in strict confidence and will not use or disclose any Confidential Information for any purpose other than providing the Services to Company. Consultant will not use any Confidential Information for the gain or benefit of any party outside Company or for Consultant's own personal gain or benefit outside the scope of Consultant's independent contractor relationship with Company. Consultant will not cause the transmission, removal or transport of Confidential Information from Company's premises except to the

5

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF2331C0000

extent necessary to provide the Services to Company. Consultant will not provide any information about Company's employees to any competitor or recruiter.

4.3     Because Consultant agrees that a breach or threatened breach on Consultant's part of any covenant contained in this Section 4 will cause damage to Company, Consultant agrees that Company shall be entitled to a temporary restraining order and an injunction, restraining any further violation of such covenants by Consultant, its affiliates, employees, partners, or agents. These rights of restraint and injunction shall be cumulative and in addition to whatever other legal and equitable remedies may be available to Company. In the event this Agreement is terminated, the covenants contained in Section 4 shall survive during the term of the restrictive covenant or any extension thereof.

5.     Indemnification. Consultant agrees to indemnify and shall hold harmless (including payment of reasonable attorneys' fees) the Trustee, Company, and any employee, officer, director, or agent thereof (each of the foregoing being hereinafter referred to individually as an "**Indemnified Party**") against all liability to third parties arising from or in connection with Consultant's performance of the Services. Consultant's obligation to indemnify any Indemnified Party will survive the expiration or termination of this Agreement. Consultant shall conduct the defense of any such third-party action arising as described herein unless Company and Consultant shall mutually agree that Company will conduct the defense.

6.     General Provisions.

6.1.     Applicable Law, Forum, and Venue.  The Agreement shall be deemed to be made and performable in the State of Texas and shall be governed by and construed in accordance with the laws of the State of Texas, exclusive of its choice of law provisions. The Bankruptcy Court shall have jurisdiction over any and all disputes arising from or pertaining to this Agreement. If there is a determination by final order that the Bankruptcy Court lacks jurisdiction over the Agreement, then the parties agree to venue in the courts of the State of Texas sitting in Tarrant County, Texas. The Parties expressly waive any other venue to which they may be entitled by virtue of domicile or otherwise.

6.2.     Entire Agreement.  This Agreement sets forth, and merges herein, all prior agreements between Company and Consultant relating to the subjects hereof. Consultant represents and acknowledges that in executing this Agreement, Consultant is not relying, and has not relied, upon any representations by Company or its officers, directors, employees, or other agents except as expressly contained in this Agreement.

6.3     Modification and Waiver.  No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing signed by Consultant and Company.

6.4     Severability.  If any one or more of the provisions contained in this Agreement shall for any reason be held to be invalid, illegal or unenforceable in any respect by a judicial body, such holding shall not affect the validity and enforceability of any other provisions hereof. Further, should any provisions within this Agreement ever

4859-2510-1030

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-AF4823062000

be reformed or rewritten by a judicial body, such provisions as so rewritten shall be binding upon the Parties hereto.

6.5     Assignment.   This Agreement may be assigned by Company to any affiliated or related company at any time without notice. This Agreement may not be assigned by Consultant for any reason without express written consent of Company.

6.6     Continuation of Certain Obligations.   The obligations under this Agreement related to non-disclosure of Confidential Information, non-solicitation of Company's employees and customers, and indemnification shall survive termination of this Agreement.

6.7     Defend Trade Secrets Act Notice.   An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in confidence to a Federal, State, or local government official or to an attorney solely for the purpose of reporting or investigating a suspected violation of law. An individual shall not be held criminally or civilly liable under any Federal or State trade secret law for the disclosure of a trade secret that is made in a complaint or other document filed in a lawsuit or other proceeding, if such filing is made under seal. An individual who files a lawsuit for retaliation by an employer for reporting a suspected violation of law may disclose the trade secret to the attorney of the individual and use the trade secret information in the court proceeding, if the individual files any document containing the trade secret under seal; and does not disclose the trade secret, except pursuant to court order.

4859-2510-1030

Docusign Envelope ID: 58FD3C06-2C96-474C-B027-A4632306E906

IN WITNESS WHEREOF, and in acknowledgement that the Parties hereto have read and understood each and every provision hereof, the Parties have executed this Agreement to be effective as of the Effective Date.

CONSULTANT:

TOMMY'S FORT WORTH, LLC AND ITS AFFILIATED COMPANIES:

10/4/2024 | 1:03 PM EDT

Date

By _____
*Mark Wells*
E90A7AB7233E47F...

Mark Wells

10/4/2024 | 11:46 AM CDT

Date

By _____
8492FE21581A48E...

Mark E. Andrews, Chapter 11 Trustee

8

4859-2510-1030