Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone:  (214) 954-4135
Facsimile:  (214) 953-1332
Email:       jbrookner@grayreed.com
             akaufman@grayreed.com
             lwebb@grayreed.com
             eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## FORT WORTH DIVISION

| | |
|---|---|
| In re: § | Chapter 11 |
| § | |
| TOMMY'S FORT WORTH, LLC., *et al.*,[1] § | Case No. 24-90000 (ELM) |
| § | |
| Debtors. § | (Jointly Administered) |
| § | |

## MOTION FOR ENTRY OF AN ORDER
## (I) AUTHORIZING AND APPROVING THE SETTLEMENT BY AND BETWEEN
## THE TRUSTEE AND MALIBU BOATS; AND (II) GRANTING RELATED RELIEF

> **IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE**

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

4873-2571-5693

> **THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**
>
> **A HYBRID HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 31, 2024 AT 1:30 P.M. (CT) IN ROOM 204, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102. YOU MAY PARTICIPATE IN THE HEARING IN PERSON OR BY AUDIO AND VIDEO CONNECTION.**
>
> **AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MORRIS'S HOME PAGE. THE MEETING CODE IS 473 581 124. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**
>
> **VIRTUAL HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE MORRIS'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Mark E. Andrews, as the chapter 11 trustee (the "Trustee") appointed in the above-captioned chapter 11 bankruptcy cases of Tommy's Fort Worth, LLC and its debtor affiliates (together, the "Debtors"), respectfully states the following in support of this motion (this "Motion"):

**Preliminary Statement**

1. The Debtors commenced these chapter 11 cases in the face of two separate lawsuits pending with the Debtors' primary supplier (Malibu Boats) and their senior secured lender (M&T Bank). These pre-bankruptcy disputes found their way into the Bankruptcy Court in the first few weeks of the bankruptcy cases in the form of multiple contested cash collateral hearings with M&T Bank and an emergency hearing on the Debtors' motion to enforce the automatic stay against Malibu Boats. After evidentiary hearings on the Debtors' emergency motions, this Court ultimately denied the Debtors' requested relief, and the Trustee was subsequently appointed to manage the Debtors' affairs and the administration of these bankruptcy estates.

2

4873-2571-5693

2. Against this backdrop, the Trustee and his team worked quickly and diligently to maximize value for the Debtors' bankruptcy estates and their creditors. Those efforts included, among other things, consensual use of M&T Bank's cash collateral and Court authorization to conduct value-maximizing dealership liquidation sales.

3. After an extensive investigation of the Debtors' claims against Malibu Boats and a robust settlement process mediated by a retired federal judge with active participation from the Debtors' key creditor constituencies, the Trustee has negotiated a fair settlement with Malibu Boats. Under the Settlement Agreement (defined below), Malibu Boats will pay $3.5 million and withdraw the Malibu Claim (defined below) to settle all estate causes of action asserted or assertable against Malibu Boats. Malibu Boats will also have an option to step into the Debtors' Knoxville dealership location in exchange for Malibu Boats paying the cure costs due to the landlord and paying the Trustee for the cost value of the personal property maintained at that location. As discussed further herein, the Trustee believes the settlement negotiated through the mediation process is fair and reasonable and in the best interest of the Debtors' bankruptcy estates and creditors.

**Relief Requested**

4. By this motion, the Movants seek entry of an order, substantially in the form attached hereto (the "Proposed Order"): (a) authorizing entry into and approving the settlement agreement on substantially on the terms attached as Exhibit 1 to the Proposed Order (the "Settlement Agreement"), by and among the Trustee, on the one hand, and Malibu Boats, Inc. and Malibu Boats, LLC (collectively, "Malibu"), on the other hand, and (b) granting related relief.

3

**Jurisdiction and Venue**

5. This Court has jurisdiction over the subject matter of this Motion pursuant to 28 U.S.C. § 1334. This is a core matter pursuant to 28 U.S.C. § 157(b). Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

6. The statutory bases for the relief requested in this Motion are sections 105(a), 363(b), 541(a), and 1107 of title 11 of the United States Code (the "Bankruptcy Code"), and rules 9014 and 9019(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

**Background**

7. The Court is familiar with the Debtors' litigious history with Malibu, having heard much of the following facts during a lengthy evidentiary hearing on June 6, 2024. The following serves to refresh the Court of the relevant facts.

