Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile:  (214) 953-1332
Email:      jbrookner@grayreed.com
            akaufman@grayreed.com
            lwebb@grayreed.com
            eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE NORTHERN DISTRICT OF TEXAS
### FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § § § | Chapter 11 |
| TOMMY'S FORT WORTH, LLC., *et al.,*[1] | § § | Case No. 24-90000 (ELM) |
| Debtors. | § § § | (Jointly Administered) |

### MOTION FOR ENTRY OF AN ORDER:
### (I) DETERMINING THAT CERTAIN CLAIMS
### AND CAUSES OF ACTION ARE PROPERTY OF THE
### ESTATES; (II) DETERMINING THAT THE AUTOMATIC STAY
### APPLIES TO SUCH ESTATE CLAIMS; AND (III) ENFORCING THE
### AUTOMATIC STAY AND ENJOINING MATTHEW A. BORISCH FROM
### <u>PURSUING SUCH ESTATE CLAIMS; AND (IV) GRANTING RELATED RELIEF</u>

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

4869-3046-8076

**IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE ELECTRONICALLY AT HTTPS://ECF.TXNB.USCOURTS.GOV/ NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. IF YOU DO NOT HAVE ELECTRONIC FILING PRIVILEGES, YOU MUST FILE A WRITTEN OBJECTION THAT IS ACTUALLY RECEIVED BY THE CLERK AND FILED ON THE DOCKET NO MORE THAN TWENTY-FOUR (24) DAYS AFTER THE DATE THIS MOTION WAS FILED. OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**A HYBRID HEARING WILL BE CONDUCTED ON THIS MATTER ON OCTOBER 31, 2024 AT 1:30 P.M. (CT) IN ROOM 204, U.S. COURTHOUSE, 501 W. TENTH STREET, FORT WORTH, TEXAS 76102. YOU MAY PARTICIPATE IN THE HEARING IN PERSON OR BY AUDIO AND VIDEO CONNECTION.**

**AUDIO COMMUNICATION WILL BE BY USE OF THE COURT'S DIAL-IN FACILITY. YOU MAY ACCESS THE FACILITY AT 1.650.479.3207. VIDEO COMMUNICATION WILL BE BY THE USE OF THE CISCO WEBEX PLATFORM. CONNECT VIA THE CISCO WEBEX APPLICATION OR CLICK THE LINK ON JUDGE MORRIS'S HOME PAGE. THE MEETING CODE IS 473 581 124. CLICK THE SETTINGS ICON IN THE UPPER RIGHT CORNER AND ENTER YOUR NAME UNDER THE PERSONAL INFORMATION SETTING.**

**VIRTUAL HEARING APPEARANCES MUST BE MADE ELECTRONICALLY IN ADVANCE OF ELECTRONIC HEARINGS. TO MAKE YOUR APPEARANCE, CLICK THE "ELECTRONIC APPEARANCE" LINK ON JUDGE MORRIS'S HOME PAGE. SELECT THE CASE NAME, COMPLETE THE REQUIRED FIELDS AND CLICK "SUBMIT" TO COMPLETE YOUR APPEARANCE.**

Mark E. Andrews, as the chapter 11 trustee (the "Trustee") appointed in the above-captioned chapter 11 bankruptcy cases of Tommy's Fort Worth, LLC and its debtor affiliates (together, the "Debtors"), respectfully states the following in support of this motion (this "Motion"):

## Introduction

1.    Mr. Borisch thinks himself immune from the consequences of his own actions. He caused his companies to borrow approximately $105 million from M&T Bank. When the bank called a default, he consented to the appointment of a receiver. When the receiver took control of his companies, he took it back by causing the Debtors to commence these bankruptcy cases. When this Court denied two of the Debtors' emergency motions filed shortly after the petition date, the Debtors consented to the appointment of the Trustee.

2.      Since the Trustee's appointment in mid-June, the Trustee has made great strides to monetize the Debtors' assets.  He successfully negotiated for consensual use of M&T Bank's cash collateral.  He then obtained Court authority to conduct liquidation sales of the Debtors' boat inventory (including hundreds of Malibu boats).  And he has now successfully negotiated a settlement with Malibu that will provide a meaningful path toward recovery for the estates' creditors.

3.      But despite choosing this forum, Mr. Borisch refuses to play by the rules of the Bankruptcy Code and to allow the Trustee to discharge his fiduciary duties.  Mr. Borisch has his own agenda.  First, Mr. Borisch has sued Malibu on his own, contending that Mr. Borisch has the right to recover damages from Malibu.  That is despite having previously verified a complaint against Malibu on behalf of the Debtors, and further despite having previously testified in this Court about the merits of such claims.  Second, Mr. Borisch seeks to assert affirmative counterclaims against M&T Bank.  Such counterclaims are the same as those that the Trustee proposed to release under the terms of this Court's cash collateral orders, subject to the Committee's challenge rights.  Mr. Borisch's agenda undermines the Trustee's efforts to meaningfully administer these estates.

4.      The Trustee has been patient with Mr. Borisch and has tried to encourage Mr. Borisch to limit his actions to avoid interference with the Trustee's efforts.  Mr. Borisch has declined to comply with the Trustee's requests or the strict requirements of the Bankruptcy Code. This Motion has become necessary to compel Mr. Borisch to cease and desist his continued violations of the automatic stay.