8. The Debtors filed these cases after defaulting to their prepetition secured creditor, M&T Bank ("M&T Bank"), to whom they were indebted approximately $105 million on a floor plan financing arrangement that began in May 2023. For reasons not directly relevant to this Motion, the Debtors struggled to remain in compliance with their loan agreements with M&T Bank since the inception of the loan. Within months of closing on the new loan, M&T Bank notified the Debtors that they had sold boats out of trust. The Debtors were able to cure these "sales out of trust" issues several times over the course of 2023, but the ongoing audits by M&T Bank presented problems for the Debtors in negotiating new dealership agreements with their primary manufacturer, Malibu.

9. Ultimately, on February 27, 2024, M&T Bank notified the Debtors that they were in default under their loan agreements. Malibu thereafter confirmed with the Debtors that Malibu would no longer consider renewing dealership agreements for the new model years, and Malibu

further terminated the Debtors' multi-year dealership agreements for the Texas locations. On March 29, 2024, M&T Bank notified the Debtors of its intent to exercise remedies as a result of the ongoing defaults and made demand for repayment of the loans in full.

10. On April 1, 2024, M&T Bank commenced a collection action and receivership action against the Debtors in the State of Michigan, Circuit Court for the County of Kent (the "Michigan Litigation"). Additionally, M&T Bank brought a cause of action against Mr. Borisch, personally, to recover alleged damages under certain guarantees. The Debtors and Mr. Borisch ultimately consented to the appointment of a receiver, who attempted to operate the Debtors' business for a brief period until Mr. Borisch caused the Debtors to commence these bankruptcy cases, as discussed below.

11. On April 10, 2024, Mr. Borisch caused the Debtors to file a *Verified Complaint* (the "Debtors' Complaint") against Malibu in the U.S. District Court for the Eastern District of Tennessee (the "Tennessee Court"), which action was captioned *Tommy's Castaic, LLC et al. v. Malibu Boats, Inc. et al.,* Case No. 3:24-CV-00166-KAC-JEM. The Debtors' Complaint alleged various bad acts by Malibu, including:

    a. Malibu's alleged false representations and false promises to the Debtors, including that Malibu allegedly misrepresented market demand for Malibu boats;

    b. Malibu's alleged false promises to enter into a repurchase agreement with M&T Bank;

    c. Malibu's alleged false promises to renew the Debtors' dealership agreements for Model Year 2024; and

    d. Malibu's alleged false promises to pay certain rebate and incentive payments.

5

12. The Debtors' Complaint asserted the following causes of action against Malibu:

| Counts I-III | Breach of Contract |
| Count IV | Quantum Meruit |
| Count V | Unjust Enrichment |
| Count VI | Promissory Estoppel |
| Count VII | Intentional Misrepresentation/Fraud |
| Count VIII | Negligent Misrepresentation |

13. The Debtors alleged that Malibu's misrepresentations and false promises induced Mr. Borisch and the Debtors to take actions, including increasing the size of their floor plan with a new lender in M&T Bank, and ordering and accepting delivery of a volume and mix of Malibu boats that were not suited to the Debtors' needs, which resulted in the Debtors' incurrence of unnecessary interest expense. The Debtors' Complaint contended that this increased financial burden, together with Malibu's failure to pay incentives and perform its alleged promises, caused the Debtors to default to M&T Bank, bringing about the end of the Debtors' ordinary operations.

14. The Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy Code on May 20, 2024 (the "Petition Date"). On June 3, 2024, the Debtors filed the *Debtors' Emergency Motion to Enforce Automatic Stay and Punitive Damages for Willful Violations of the Automatic Stay Against Malibu Boats, Inc. and Malibu Boats, LLC* [Docket No. 107] (the "Debtors' Stay Motion"). Mr. Borisch filed a declaration in support of the Debtors' Stay Motion [Docket No. 113] (the "Borisch Declaration"), which included 51 exhibits. Mr. Borisch made several of the same arguments in support of the Debtors' Stay Motion that the Debtors previously alleged in the Debtors' Complaint against Malibu in the Tennessee Court.