## **Relief Requested**

5.      By this Motion, the Trustee seeks entry of an order, substantially in the form attached to this Motion as **Exhibit A** (the "Proposed Order"): (i) determining that the claims and

4869-3046-8076

causes of action that Matthew A. Borisch ("Mr. Borisch") has asserted or seeks to assert against Malibu Boats, Inc., Malibu Boats, LLC, and its former CEO Jack Springer (collectively, "Malibu") and M&T Bank ("M&T Bank"), are property of the Debtors' bankruptcy estates (collectively, the "Estate Claims"); (ii) determining that the automatic stay applies to such Estate Claims; (iii) enjoining Mr. Borisch from pursuing such Estate Claims, or any other claims which constitute property of the Debtors' bankruptcy estates; and (iv) granting related relief.

## Jurisdiction and Venue

6.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334, and this is a core matter pursuant to 28 U.S.C. § 157(b).

7.      Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

8.      The bases for the relief requested herein are sections 105, 362 and 541 of title 11 of the United States Code (the "Bankruptcy Code") and rules 6004 and 9014 of the Federal Rules of Bankruptcy Procedures (the "Bankruptcy Rules") and the corresponding local rules.

## Background

9.      The Court is familiar with the Debtors' litigious history with M&T Bank and Malibu, having heard much of the following facts during a lengthy evidentiary hearing on June 6, 2024.  The following serves to refresh the Court of the relevant facts.

10.      On May 18, 2023, the Debtors executed and delivered to M&T Bank a *Variable Rate Demand Note (Floor Plan)* dated May 18, 2023.  The Debtors also executed and delivered to M&T Bank a *Revolving Line Note (New York)* dated May 18, 2023, and a *Loan Agreement (Floor Plan Financing)* dated May 18, 2023.  Pursuant to these notes and loan agreement, M&T Bank made two revolving credit loans to the Debtors for purposes of providing floor plan financing and working capital, in an aggregate maximum principal amount totaling over

$115,000,000.00.  The loans from M&T Bank were secured by first priority liens in substantially all of the Debtors' collateral, including new and used marine inventory.

11.     For reasons not directly relevant to this Motion, the Debtors struggled to remain in compliance with their loan agreements to M&T Bank.  Within months of closing on the new loan, M&T Bank notified the Debtors that they had sold boats out of trust.  The Debtors were able to cure these "sales out of trust" issues several times over the course of 2023, but the ongoing audits by M&T Bank presented problems for the Debtors in negotiating new dealership agreements with their primary manufacturer, Malibu.

12.     Ultimately, on February 27, 2024, M&T Bank notified the Debtors that they were in default under their loan agreements.  Malibu thereafter confirmed with the Debtors that Malibu would no longer consider renewing dealership agreements for the new model years, and Malibu further terminated the Debtors' multi-year dealership agreements for the Texas locations.  On March 29, 2024, M&T Bank notified the Debtors of its intent to exercise remedies as a result of the ongoing defaults and made demand for repayment of the loans in full.

13.     On April 1, 2024, M&T Bank commenced a collection action and receivership action against the Debtors in the State of Michigan, Circuit Court for the County of Kent (the "Michigan Litigation").  Additionally, M&T Bank brought a cause of action against Mr. Borisch, personally, to recover alleged damages under certain guarantees.  The Debtors and Mr. Borisch ultimately consented to the appointment of a receiver, who attempted to operate the Debtors' business for a brief period until Mr. Borisch caused the Debtors to commence these bankruptcy cases, as discussed below.

14.     On April 10, 2024, Mr. Borisch caused the Debtors to file a *Verified Complaint* (the "Debtors' Complaint") against Malibu in the U.S. District Court for the Eastern District of

Tennessee (the "Tennessee Court"), which action was captioned *Tommy's Castaic, LLC et al. v. Malibu Boats, Inc. et al.,* Case No. 3:24-CV-00166-KAC-JEM.  A true and correct copy of the Debtors' Complaint is attached hereto as **Exhibit B**.  The Debtors' Complaint alleged various bad acts by Malibu, including:

(a) Malibu's alleged false representations and false promises to the Debtors, including that Malibu allegedly misrepresented market demand for Malibu boats (Exh. B at ¶¶ 80-81);

(b) Malibu's alleged false promises to enter into a repurchase agreement with M&T Bank (*Id.* at ¶ 65);

(c) Malibu's alleged false promises to renew the Debtors' dealership agreements for Model Year 2024 (*Id.* at ¶¶ 71-72); and

(d) Malibu's alleged false promises to pay certain rebate and incentive payments (*Id.* at ¶ 63).

15.    The Debtors' Complaint asserted the following causes of action:

(a) Breach of Contract (Counts I–III);
(b) Quantum Meruit (Count IV);
(c) Unjust Enrichment (Count V);
(d) Promissory Estoppel (Count VI);
(e) Intentional Misrepresentation/Fraud (Count VII); and
(f) Negligent Misrepresentation (Count VIII).

16.    The Debtors alleged that Malibu's misrepresentations and false promises induced Mr. Borisch and the Debtors to take actions, including increasing the size of their floor plan, and ordering and accepting delivery of a volume and mix of Malibu boats that were not suited to the Debtors' needs, which resulted in the Debtors' incurrence of unnecessary interest expense.  *Id.* at ¶ 99.  The Debtors' Complaint contended that this increased financial burden, together with Malibu's failure to perform its alleged promises, caused the Debtors to default to M&T Bank, bringing about the end of the Debtors' ordinary operations.  *Id.* at ¶ 1.