15. On June 6, 2024, the Court conducted an evidentiary hearing on the Debtors' Stay Motion and the following day, on June 7, 2024, issued its findings of fact and conclusions of law denying the Debtors' Stay Motion. In that same ruling, the Court denied the Debtors' motion for

6

use of cash collateral, concluding among other things that the Debtors had not demonstrated how M&T Bank would be adequately protected.

16. The following week, the Debtors consented to the appointment of a chapter 11 trustee, and on June 17, 2024, the Court approved the appointment of the Trustee. The Trustee thereafter elected to nonsuit the Debtors' Complaint against Malibu without prejudice to pursuing those claims at a later date. As this Court will recall, the Trustee resolved Malibu's objections to the Trustee's dealership liquidation procedures through very carefully negotiated terms, which included provisions for Malibu to repurchase approximately $2.5 million of the Debtors' inventory, agreed-upon procedures for obtaining customer acknowledgements for warranty purposes, and an agreed-upon mediation process to occur within 45 days of the order. See Docket No. 364, ¶¶ 33–38. That order was entered on August 9, 2024.

17. One week later, on August 16, 2024, Mr. Borisch filed a new complaint (the "Borisch Complaint") against Malibu in the Tennessee Court. There are few substantive differences between the Borisch Complaint and the Debtors' Complaint. In short, the Borisch Complaint alleges all of the same facts, adds a few more, and asserts the following four causes of action, which are substantially the same as those asserted just four months earlier in the Debtors' Complaint. Below is a comparison of the two complaints:

| Cause of Action | Debtors' Complaint | Borisch Complaint |
|---|---|---|
| Breach of Contract | Counts I-III | Count III |
| Quantum Meruit | Count IV | n/a |
| Unjust Enrichment | Count V | Count IV |
| Promissory Estoppel | Count VI | n/a |
| Intentional Misrepresentation/Fraud | Count VII | Count I |
| Negligent Misrepresentation | Count VIII | Count II |

18. By separate motion filed contemporaneously with this Motion, and as a condition to the Settlement Agreement, the Trustee is seeking a determination that the claims asserted in the

7

4873-2571-5693

Borisch Complaint are property of the Debtors' bankruptcy estates that are being settled pursuant to this Motion (the "Estate Claims").  To ensure the effectiveness of the settlement negotiated by the parties, the Trustee asks this Court to enjoin Mr. Borisch from pursuing the Estate Claims so that the bankruptcy estates and their creditors may all benefit from the settlement, including the full release of those claims.

19. On September 30, 2024, Malibu filed proof of claim number 42, asserting a non-priority general unsecured claim of no less than $9,606,044.00 against the Debtors' bankruptcy estates (the "Malibu Claim").

20. On October 1, 2024, the Trustee, Malibu, M&T Bank, and the Official Unsecured Creditors' Committee (the "Committee") attended a 14-hour mediation (the "Mediation") with the Hon. Nancy F. Atlas (ret.).  As a result of the Mediation, the Trustee has negotiated the Settlement Agreement and hereby seeks approval thereof.

**Pre-Mediation Investigation of Claims**

21. When the Trustee was first appointed in mid-June, his initial priorities were to negotiate consensual use of cash collateral and begin orderly value-maximizing liquidation sales for the hundreds of new and used boats held by the Debtors.  The Trustee's efforts in this regard have been successful.  This Court entered the appropriate orders authorizing use of cash collateral and approving liquidation sale procedures.  *See* Docket Nos. 272 & 364.