17.    In an effort to take back control from the receiver appointed in the Michigan Litigation, the Debtors filed voluntary petitions for relief under chapter 11 of the Bankruptcy

Code on May 20, 2024 (the "Petition Date").  Mr. Borisch authorized and directed the filing of the Debtors' bankruptcy petitions.

18.      As the Court is aware, Mr. Borisch was an active participant in these bankruptcy cases, serving as a key witness for the Debtors in pursuing relief from Malibu and M&T Bank in the first few weeks of the cases.  Indeed, on June 3, 2024, the Debtors filed an emergency motion to enforce the automatic stay against Malibu under section 362 of the Bankruptcy Code.  *See Debtors' Emergency Motion to Enforce Automatic Stay and Punitive Damages for Willful Violations of the Automatic Stay Against Malibu Boats, Inc. and Malibu Boats, LLC* [Docket No. 107] (the "Debtors' Stay Motion").  Mr. Borisch filed a declaration in support of the Debtors' Stay Motion, which attached 51 exhibits.  *See* Docket No. 113.  Mr. Borisch made several of the same arguments in support of the Debtors' Stay Motion that were alleged in the Debtors' Complaint against Malibu in the Tennessee Court.

19.      On June 6, 2024, the Court conducted an evidentiary hearing on the Debtors' Stay Motion and the following day, on June 7, 2024, issued its findings of fact and conclusions of law denying the Debtors' Stay Motion.  In that same ruling, the Court denied the Debtors' motion for use of cash collateral, concluding among other things that the Debtors had not demonstrated that M&T Bank would be adequately protected.

20.      The following week, the Debtors consented to the appointment of a chapter 11 trustee, and on June 17, 2024, the Court approved the appointment of the Trustee.

21.      The Trustee thereafter elected to nonsuit the Debtors' Complaint against Malibu without prejudice to pursuing those claims at a later date.  As this Court will recall, the Trustee resolved Malibu's objections to the Trustee's boat liquidation procedures through very carefully negotiated terms, which included provisions for Malibu to repurchase approximately

$2.5 million of the Debtors' inventory, procedures for obtaining customer acknowledgements for warranty purposes, and an agreed-upon mediation process to occur within 45 days of the order. See Docket No. 364, ¶¶ 33–38.  That order was entered on August 9, 2024.

22.    One week later, on August 16, 2024, Mr. Borisch filed a new complaint (the "Borisch Complaint") against Malibu in the Tennessee Court (the "Tennessee Litigation"). A true and correct copy of the Borisch Complaint is attached hereto as **Exhibit C**.  There are few substantive differences between the Borisch Complaint and the Debtors' Complaint.  In short, the Borisch Complaint alleges all the same facts, adds a few more, and asserts the following four causes of action, which are substantially the same as those asserted just four months earlier in the Debtors' Complaint:

(a)  Fraudulent Misrepresentation (Count I), including: "Malibu and Mr. Springer purposefully and intentionally misrepresented and/or mischaracterized the data and other information known to them at the time in order ***to induce Mr. Borisch to acquiesce to their demand to increase Tommy's floor plan capacity. Their purpose was to lay the groundwork for Defendants' plan to flood Tommy's with inventory*** in order to artificially inflate Malibu's sales figures."  Borisch Complaint, ¶ 116 (emphasis added).  "Mr. Borisch relied upon the misrepresentations and omissions made by Malibu and Mr. Springer regarding market conditions, consumer demand, and the appropriate inventory mix when he gave in and agreed to accept the volume and inventory mix ***that Malibu was demanding that Tommy's accept***." *Id.* ¶ 121 (emphasis added).

(b)  Negligent Misrepresentation (Count II), including: "Given the ***Parties' prior course of dealing in which Malibu and Tommy's had worked together as partners and in good faith***, Mr. Borisch reasonably relied upon Malibu's and Mr. Springer's misrepresentations, omissions, and/or mischaracterizations of their analysis and their data ***when he agreed to facilitate an increase in Tommy's floor plan capacity***." *Id.* ¶ 136 (emphasis added).

(c)  Breach of Implied Contract (Count III), including: "Malibu made those assurances in order to induce Mr. Borisch to: (1) facilitate a floor plan agreement [between Tommy's and M&T Bank] with the capacity that Malibu had demanded, which was only possible through a personal guarantee from Mr. Borisch; (2) ***pay down the interest owed to M&T and boats sold out of trust in September 2023, so as to avoid violations, by Tommy's, of the terms of its agreements with M&T Bank***, which required Mr. Borisch to personally

provide and/or guarantee millions of dollars; and (3) continue to personally inject millions of dollars into Tommy's in order to keep it operating through early 2024." *Id.* ¶ 153 (emphasis added).

(d) Unjust Enrichment (IV), including: "***In providing and arranging for the funding for Tommy's expansion of its floor plan capacity, Mr. Borisch provided a valuable benefit to Malibu***, which allowed Malibu to inflate its purported sales figures, thereby driving up its profits and stock price." *Id.* ¶ 160 (emphasis added).  "In providing or arranging for approximately $29 million to be provided to Tommy's between September 2023 and February 2024, ***Mr. Borisch enabled Tommy's to avoid violating its agreements with M&T Bank and to stay in operation***. In turn, Malibu continued to benefit from Tommy's continued operation, both through further sales and through its provision of additional." *Id.* ¶ 161 (emphasis added).