22. As noted above, the liquidation procedures order, which was entered on August 9, 2024, directed Mediation with Malibu, the Committee, and M&T Bank, which the parties scheduled for October 1, 2024.  That left the Trustee and his professionals over seven (7) weeks to complete their investigation of the Debtors' claims and causes of action against Malibu before the Mediation.  Mr. Borisch and the Debtors had given the Trustee's team a head start, having filed the

8

Debtors' Complaint and the Borisch Declaration. The Trustee and his professionals reviewed all public and non-public documents provided to Debtors' counsel in preparation for the hearing on the Debtors' Enforcement Motion. Such information included hundreds of e-mails and corresponding attachments. The Trustee and his professionals also reviewed the dealership agreements and incentive programs in effect during the relevant time periods, as well as the prior years' materials, to understand the Debtors' working history and course of dealing with Malibu. The Trustee's team then interviewed potential witnesses with knowledge of the facts and circumstances alleged in the Debtors' Complaint and the Borisch Declaration.

23. Based on this extensive review and analysis, the Trustee believes he and his professional team were adequately prepared to identify the strengths and weaknesses of potential Estate Claims to be addressed during Mediation.

**Defenses and Settlement Considerations Supporting the Settlement**

24. While the Trustee had identified and analyzed the potential Estate Claims against Malibu and was confident that colorable claims could be asserted against Malibu, the Trustee was cognizant of the potential weaknesses of such claims, as well as Malibu's potential defenses and counterclaims that may be asserted. The Estate Claims against Malibu are fact intensive. For example, the Debtors had identified nearly $13 million in potentially unpaid incentives, as summarized on pages 11–12 of the Borisch Declaration:

| TYPE of Rebate | DUE |
|---|---|
| 2022 COOP[47] | $364,750 |
| 2023 BCP[48] | $666,250 |
| 2023 COOP | $414,000 |
| 2023 QCP[49] | $505,500 |
| 2023 MSB[50] | $432,000 |

| | |
|---|---|
| 2024 OPI[51] | $258,500 |
| 2024 Interest[52] | $508,429 |
| 2024 YESE Oct-Dec 2023 and BSP Discounts with no order[53] | $1,506,950 |
| Interest on 2023s since MBUU stopped covering[54] | $5,302,285 |
| Est 2024 COOP | $400,000 |
| **TOTAL DUE TO TOMMY'S FROM MALIBU** | **$12,983,664** |

25. The Trustee is aware of Malibu's factual and legal defenses to these claims. Among other things, Malibu contends that the Debtors did not actually earn these incentives for the 2022 or 2023 model years, and the Debtors could not have earned incentives for the 2024 model years without signed dealership agreements. Malibu has also noted that the dealership agreements provide Malibu with a degree of discretion to pay incentives, presenting another potential defense for Malibu. Similarly, while the Debtors had previously alleged fraud and misrepresentation by Malibu, the Trustee was less confident in the likely success of such claims for several reasons.

26. While the Trustee could not have reviewed every document relevant to the dispute or interviewed every witness with potential knowledge of the dispute with Malibu, the Trustee has considered enough potential evidence to understand the strengths and weaknesses of such claims. As part of the Mediation, the Trustee was also able to consider additional facts and circumstances relevant to the merits of the Estate Claims and Malibu's defenses thereto. Since accepting the settlement terms with Malibu, the Trustee has received no new evidence that would alter his views of the relative merits of the Estate Claims and the benefits of the settlement. It is also reasonable to conclude that Malibu would present vigorous defenses of these claims, making litigation a protracted and expensive endeavor with no certainty of success on the merits. Any litigation of these claims would likely require the engagement of one or more experts on the issues of boat dealership incentives and/or business valuations. These costs would be incurred by the estates or the liquidating trust with no guaranteed path to reimbursement.

4873-2571-5693

27. Prior to the Mediation, the Trustee analyzed all claims identified by the Debtors in the Debtors' Complaint, as well as the Trustee's own alternative legal theories. As noted above, the Trustee considered the evidentiary support necessary to prevail on such claims, the potential damage models associated with such legal theories, the strength and weaknesses of those claims (including likely evidentiary burdens and defenses), and other considerations important to the analysis, such as administrative costs and the length of potential litigation. The Trustee calculated a settlement range based on all of these factors before and throughout the Mediation.