23.     Below is a comparison of the causes of action asserted in the two lawsuits:

| Cause of Action | Debtors' Complaint | Borisch Complaint |
|---|---|---|
| Breach of Contract | Counts I-III | Count III |
| Quantum Meruit | Count IV | n/a |
| Unjust Enrichment | Count V | Count IV |
| Promissory Estoppel | Count VI | n/a |
| Intentional Misrepresentation/Fraud | Count VII | Count I |
| Negligent Misrepresentation | Count VIII | Count II |

24.     On August 22, 2024, the Trustee sent Mr. Borisch a letter informing him that the Borisch Complaint asserted Estate Claims and was likely a violation of the automatic stay.  A true and correct copy of the Trustee's August 22, 2024 letter is attached hereto as **Exhibit D**. The Trustee noted that the claims in the Borisch Complaint were "not sufficiently distinguishable from the claims previously asserted by the Debtors."  Therefore, the Trustee requested that Mr. Borisch amend his complaint to remove the Estate Claims and to confirm that, contrary to the allegations in his complaint, he was not attempting to exercise control over any claims that were previously asserted, or which could have been asserted, by the Debtors, or that otherwise belong to the Debtors' bankruptcy estates.  By e-mail response dated August 27, 2024, Mr. Borisch

9

rejected the Trustee's request.  A true and correct copy of Mr. Borisch's response to the Trustee's letter is attached hereto as **Exhibit E**.[2]

25.     On October 1, 2024, the Trustee, Malibu, M&T Bank, and the Official Unsecured Creditors' Committee (the "Committee") attended a 14-hour mediation with the Hon. Nancy F. Atlas (ret.).  As a result of the mediation, the Trustee has reached a settlement with Malibu, which includes, among other things, payment by Malibu of $3.5 million in exchange for full and final mutual releases between Malibu and the Trustee, for the Debtors' bankruptcy estates.[3]  The Borisch Complaint interferes with the Trustee's efforts to effectuate such settlement.

26.     Unfortunately, the Borisch Complaint is not the only thing Mr. Borisch is doing outside of the bankruptcy process to frustrate the Trustee's and the Committee's efforts to maximize value for these bankruptcy estates.  On October 3, 2024, in the Michigan Litigation, Mr. Borisch filed a *Motion for Leave to Amend Answer and Add Counterclaim* (the "Motion to Amend") and a supporting brief.  *See* **Exhibits G & H**.  The Motion to Amend references six proposed counterclaims (the "Proposed Counterclaims") of Mr. Borisch: (1) Breach of Contract – Covenant of Good Faith and Fair Dealing; (2) Breach of Contract; (3) Breach of Fiduciary Duty; (4) Fraudulent Inducement; (5) Negligence; and (6) Declaratory Judgment Discharging Mr. Borisch From His Obligations Under the Guaranty.

**Basis for Relief Requested**

I.      **The Automatic Stay Applies to Estate Claims and Causes of Action.**

27.     Section 362 of the Bankruptcy Code contains a self-executing injunction that, together with other provisions of the Bankruptcy Code, provides a debtor with a "breathing

---

[2] On October 1, 2024, Malibu filed a motion in the Tennessee Court to transfer venue of the Borisch Complaint to this District.  The venue motion remains pending as of the filing of this Motion, but a true and correct copy of such motion (without exhibits) is attached hereto as **Exhibit F**.

[3] The Trustee is filing a separate motion to approve the settlement contemporaneously with the filing of this Motion.

spell" that is essential to the bankruptcy process.  *See Halo Wireless, Inc. v. Alenco Commc'ns, Inc. (In re Halo Wireless, Inc.)*, 684 F.3d 581, 586 (5th Cir. 2012); *Campbell v. Countrywide Home Loans, Inc.*, 545 F.3d 348, 355 (5th Cir. 2008); *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142, 1146 (5th Cir. 1987); *see also Midlantic Nat'l Bank v. N.J. Dep't of Envtl. Prot.*, 474 U.S. 494, 503 (1986) ("The automatic stay provision of the Bankruptcy Code, § 362(a), has been described as one of the fundamental debtor protections provided by the bankruptcy laws." (citation and internal quotation marks omitted)).

28.    "The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse.'"  *Reliant Energy Servs., Inc. v. Enron Canada Corp.*, 349 F.3d 816, 825 (5th Cir. 2003) (citing *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)); *see also Commonwealth Oil Refin. Co. v. EPA (In re Commonwealth Oil Refin. Co.)*, 805 F.2d 1175, 1182 (5th Cir. 1986) ("The purpose of the automatic stay is to give the debtor a 'breathing spell' from his creditors, and also, to protect creditors by preventing a race for the debtor's assets." (citation omitted)).  Or, as stated by the Fifth Circuit, the stay "prevent[s] a chaotic and uncontrolled scramble for the debtor's assets in a variety of uncoordinated proceedings in different courts."  *Hunt v. Bankers Tr. Co.*, 799 F.2d 1060, 1069 (5th Cir. 1986).

29.    The legislative history of section 362 of the Bankruptcy Code indicates that Congress intended for the scope of the automatic stay to be sweeping, in order to effectuate its protective purpose on behalf of debtors:

> The automatic stay is one of the most important protections provided by the Bankruptcy laws. Nevertheless, the Bankruptcy Courts must have the power to enjoin actions not covered by the automatic stay, in order that the bankruptcy case may proceed unembarrassed by multiple litigation. The

> automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.