28. Finally, the Trustee evaluated the Malibu Claim, which Malibu filed alleging that it is owed nearly $10 million relating to unpaid accounts receivable, as well as other counterclaims relating to the Debtors' prepetition conduct. While the Trustee believes that the estates have meritorious objections and defenses to the Malibu Claim, the costs associated with objecting to the Malibu Claim or litigating those counterclaims absent a settlement could add to the expenses and reduce positive recoveries that might otherwise be realized from further litigation with Malibu. Malibu's agreed withdrawal of the Malibu Claim benefits the Debtors' estates by removing nearly $10 million from the general unsecured claims pool.

29. On the whole, the proposed settlement falls within the range of what the Trustee determined to be reasonable, based on his independent pre-mediation investigations and analyses, as discussed above.

**The Settlement**

30. Following extensive negotiations as part of the Mediation, the Trustee and Malibu entered into the Settlement Agreement, a true and correct copy of which is attached to the Proposed Order as <u>Exhibit 1</u>.

31. The Trustee firmly believes that the settlement memorialized in the proposed Settlement Agreement maximizes the value of the estates for the benefit of all creditors, including Mr. Borisch (to the extent his claims are allowed). The Settlement Agreement is an outcome that provides significant value to the Debtors' bankruptcy estates, and eliminates the risks associated with years of protracted legal proceedings which, even if successful, would significantly reduce any recovery by the costs of such litigation. Accordingly, the Trustee strongly believes the Settlement Agreement meets the standard of reasonableness under rule 9019(a) of the Federal Rules of Bankruptcy Procedure and should be approved.

32. As described herein, the Settlement Agreement resolves all of the aforementioned Estate Claims, and grants releases to Malibu and its officers and directors. The releases included also would encompass additional claims the bankruptcy estates may have beyond those outlined above.

33. The key terms of the settlement are as follows:[2]

   a. **Settlement Payment**. Malibu shall pay to the Trustee in good funds the sum of Three Million, Five Hundred Thousand U.S. Dollars ($3,500,000.00) (the "Settlement Payment"), within three (3) business days after the Effective Date.

   b. **Knoxville Lease Assignment**. In addition to the Settlement Payment and Malibu's releases set forth in Paragraph 7 of the Settlement Agreement, the Trustee will seek to assume and assign, or modify its master lease to allow for such assignment of, the Debtors' lease rights in the Debtors' Knoxville dealership location; *provided* that Malibu shall: (i) pay all cure amounts due to the applicable landlord pursuant to section 365 of the Bankruptcy Code in connection with such assumption, assignment or modification (the "Cure Amounts") and (ii) purchase from the Trustee, at the Debtors' cost, any and all FF&E, merchandise, and service parts maintained by the Debtors at the Knoxville location (the "Purchase Price" and, collectively with the Cure Amounts, the "Knoxville Payments"); *provided* further that Malibu shall

---

[2] The summary contained in this Motion is qualified in its entirety by the provisions of the Settlement Agreement. To the extent anything in this Motion is inconsistent with the Settlement Agreement, the terms of the Settlement Agreement shall control.

12

4873-2571-5693

    only be obligated to make the Knoxville Payments if Malibu successfully negotiates a new or modified lease with the applicable landlord. If Malibu is unwilling or unable to negotiate a new or modified lease with the applicable landlord by December 1, 2024, the Trustee, in his discretion, may assign such lease rights and sell the applicable personal property to other third parties.

  c. **Cooperation of the Parties**. The Parties agree to cooperate with one another to provide information necessary to obtain entry of an order approving the Settlement Agreement.

  d. **Mutual Releases**. The Trustee and Malibu provide mutual releases to one another, including Malibu's release of the Malibu Claim, and the Trustee's release of the Estate Claims, as set forth more fully in Paragraphs 7 and 8 of the Settlement Agreement.