H.R. Rep. No. 95-595, at 12, 340 (1977) (emphasis added), *as reprinted in* 1978 U.S.C.C.A.N. 5963, 5973, 6296-97; S. Rep. No. 95-989, at 49, 55-56 (1978), *as reprinted in* 1978 U.S.C.C.A.N. 5787, 5840-41.

30.    Specifically, section 362(a)(3) enjoins "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3). Section 541 of the Bankruptcy Code establishes the bounds of the bankruptcy estate. *See* 11 U.S.C. § 541(a). The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case," wherever located and by whomever held. *Id.* § 541(a)(1).

31.    Thus, there can be no doubt that any claim or cause of action owned by the Debtors as of the Petition Date constitutes "property of the estate" pursuant to section 541 of the Bankruptcy Code. *Id.*; *see also, e.g., In re Cantu,* 784 F.3d 253, 257 (5th Cir. 2015)*; Yaquinto v. Segerstrom (In re Segerstrom)*, 247 F.3d 218, 223-24 (5th Cir. 2001); *In re Stat-Tech Intern. Corp.*, 47 F.3d 1054, 1057 (10th Cir. 1995); *La. World Exposition v. Fed. Ins. Co. (In re La. World Exposition)*, 858 F.2d 233, 245 (5th Cir. 1988); *In re S.I. Acquisition, Inc.*, 817 F.2d at 1149; *In re Strada Design Associates, Inc.*, 326 B.R. 229, 235 (Bankr. S.D.N.Y. 2005).

32.    A creditor's claims that derive from, or come as a result of, some damage caused to a debtor in bankruptcy, those claims are known as "derivative claims" and constitute property of the debtor's bankruptcy estate. *See Meridian Cap. CIS Fund v. Burton (In re Buccaneer Res., L.L.C.)*, 912 F.3d 291, 293 (5th Cir. 2019); *see also Torch Liquidating Tr. ex rel. Bridge Associates L.L.C. v. Stockstill*, 561 F.3d 377, 386 (5th Cir. 2009) ("[A] cause of action for breach

12

of fiduciary duty owed to the corporation that is property of the corporation at commencement of the chapter 11 case becomes property of the debtor's estate, regardless of whether outside of bankruptcy the case was more likely to be brought by the corporation directly or by a shareholder or creditor through a derivative suit[.]"); *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008) (citing *Schertz-Cibolo-Universal City, Ind. School District v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1285 (5th Cir. 1994)) ("If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate."); *In re Fort Worth Osteopathic Hosp., Inc.*, 387 B.R. 706, 712 (Bankr. N.D. Tex. 2008) ("If a bankruptcy intervenes, it is the estate that is entitled to recovery on claims pursued derivatively of a debtor").

33.    "Derivative claims" such as those asserted by Mr. Borisch against Malibu in Tennessee, or which Mr. Borisch seeks to assert against M&T Bank in Michigan, constitute property of the Debtors' estates.  As such, Mr. Borisch's pursuit of them violates section 362(a)(3).  *See In re S.I. Acquisition, Inc.*, 817 F.2d at 1150 ("[A] section 362(a)(3) stay applies to a cause of action that under state (or federal) law belongs to the debtor [or] that seeks to recover property of the estate where the property is held or controlled by a person or entity other than the debtor."); *In re Educators Grp. Health Tr.*, 25 F.3d at 1284 ("If a cause of action belongs to the estate, then the trustee has exclusive standing to assert the claim.").

34.    This is true even if, before the bankruptcy filing, Mr. Borisch would otherwise have been entitled to assert such derivative claims.  *See In re NC12, Inc.*, 478 B.R. 820, 832 (Bankr. S.D. Tex. 2012) ("The Trustee's exclusive standing protects the Bankruptcy Code's distribution scheme.  Since one of the goals of the Bankruptcy Code is to preserve property of

the bankruptcy estate and ensure that similarly situated creditors receive equal distributions, if a cause of action belongs to the debtor, only the trustee or debtor in possession may pursue it.") (internal quotations omitted).

## II. The Claims Asserted by Mr. Borisch in the Tennessee Litigation Are Derivative Claims that Constitute Property of the Debtors' Estates.

35.     The Trustee has exclusive standing to prosecute the Estate Claims—whether such prosecution is through litigation, settlement, or otherwise. *In re Educators Grp. Health Tr.*, 25 F.3d at 1284. Whether a particular state-law claim belongs to the bankruptcy estate depends on (1) whether the cause of action alleges only indirect harm to a creditor, and (2) whether the debtor could have raised the claim as of the commencement of the case under applicable state law. *In re Seven Seas*, 522 F.3d at 584; *In re Educators Grp. Health Tr.*, 25 F.3d at 1284.

36.     The Fifth Circuit recently clarified the difference between direct-injury and derivative claims:

> As for direct-injury claims that belong to a particular creditor or group of creditors, ***the simple case is when the claim does not involve any harm to the debtor***. These cannot be part of the estate. [*In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008)] (quoting *In re Educators Grp. Health Trust*, 25 F.3d 1281, 1284 (5th Cir. 1994)). ***But even when the conduct harms the debtor, the creditor may also have a claim if its asserted injury does not flow from injury to the debtor.*** This means that the estate and a creditor may have separate claims against a third party arising out of the same events. *Seven Seas*, 522 F.3d at 585, 590; *Educators Trust*, 25 F.3d at 1284–85. ***To pursue a claim on its own behalf, a creditor must show this direct injury is not dependent on injury to the estate.***[]
>
> Our caselaw illustrates the difference between direct and derivative injuries. *See Seven Seas*, 522 F.3d at 585–86. The unsecured bondholders in *Seven Seas* sued a consulting firm that provided false oil reserve estimates. *Id.* at 585. The bondholders relied on those estimates when deciding to invest. *Id.* That induced reliance did not injure the debtor, only the bondholders, so the injury was direct and belonged to the creditors. *Id.* A similar example involved school districts that were creditors of a bankrupt health benefits provider. Their claim that a third-party health plan administrator misled them alleged a direct injury not

dependent on harm to the debtor. *Educators Trust*, 25 F.3d at 1285 (remanding the claim involving a direct injury to state court).