34. The Trustee believes entry into the Settlement Agreement is in the best interests of the Debtors, their bankruptcy estates, and each of their respective stakeholders (including all general unsecured creditors). ***First***, the Settlement Agreement resolves significant disputes between the Debtors and Malibu, the outcome of which is inherently uncertain, and resolves a number of material open issues in this case, including plan funding and the release of a substantial general unsecured claim asserted by Malibu. ***Second***, the Settlement Agreement provides certainty because it provides a substantial recover that can be used toward plan funding and provides a path to finalizing the liquidation and wind-down of the Debtors' bankruptcy estates. ***Third***, the Settlement Agreement avoids costly, risky, and protracted litigation that would be required to resolve the outstanding issues. ***Fourth***, the Settlement Agreement is supported by the estates' largest stakeholders, including M&T Bank and the Committee.

35. The Trustee has concluded in his sound business judgment that settlement of the outstanding issues with Malibu as contemplated by the Settlement Agreement is in the best interests of the Debtors' bankruptcy estates and all parties in interest. Accordingly, the Trustee seeks authorization to enter into the Settlement Agreement and implement its terms as set forth therein and in the Proposed Order.

## Basis for Relief Requested

**I.　Settlements Are Favored in Bankruptcy, and the Trustee's Business Judgment Is Given Significant Deference.**

36.　Bankruptcy Rule 9019(a) provides, in relevant part:

> On motion by the [debtor in possession] and after notice and a hearing, the court may approve a compromise or settlement. Notice shall be given to creditors, the United States trustee, . . . as provided in Rule 2002 and to any other entity as the court may direct.

Fed. R. Bankr. P. 9019(a).

37.　"To minimize litigation and expedite the administration of a bankruptcy estate, compromises are favored in bankruptcy." *Myers v. Martin (In re Martin)*, 91 F.3d 389, 393 (3d Cir. 1996) (internal citation and quotation marks omitted); *In re Idearc Inc.*, 423 B.R. 138, 182 (Bankr. N.D. Tex. 2009), *aff'd*, 662 F.3d 315 (5th Cir. 2011). Settlements are considered a "normal part of the process of reorganization" and a "desirable and wise method[] of bringing to a close proceedings otherwise lengthy, complicated, and costly." *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602 (5th Cir. 1980) (citations omitted) (decided under the Bankruptcy Act).

38.　A bankruptcy court may, after appropriate notice and a hearing, approve a compromise or settlement so long as the proposed settlement is fair, reasonable, and in the best interest of the estate. *See Official Comm. of Unsecured Creditors v. Moeller (In re Age Refin. Inc.)*, 801 F.3d 530, 540 (5th Cir. 2015). Ultimately, a decision to accept or reject a compromise or settlement is within the sound discretion of the Court. *United States v. AWECO, Inc. (In re AWECO, Inc.)*, 725 F.2d 293, 297 (5th Cir. 1984) (citing *Rivercity v. Herpel (In re Jackson Brewing Co.)*, 624 F.2d 599, 602–03 (5th Cir. 1980)); *In re ASARCO LLC*, No. 05-21207, 2009 WL 8176641, at *10 (Bankr. S.D. Tex. June 5, 2009).

39. Generally, the role of the bankruptcy court is not to decide the issues in dispute when evaluating a settlement. *Watts v. Williams*, 154 B.R. 56, 59 (S.D. Tex. 1993). Instead, the court should determine whether the settlement as a whole is fair and equitable. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424 (1968).

40. Furthermore, a proposed settlement "need not result in the best possible outcome for the debtor, but must not fall beneath the lowest point in the range of reasonableness." *In re Idearc Inc.*, 423 B.R. at 182 (quoting *Vaughn v. Drexel Burnham Lambert Grp., Inc. (In re Drexel Burnham Lambert Grp., Inc.)*, 134 B.R. 499, 505 (Bankr. S.D.N.Y. 1991) (internal quotation marks omitted)). "Basic to" the process of evaluating proposed settlements, then, "is the need to compare the terms of the compromise with the likely rewards of litigation." *TMT Trailer Ferry, Inc.*, 390 U.S. at 425.

## II. The Settlement with Malibu Satisfies the Three-Factor Test Courts in the Fifth Circuit Employ to Analyze Proposed Settlements.