Other cases demonstrate derivative injuries. When third parties lured a debtor into transferring them oil and gas assets, they eliminated the creditors' hopes of recovering a portion of the value of those assets. *In re Lothian Oil, Inc*., 531 F. App'x 428, 439 (5th Cir. 2013). The creditors' injury (reduced bankruptcy recovery) derived from injury to the debtor (the loss of estate assets), so only the estate could sue the third parties. *Id.* at 439–40. Similarly, an alter ego suit that attempted to pierce the corporate veil and recover assets improperly moved through the corporate structure belonged only to the estate. *See In re Schimmelpenninck*, 183 F.3d 347, 358 (5th Cir. 1999). And only the estate owned a claim against a bank for aiding the debtor's managers to encumber the debtor's assets with new liens. *See In re R.E. Loans*, 2013 WL 1265205, at *5 (N.D. Tex. Mar. 28, 2013). Once again, the plaintiff's injury of a reduced bankruptcy recovery derived from harm to the debtor—that caused by the liens—so the estate owned the claim. *Id.*

*In re Buccaneer Resources, LLC*, 912 F.3d at 293–94 (emphasis added, footnote omitted).

37.    The Trustee is aware that Mr. Borisch contends that he seeks only harm caused to him, "not the Debtors."  *See* **Exhibit E**.  This explanation falls well short of the analysis required to articulate a "direct-injury" claim as illustrated by the Fifth Circuit.  The harm of which Mr. Borisch complains "flows from," and is entirely derivative of, the harm Mr. Borisch previously verified had been caused to the Debtors.  The damages he seeks, if any, are derivative of, and flow from, the injuries to the Debtors and their estates.

38.    For example, Count I of the Borisch Complaint (Fraudulent Misrepresentation), alleges that Malibu intentionally misrepresented data and other information to induce Mr. Borisch to increase *the Debtors'* floor plan capacity.  *See* Borisch Complaint, p. 26, ¶ 116.  Mr. Borisch alleges that, in relying upon these misrepresentations, he personally provided or guaranteed nearly $30 million in additional funds over the next five months in order to keep the Debtors operating.  This harm, if true, flows from the Debtors having incurred substantial indebtedness to M&T Bank to increase the Debtors' borrowing capacity.

39.    In Count II (Negligent Misrepresentation), Mr. Borisch alleges in the alternative, that he was harmed as a result of Malibu's negligent misrepresentations of market data that induced Mr. Borisch, the Debtors' President and CEO, to increase the Debtors' floor plan capacity, guarantee debt, and purchase a "flood" of unneeded inventory to the tune of "millions of dollars in damages." Mr. Borisch again fails to differentiate between the damages he suffered and that alleged initial injuries caused to the Debtors from this increased floor plan and excess inventory. There is no rational difference between these two harms. Mr. Borisch's alleged injury flows entirely from the harm allegedly caused to the Debtors.

40.    In Counts III and IV, Mr. Borisch alleges that an implied contract was created between himself and Malibu because Malibu and its CEO repeatedly assured Mr. Borisch (the Debtors' owner, President and CEO) that Malibu would take certain actions *enabling the Debtors to recover financially*. Specifically, Mr. Borisch attempts to distinguish between his own harms and those of the Debtors by arguing that Malibu intentionally made misrepresentations to specifically induce *him* to continue investing *his* personal funds and taking specific actions which enabled Malibu to benefit from *his* actions. But, once again, Mr. Borisch fails to distinguish how *his* damages would be independent from the same harms that Mr. Borisch previously claimed were suffered by *the Debtors*. Mr. Borisch's new efforts to claim an independent harm simply cannot be squared with Mr. Borisch's prior efforts, through the Debtors' Complaint (which Mr. Borisch verified) and his declaration in support of the Debtors' Enforcement Motion, to recover the same damages for the same facts and the same harms caused to the Debtors. The law compels a conclusion that these are all Estate Claims.

41.    *Lockwood v. Glassratner Advisory & Cap. Grp. LLC (In re Lockwood Holdings Inc.)*, Civ. Act. No. 4:21-cv-00456, 2024 WL 727762 at *6 (S.D. Tex. Feb. 22, 2024), is directly

on point.   In *Lockwood*, the District Court, sitting as a bankruptcy appellate court, addressed

claims alleged by the owner of the debtors against the Debtors' lender and financial advisor.   The

owner in *Lockwood* had guaranteed the debtor's indebtedness and asserted claims against his

lender like those which Mr. Borisch seeks to assert here against M&T Bank.   In that case, the

*Lockwood* court held that the harm complained of "[came] about *only* because of harm to the

debtor … Said differently (with necessary usage of a double negative), Lockwood cannot show

that his injury is not dependent on the injury to the estate." *Id.* (citing *In re Buccaneer Resources,*

*L.L.C.*, 912 F.3d at 293–94).