41. To determine whether a settlement is fair and equitable, this Court should consider and evaluate the following factors: "(1) [t]he probability of success in the litigation, with due consideration for the uncertainty in fact and law, (2) [t]he complexity and likely duration of the litigation and any attendant expense, inconvenience and delay, and (3) [a]ll other factors bearing on the wisdom of the compromise." *Official Comm. of Unsecured Creditors v. Cajun Elec. Power Coop., Inc. (In re Cajun Elec. Power Coop., Inc.)*, 119 F.3d 349, 356 (5th Cir. 1997) (citing *In re Jackson Brewing Co.*, 624 F.2d at 602); *Connecticut Gen. Life Ins. Co. v. United Cos. Fin. Corp. (In re Foster Mortg. Corp.)*, 68 F.3d 914, 917 (5th Cir. 1997); *In re Wright*, 545 B.R. 541, 561 (Bankr. S.D. Tex. 2016); *see also TMT Trailer Ferry, Inc.*, 390 U.S. at 424–25 (providing that in determining whether a settlement is fair and equitable, a court should consider "the probabilities of ultimate success should the claim be litigated…[,] the complexity, expense, and likely duration

15

of such litigation, the possible difficulties of collecting on any judgment which might be obtained, and all other factors relevant to a full and fair assessment of the wisdom of the proposed compromise.").

42.   Factors "bearing on the wisdom of the compromise" include: (a) "the paramount interest of creditors with proper deference to their reasonable views"; and (2) "the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion." *In re Foster Mortg. Corp.*, 68 F.3d at 917–18; *Cajun Electric*, 119 F.3d at 356; *In re Wright*, 545 B.R. at 561.

43.   In *Foster Mortgage*, the Court of Appeals for the Fifth Circuit vacated and remanded a bankruptcy court's approval of a debtor's settlement with its parent company where it concluded that the bankruptcy court failed to take into consideration "that nearly all creditors in interest opposed this settlement and that the settlement was reached between insiders without the participation of the creditors." *See In re Foster Mortg. Corp.*, 68 F.3d at 918. Thus, when considering creditors' paramount interests and the process by which the settlement was reached, this Court should recognize that the settlement has the support of the estates' most significant creditor (M&T Bank) and the statutory body appointed to represent the interest of all general unsecured creditors. As such, the Trustee believes that the settlement is fair, equitable, in the best interest of the Debtors' bankruptcy estates, and meets each of the *Jackson Brewing* factors as well as the heightened standards espoused in *Foster Mortgage*.

A.   **The Trustee is not Certain to Succeed in Litigating the Issues with Malibu.**

44.   The claims and causes of action resolved as part of the Settlement Agreement are complex, and the risks of litigation are high. As detailed above, there are few settled issues of fact or law in connection with such claims and causes of action. If the parties litigated these claims

4873-2571-5693

and causes of action, Malibu has made clear that it would deny and defend liability, leading to uncertainty as to how such claims would be resolved. In addition, Malibu has indicated it would assert counterclaims (as demonstrated by the Malibu Claim). While the Trustee believes the estates have meritorious objections to the Malibu Claim, the added complexity of these issues creates substantial uncertainty as to whether the Trustee (or his successor in interest) would prevail if such claims were litigated in or outside of this Court. The Settlement Agreement provides certainty where success in any litigation with Malibu would be far from certain. Accordingly, the Settlement Agreement satisfies the first factor of the *Jackson Brewing* test.

      **B.**    **Continued Litigation with Malibu Would Be Complex, Costly, and Inconvenient.**

    45.    As discussed above, the issues involved with the released claims and causes of action are extremely complex. There are numerous disputed issues of law and fact that are unlikely to be resolved quickly by any court or through any singular pre-trial filing. Moreover, the Trustee believes that Malibu may have valid defenses to some or all of these claims. Litigation of the disputes raised at the Mediation would be lengthy and costly, and the bankruptcy estates lack the necessary funding to pursue litigation in connection with these issues. Although the Trustee and the Committee have considered contingency counsel to take such claims to trial, the Trustee recognizes that contingency counsel would reduce any potential recoveries, which may take years to realize, if ever.