43.     The same is true here.   Mr. Borisch cannot show that his injuries, if any, are

independent of the injuries he previously claimed to have been suffered by the Debtors.

Although he pleads that Malibu intended to make fraudulent and negligent misrepresentations

specifically in order to induce *him* to invest *his* personal dollars, his resulting losses, if any, flow

from the harm allegedly suffered by the Debtors in their dealings with Malibu.

43.     Mr. Borisch will no doubt attempt to compare his situation to claims asserted by

creditors in the Fifth Circuit cases like *Educators Grp. Health Trust*, *Seven Seas*, or *Buccaneer*

*Resources, L.L.C.*   But these cases do not help Mr. Borisch.

44.     In *Seven Seas*, the Fifth Circuit held that third-party bondholders could assert

direct claims against the debtor's outside consulting firm because such claims were "based on

damages that *they* suffered as a result of *their* reliance on the false reserve estimates when *they*

invested in the unsecured notes," and that the debtor "***simply was not harmed by***

***misrepresentations made to the bondholders to induce them to buy***." 522 F.3d at 584 (emphasis

added).   Unlike the debtor in *Seven Seas*, Mr. Borisch has already taken the position—through

the Debtors' Lawsuit and the Debtors' Motion to Enforce—that the Debtors <u>were</u> harmed by

Malibu's alleged misconduct.  For that reason, the Fifth Circuit's reasoning in *Seven Seas* compels a different result for Mr. Borisch.

45.     As in *Seven Seas*, the plaintiffs in *Educators Grp. Health Trust* were a group of third-party school districts who sought damages from third-party health plan administrators.  In that case, the Fifth Circuit considered "the relationship between the debtor and the nature of the injury suffered," and concluded that certain claims were property of the estate and others were not.  *See In re Educators Grp. Health Trust*, 25 F.3d 1281 at 1284-86.  For example, claims that the third-party administrator mismanaged the debtor's EGHT system and caused the debtor's insolvency were property of the estate because the debtor suffered harm by the administrator's mismanagement.  *Id.*  On the other hand, claims based on the Texas Deceptive Trade Practices Act, violations of the Texas Insurance Code, fraud on the plaintiff school district, and breach of duties owed to the school district, were direct-injury claims because the underlying harm could not have injured the debtor.  *Id.*  In the Borisch Complaint, Mr. Borisch fails to allege any specific duties owed to him that resulted in an injury that was not suffered by the Debtors, in the first instance.  He claims that he was misled, but so too were the Debtors.  He claims that he lost his money that he loaned to or invested in the Debtors, but, if true, that would only be because the Debtors required additional working capital when the Debtors were allegedly forced to or duped into increasing their floor plan capacity or buying more boats than needed.  Nothing alleged in the Borisch Complaint amounts to an injury that is independent of the harm Mr. Borisch previously alleged had been caused to the Debtors.  Accordingly, *Educators Group* provides no meaningful support for Mr. Borisch.

46.     Finally, Mr. Borisch will no doubt claim that he, as the president and CEO of the Debtors, is in the same position as Curtis Burton was in *Buccaneer Resources*.  But, a

comparison of the Borisch Complaint to the analysis in *Buccaneer Resources* reveals how this is not the case. In *Buccaneer Resources*, Burton, the former CEO of the debtor, was terminated without severance. *In re Buccaneer Resources, LLC*, 912 F.3d at 293. He claimed that his wrongful termination was brought on because of the board's close ties to the debtor's secured lender (Meridian Capital), and he sought to assert a "direct-injury" claim for tortious interference against Meridian for such wrongful termination. *Id*. The Fifth Circuit held such a cause of action constituted a "direct-injury" claims because it did not flow from any injury to the debtor:

> As we just explained, Burton's termination did not depend on Buccaneer suffering an injury. It may be that Buccaneer was also injured by Meridian's control of its board (Meridian paid $10 million to settle Buccaneer's claims after all, but a debtor and creditor can have separate claims arising from the same conduct[ )]. *Seven Seas*, 522 F.3d at 585. As long as the injury a creditor is pursuing against a third party does not stem from the depletion of estate assets, the injury is a direct one that does not belong to the estate.

*Id.* at 295 (citing *Seven Seas*, 522 F.3d at 585).

47.    Although Burton was allowed to pursue his direct-injury claims against Meridian, the Fifth Circuit's rationale compels a different result for Mr. Borisch in the Borisch Complaint. At its core, the Borisch Complaint seeks damages from Malibu that derive from the same injuries suffered by the Debtors through the same alleged conduct. Unlike the tortious interference claim that Burton asserted against Meridian in *Buccaneer Resources*, Mr. Borisch's harm is not for unpaid severance. Rather, Mr. Borisch seeks to recover (for himself) the money he claims to be out of pocket as a result of the Debtors' increased floor plan indebtedness and, ultimately, the Debtors' inability to pay M&T Bank when such indebtedness came due. This alleged harm is essentially the same indebtedness that the Trustee is working to pay down through these chapter 11 cases. Mr. Borisch has not articulated a claim like Burton's that is independent of the harm

allegedly caused to the Debtors.  As such, the Estate Claims asserted against Malibu in the Borisch Complaint are "derivative claims" that constitute property of the Debtors' estates.