    46.    In contrast, the Settlement Agreement provides a quantifiable and certain resolution of all outstanding issues related to claims against Malibu, and ensures that the estates will realize <u>at least</u> $3.5 million immediately (and more upon assumption and assignment of the Knoxville lease). The Trustee does not believe that expending time or resources litigating claims against Malibu would materially further the interests of the bankruptcy estates or their creditors,

17

4873-2571-5693

considering the inherent risk of nonrecovery and the benefit of a comprehensive settlement that promotes closure. Accordingly, the Settlement Agreement satisfies the second factor of the *Jackson Brewing* test.

### C. The Settlement is in the Best Interests of Creditors and was Conducted at Arms-Length, in Good Faith and with Participation by the Estates Primary Creditors.

47. The settlement is in the best interests of creditors, as evidenced by, among other things, the Committee and M&T Bank's active participation, negotiation, and support thereof. The Committee represents the interests of, and is mindful of its fiduciary obligation to act in the best interest of, all general unsecured creditors. M&T Bank on the other hand is likely to be the single, largest general unsecured creditor whose $105 million secured claim will not be paid in full from the liquidation sales of its collateral. Not only were M&T Bank and the Committee present at the Mediation, but the Trustee considered their reasonable views before pursuing the settlement.[3]

48. The Settlement Agreement maximizes recovery to the bankruptcy estates from the Malibu claims and provides certainty while avoiding the risks, costs, and delays associated with litigation. In addition, the Settlement Agreement provides significant benefit to the bankruptcy estates by bringing in an immediate cash payment of $3.5 million, release of a significant general unsecured claim (nearly $10 million), and realization of additional benefits from the assignment of the Knoxville lease and sale of personal property therein. It is thus in the best interest of the Debtors' estates, considering creditors' reasonable views.

49. Additionally, the settlement with Malibu provides the Trustee with additional cash to contribute toward a confirmable a plan of liquidation. Without sufficient cash reserves to fund

---

[3] The Trustee contacted counsel for Mr. Borisch in advance of the Mediation to obtain his reasonable views of a potential settlement. Mr. Borisch's counsel indicated Mr. Borisch's belief that all claims belonged to Mr. Borisch, and that he would oppose any settlement with Malibu that precluded him from pursuing such claims on his own.

18

4873-2571-5693

a plan, these cases would have to convert to chapter 7, which could delay recoveries for creditors. Approval of the Settlement Agreement provides much-needed closure to numerous disputed issues and represents the best possible path to reach a successful conclusion to this chapter 11 case for all stakeholders.

50.     Furthermore, the Settlement Agreement is the product of arms-length negotiations, and there was no fraud or collusion by or among the Trustee, the Committee, M&T Bank, or Malibu. Accordingly, the Settlement Agreement satisfies the third factor of the *Jackson Brewing* test.

51.     Based on the foregoing considerations, the Trustee respectfully submits that the Settlement Agreement with Malibu represents a fair and reasonable compromise that is in the best interest of the Debtors' bankruptcy estates. Pursuant to the Proposed Order, the Trustee will be able to avoid the expense, delay, and distraction of further litigation with Malibu and resolve significant material issues standing in the way of proposing a confirmable plan of liquidation. Accordingly, the Trustee respectfully requests that the Court authorize him to enter into and implement the terms of the Settlement Agreement as such action is a reasonable exercise of the Trustee's business judgment and in the best interest of its bankruptcy estates.

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 7th day of October, 2024.

**GRAY REED**

By: */s/ Aaron M. Kaufman*
Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Lydia R. Webb
Texas Bar No. 24083758
Emily F. Shanks
Texas Bar No. 24110350
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:  (469) 320-6050
Facsimile:  (469) 320-6886
Email:  jbrookner@grayreed.com
akaufman@grayreed.com
lwebb@grayreed.com
eshanks@grayreed.com

*Counsel to Mark E. Andrews,
Chapter 11 Trustee*

## Certificate of Service

I certify that on October 7, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Aaron M. Kaufman*
Aaron M. Kaufman

4873-2571-5693