### III. The Counterclaims Asserted in the Michigan Litigation Are Also Derivative Claims.

48.    This same analysis applies to the counterclaims which Mr. Borisch seeks to assert against M&T Bank in the Michigan Litigation.  Mr. Borisch has filed a Motion to Amend, stating six Proposed Counterclaims against the plaintiff, M&T Bank. *See* **Exhibits G & H**.  These Proposed Counterclaims are also derivative claims and their prosecution would result in violation of the automatic stay.  All six of these counts are expressly based on some combination of the following alleged actions by M&T Bank: (1) controlling or interfering with the Debtors' businesses; (2) making alleged misrepresentations with respect to refinancing of other long-term debt of the Debtors; (3) allegedly omitting material information with respect to impairment of collateral owned by the Debtors; (4) the timing and terms on which the Debtors' assets were ultimately liquidated; and (5) various other actions which purportedly "destroy[ed] the [Debtors'] business and goodwill."  *See* **Exhibit H** [Proposed Counterclaims] at ¶¶ 69 (Count I), 74–75 (Count II), 79–81 (Count III), 87 (Count IV), 108 (Count V), and 112–13 (Count VI).

49.    All of the damages Mr. Borisch claims to have suffered are based on harms suffered by the Debtors.  This is true even as the Trustee has proposed to release those claims in exchange for use of cash collateral in these bankruptcy cases.[4]  For instance, Mr. Borisch asserts that he has lost the value of his equity in the Debtors, that the Debtors' assets have suffered a reduction in value, and that he has suffered an injury to his reputation as principal of the Debtors. Each of these is a quintessential example of harms only attributable to derivative claims.  *See, e.g., Lockwood Holdings, Inc.*, 2024 WL 727762 at *6 ("any harm he articulates is, in the first

---

[4] Critical here is the fact that the Committee has been actively negotiating with M&T Bank as part of the challenge rights reserved under the cash collateral order.

instance, harm to the [Debtors] – and then only to him because he was the sole shareholder and personal guarantor of the debt."). Several of these themes echo the allegations from the Borisch Complaint against Malibu, such as the assertions of false representations that purportedly induced him to "lend" $29 million in funds to the Debtors. *Compare* **Exhibit H** [Proposed Counterclaims] at ¶¶ 93-101 *with* **Exhibit C** [Borisch Complaint] at ¶¶ 87-94. While Mr. Borisch's counterclaims blame M&T Bank, rather than Malibu, for these loans, the fatal flaw is the same: the alleged misrepresentations involve promises of future actions *to benefit the Debtors*, and his damages flow solely from the harm he claims was suffered *by the Debtors*. Furthermore, it is unclear how exactly Mr. Borisch even has standing to pursue certain of these counterclaims, such as Count II (Breach of Contract), which is seemingly based solely on a provision in a Loan Agreement to which Mr. Borisch is not even a party. *See* **Exhibit G** [Proposed Counterclaims] at ¶¶ 72–76.

50.    As such, the Estate Claims asserted against M&T Bank in the Michigan Litigation are "derivative claims" that constitute property of the Debtors' estates.

## IV.    Mr. Borisch Should Be Enjoined from Pursuing Estate Claims

51.    As discussed above, the automatic stay is self-effectuating. Nonetheless, because Mr. Borisch continues to pursue litigation in two separate venues that directly violate the automatic stay, the Trustee seeks relief in the form of the attached Proposed Order:

    a.   enjoining Mr. Borisch from continuing to prosecute Estate Claims in violation of the automatic stay;

    b.   ordering Mr. Borisch to immediately dismiss all claims presently asserted in the Borisch Complaint and withdraw his motion to amend filed in the Michigan Litigation;[5] and

---

[5] Although Mr. Borisch has the right to assert defenses to his guaranty liability in the Michigan Litigation, he does not have the right to assert affirmative Estate Claims that are property of the Debtors' bankruptcy estates. Such efforts violate section 362(a)(3) of the Bankruptcy Code and frustrate the Trustee and the Committee's statutory efforts to maximize value for the Debtors' estates and creditors.

    c. ordering that before Mr. Borisch files any additional affirmative claims against M&T Bank or Malibu, whether in the Tennessee Litigation, Michigan Litigation, or otherwise, Mr. Borisch shall first file a motion for leave in this Court, with notice to the Trustee, the Committee, M&T Bank, and Malibu.  Such motion shall describe, with particularity: (a) the claims or causes of action to be asserted; (b) the facts supporting such claims or causes of action; and (c) the damages to be recovered through such claims or causes of action.

Such relief is without prejudice to the Trustee seeking additional relief in the form of sanctions for attorneys' fees and costs incurred to ensure Mr. Borisch's compliance with the law and this Court's orders.

WHEREFORE, the Trustee respectfully requests that the Court enter the Proposed Order, granting the relief requested herein and such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 7th day of October, 2024.

**GRAY REED**

By:   */s/ Aaron M. Kaufman*
    Jason S. Brookner
    Texas Bar No. 24033684
    Aaron M. Kaufman
    Texas Bar No. 24060067
    Lydia R. Webb
    Texas Bar No. 24083758
    Emily F. Shanks
    Texas Bar No. 24110350
1601 Elm Street, Suite 4600
Dallas, Texas 75201
Telephone:   (469) 320-6050
Facsimile:   (469) 320-6886
Email:   jbrookner@grayreed.com
    akaufman@grayreed.com
    lwebb@grayreed.com
    eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

4869-3046-8076

## **Certificate of Service**

I certify that on October 7, 2024, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas.

*/s/ Aaron M. Kaufman*
Aaron M. Kaufman

4869-3046-8076