

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed May 22, 2025**

_____

**United States Bankruptcy Judge**

_____

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TOMMY'S FORT WORTH, LLC, *et al.*,[1] | § | Case No. 24-90000 |
| | § | |
| _____Debtors._____ | § | (Jointly Administered) |

## <u>MEMORANDUM OPINION</u>
(Re: Docket No. 487)

Before the Court for determination is the motion of Mark E. Andrews, the duly appointed

chapter 11 trustee (the "**Trustee**"), for entry of an order (a) determining that certain causes of

action asserted, or sought to be asserted pursuant to a motion for leave, by Matthew Borisch

("**Borisch**"), the President and direct or indirect owner of each of the Debtors, against Malibu

Boats, Inc. and Malibu Boats, LLC (collectively, "**Malibu**"), Jack Springer, Malibu's former CEO

---

[1] The debtors in these Chapter 11 Cases (collectively, the "**Debtors**"), along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Gran Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

("**Springer,**" and together with Malibu, the "**Malibu Parties**"), and M&T Bank ("**M&T**"), as applicable, constitute property of the Debtors' bankruptcy estates (the "**Estates**"), (b) determining that the actions taken, and continuing to be taken, by Borisch to pursue such causes of action violate the automatic stay provided by section 362(a) of the Bankruptcy Code, and (c) enforcing the automatic stay against Borisch by compelling Borisch to dismiss the causes of action and enjoining him from taking any further or additional action to pursue the causes of action (the Trustee's motion hereafter referred to as the "**Enforcement Motion**").[2]  Both the Malibu Parties and M&T have filed pleadings in support of the Enforcement Motion.[3]

Borisch has filed a response in opposition to the Enforcement Motion, claiming that the relief sought is both procedurally improper and substantively lacking in merit (the "**Objection**").[4] The Trustee has filed a reply in response to the Objection (the "**Reply**").[5]

On November 19, 2024, the Court conducted an evidentiary hearing on the Enforcement Motion.  Having now considered the Enforcement Motion, the supportive pleadings of the Malibu Parties and M&T, the Objection, the Reply, the evidence presented, the additional relevant pleadings and orders referenced herein, and the representations and arguments of counsel, the Court issues its findings of fact, conclusions of law, and ruling as follows:[6]

---

[2] Docket No. 487.

[3] *See* Docket Nos. 553, 593, and 595.

[4] Docket No. 555.

[5] Docket No. 592.

[6] The Court issues this Memorandum Opinion in accordance with Fed. R. Civ. P. 52(a), made applicable to this matter by Fed. R. Bankr. P. 9014(c)(1) and 7052.  To the extent any of the following findings of fact are more appropriately categorized as conclusions of law or include any conclusions of law, they should be deemed as such, and to the extent that any of the following conclusions of law are more appropriately categorized as findings of fact or include findings of fact, they should be deemed as such.

### *JURISDICTION*

The Court has jurisdiction of the proceeding initiated by the Enforcement Motion pursuant to 28 U.S.C. §§ 1334 and 157 and *Miscellaneous Order No. 33: Order of Reference of Bankruptcy Cases and Proceedings Nunc Pro Tunc* (N.D. Tex. Aug. 3, 1984).  Venue of the proceeding in the Northern District of Texas is proper under 28 U.S.C. § 1409.  The proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

### *FACTUAL BACKGROUND*

Between May 20 and 21, 2024 (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code, thereby initiating its bankruptcy case with the Court.  The cases are being jointly administered under Case No. 24-90000 (the "**Bankruptcy Case**").  Prior to the Petition Date, the Debtors operated a self-described high-octane water-sports-enthusiast business under the brand name "Tommy's."  The business (which the Court will hereafter sometimes refer to as "**Tommy's**") originated in Colorado in 2012.  Per Borisch, Tommy's was the largest ski and wake dealer globally as of the Petition Date, having fourteen dealerships plus nine additional on-water rental programs operating in Texas, Colorado, Michigan, Arizona, California, Florida, Nevada, and Tennessee.[7]

Tommy's' principal dealership relationship was with Malibu, an original equipment manufacturer selling watercraft equipment under the brand names Malibu and Axis.  For roughly twelve years prior to the Petition Date (through the Summer of 2023), each of the Tommy's dealership locations had a dealership agreement in place with Malibu.[8]  As Malibu rolled out each new model year of boats, Malibu and Tommy's would negotiate a new round of dealership

---

[7] *See* Trustee's Exh. 3 ("**Borisch Declaration**") ¶ 3.

[8] *See* Borisch Declaration ¶ 5.

agreements.  The dealership agreements would then dictate, among other things, pricing and resale terms, purchase volume commitments, and dealership incentives and rebates in relation to the new model year boats.

Awkwardly, the parties did not begin the negotiation process for each new year of agreements until at or about, or even after, the existing model year agreements had expired.  This did not result in a sudden suspension of Tommy's' operations as a Malibu dealer.  Instead, the parties would simply continue to operate under existing terms with the expectation that the new model year agreements would eventually be finalized and control the entirety of the new model year.  The parties' willingness to march forward in this manner was presumably due to the fact that, by 2023, Tommy's had become the largest national dealer of Malibu boats, allegedly accounting for roughly 30% of Malibu's national boat sales.[9]

To finance Tommy's' operations, including the purchase of boats from Malibu, Tommy's required floor plan financing.  In the latter years, through the Spring of 2023, Tommy's obtained such financing from Fifth Third Bank.  As was customary for floor plan financers, Fifth Third Bank required Malibu to enter into a repurchase agreement pursuant to which Malibu would be obligated, under specified terms and conditions, to repurchase any Malibu watercraft repossessed by Fifth Third Bank from Tommy's in the event of a loan default.  To support its dealership relationship with Tommy's, Malibu agreed to enter into the repurchase agreement with Fifth Third Bank.

### A.    *Tommy's Transitions Its Lending Relationship to M&T*

As the Tommy's business grew, so too did Tommy's' dependence upon Malibu for financial stability.  With that in mind, beginning in or around late 2022, Borisch claims that Malibu began

---

[9] *See* Borisch Declaration ¶ 4.

to fail to pay substantial sums of contractually promised incentives and rebates to Tommy's.[10]
While Malibu disputes that Tommy's earned or otherwise became entitled to such payments,
Tommy's' non-receipt of such expected income began to create a financial strain on Tommy's'
operations, particularly given the relatively small retail margins that could be achieved in the sale
of the boats.

Ultimately, pending a resolution of the matter, Borisch concluded that the only way to make
up the difference in income was to sell more boats.[11]  To do so, however, would require an increase
in the Tommy's floor plan facility.  Indeed, Malibu had already, through Springer, made it clear to
Borisch that Tommy's' existing facility was too small in relation to the volume of business that
Tommy's was doing with Malibu.[12]

Heading into 2023, Tommy's successfully managed to increase its floor plan facility with
Fifth Third Bank from $50 million to $85 million.[13]  While the increased credit line enabled
Tommy's to increase its boat orders with Malibu, it did not resolve the incentive and rebate dispute.
In fact, the increased order volume apparently only exacerbated the problem, inasmuch as Borisch
claims that Tommy's was owed millions in unpaid incentives and rebates by the time of the Petition
Date.[14]

On the flip side, as Tommy's became a larger and larger customer of Malibu, Borisch
claims that Malibu felt empowered to periodically press Tommy's to increase its boat orders so
that Malibu could hit its own internal sales targets.  Additionally, with the roll out of each new

---

[10] *See* Borisch Declaration ¶ 24.

[11] *See* Borisch Declaration ¶ 26.

[12] *See* Trustee's Exh. 4 ("**Borisch Testimony Excerpts**"), at ECF p.9 of 53.

[13] *See* Borisch Declaration ¶ 26.

[14] *See* Borisch Declaration ¶ 24.

year's dealership agreements, Malibu would allegedly negotiate for higher and higher baseline purchase volume commitments.

By the end of 2022, Tommy's had hit its credit limit with Fifth Third Bank.[15]  Thus, Tommy's began the search for another lender.  In March 2023, Tommy's was introduced to M&T. A short time later, in May 2023, Tommy's transitioned its lending relationship to M&T, whereupon its floor plan facility was increased to $110 million with a $20 million overlimit.[16]  As additional credit support for the increased facility, Borisch provided a personal guaranty (the "**Borisch Guaranty**").[17]  And while it appears that an agreement in principle had been worked out among M&T, Malibu, and Tommy's for M&T to obtain a repurchase agreement from Malibu, M&T never obtained the repurchase agreement.[18]

## B.    *The Model Year 2024 Dealership Agreements*

At the end of June 2023, when most of the dealership agreements for model year 2023 were coming to an end, Malibu and Tommy's commenced the process of negotiating terms for the model year 2024 agreements.  According to Borisch, Malibu once again exerted pressure on Tommy's to commit to the purchase of a higher volume of boats.  This presented a particular challenge because Tommy's still had a significant number of model year 2023 boats in stock.[19]

As the discussions progressed, hoping to facilitate a resolution of outstanding incentive and rebate payment issues and enable the 2024 agreements to be finalized on terms that would work for Tommy's, Tommy's ill-advisedly made an interim commitment to purchase a volume of new

---

[15] *See* Borisch Declaration ¶ 26.

[16] *See* Borisch Declaration ¶ 27.

[17] *See* Claim No. 31 filed by Borisch against Debtor Tommy's Fort Worth, LLC on 9/28/2024 (copy of Borisch Guaranty attached thereto).

[18] *See* Borisch Declaration ¶¶ 28-31.

[19] *See* Borisch Declaration ¶ 9.

boats that, in the absence of a beneficial resolution of the outstanding incentive and rebate dispute, would strain Tommy's finances.  The open issues were not resolved, leading to two negative developments that further complicated ongoing Malibu negotiations.

First, Tommy's sold a number of boats out of trust with M&T in violation of the M&T loan agreements.  On September 2, 2023, Tommy's officially notified Malibu of the situation.  Tommy's and Malibu then immediately began to discuss the best means to "right size" Tommy's existing inventory, resulting in Tommy's cancelling a number of already-placed boat orders.[20]  Because of the default, Malibu naturally informed Tommy's that it would not be in a position to enter into any new 2024 dealership agreements until it was once again in good standing with M&T.[21]

To solve the sales-out-of-trust (SOT) problem, Borisch claims that he and his father leveraged certain of their assets to borrow $22 million which they then put into the Tommy's business during the first week of October 2023.[22]  That, in turn, enabled Tommy's to pay down M&T for the sales that had been made out of trust and have some additional working capital to get through the dealership negotiation process.  Once the SOT situation was solved, M&T provided confirmation to Malibu of the resolution.[23]

Second, because Malibu had not provided M&T with an executed repurchase agreement, M&T refused, at least initially, to finance the purchase of any new model year boats pending receipt of the repurchase agreement.[24]  This created a problem when, on or about July 1, 2023, Malibu shipped roughly $6.1 million of new inventory to Tommy's.  Because M&T had refused

---

[20] *See* Borisch Declaration ¶ 11.

[21] *See* Borisch Declaration ¶ 12.

[22] *See* Borisch Testimony Excerpts, at ECF p.37 of 53.

[23] *See* Borisch Declaration ¶ 13.

[24] *See* Borisch Testimony Excerpts, at ECF p.16 of 53.

to finance the new inventory under the floor plan facility, Malibu was not paid for the boats.[25]
Malibu did not discover the omission until August 2023.  At that point, Malibu informed Tommy's
that it would no longer talk about any future dealership agreements until it had been paid for the
inventory.[26]  Ultimately, the issue was resolved, but not until mid-December 2023 when M&T
relented and agreed to put the boat purchases under the floor plan facility.[27]

With these two situations finally resolved in mid-December 2023, it appeared as though
the parties were in a position to finalize the terms of the model year 2024 dealership agreements
and resolve the disputed incentive and rebate matters.  It did not happen.  Thus, heading into 2024,
Tommy's was once again facing financial trouble.  At this point, Tommy's took two additional
steps.  First, during the second week of January 2024, Tommy's hired Riveron, a business
adversary firm, to assist it in further negotiations with Malibu.[28]  The thought was that by inserting
a new face into the mix, it would help break the logjam.  Second, to financially carry Tommy's
through the elongated negotiation process, Borisch allegedly infused an additional $7 million into
the business that he obtained from the sale of two of his other businesses.[29]

## C.    *The Malibu and M&T Relationships Collapse and Litigation Ensues*

Ultimately, in late February 2024, after Tommy's had represented Malibu at a boat show in
Miami at Malibu's request, Malibu informed Tommy's that it would not be signing any new
dealership agreements with Tommy's for model year 2024.[30]  About two weeks later, on March 11,
2024, Malibu provided notice to Tommy's that it was terminating all of the Texas location

---

[25] *See* Borisch Testimony Excerpts, at ECF pp.15-16 of 53.

[26] *See* Borisch Testimony Excerpts, at ECF p.22 of 53.

[27] *See* Borisch Testimony Excerpts, at ECF pp.18 and 22 of 53.

[28] *See* Borisch Testimony Excerpts, at ECF pp.39-42 of 53.

[29] See Borisch Testimony Excerpts, at ECF p.51 of 53.

[30] *See* Borisch Testimony Excerpts, at ECF p.48 of 53.

dealership agreements.  Then, on March 22, 2024, Malibu delivered a letter to Tommy's to "confirm" that it would not be entering into *any* dealership agreements with *any* of the Tommy's dealerships.[31]  Tommy's took these developments to mean that Malibu was terminating its dealership relationship with Tommy's.  That was proven true when, shortly thereafter, Malibu began to enter into new dealership agreements with other parties covering the same territories that had previously been assigned to Tommy's.

Separately, in late February 2024, M&T began to take steps to end its relationship with Tommy's.[32]  Initially, on February 27, 2024, M&T sent a formal default and demand letter to Tommy's and Borisch (as guarantor) pursuant to which, among other things, M&T notified Tommy's that it would not be providing financing for the purchase of any new boats and did not consent to the sale of any existing boats, even boats for which the customers had put down deposits.[33]  Then, when M&T learned of Malibu's termination of the Tommy's dealership agreements, M&T additionally asserted that a material adverse change had occurred, resulting in another event of default under the M&T loan agreements.[34]  Consequently, on March 28, 2024, M&T provided formal notice of the additional default and made further demand on Tommy's and Borisch (as guarantor) for payment.[35]  On April 1, 2024, following Tommy's and Borisch's failure to pay, M&T filed suit against Tommy's and Borisch in Michigan state court to collect on the loans and guaranty (the "**M&T Case**").[36]

---

[31] *See* Borisch Declaration ¶ 39.

[32] *See* Trustee's Exh. 10 ("**Motion for Leave**"), Exh. A ("**Borisch Answer**") ¶¶ 39-45 (restated M&T complaint allegations with respect to asserted defaults).

[33] *See* Borisch Answer ¶ 35; Borisch Declaration ¶ 38.

[34] *See* Borisch Answer ¶ 38.

[35] *See* Borisch Answer ¶ 35.

[36] Case No. 24-03177-CBB, Circuit Court for County of Kent, Michigan (the M&T Case).  *See* Trustee's Exh. 11, at p.6 (¶ II.B.).

Facing a complete collapse of the Tommy's business as a result of the foregoing developments, on April 10, 2024, the Debtors filed suit against Malibu in Tennessee federal court to challenge the dealership agreement terminations, pursue the collection of unpaid incentives and rebates, and seek recourse on account of the alleged reassurances and promises made in relation to the 2024 model year agreements (the "**Debtor Malibu Case**").[37]  Pursuant to the Complaint filed by the Debtors (the "**Debtor Malibu Complaint**"), the Debtors asserted claims for breach of contract, quantum meruit, unjust enrichment, promissory estoppel, intentional misrepresentation/fraud, and negligent misrepresentation.[38]

**D.     *The Debtors Determine to Pursue Bankruptcy Protection***

Separately, in the M&T Case, M&T had also sought the appointment of a receiver.  Naively believing that an appointed receiver would work with M&T to apply pressure on Malibu to reinstate the terminated dealership agreements and resolve the incentive, rebate, and 2024 dealership agreement issues, the Debtors consented.[39]  Thus, on April 22, 2024, the Michigan court appointed a receiver to take control of the M&T collateral.[40]

Later, when it became clear that the receiver was not going to pursue the Debtors' desired agenda, the Debtors determined to file for bankruptcy protection to retake control of their assets.[41] And as a result of the bankruptcy filings on May 20-21, 2024, the Debtors retook such control and thereafter operated the Tommy's business as debtors in possession, subject to relevant provisions of the Bankruptcy Code.[42]

---

[37] Case No. 3:24-CV-00166, U.S. District Court, E.D. of Tennessee (the Debtor Malibu Case).

[38] *See* Trustee's Exh. 2 (the Debtor Malibu Complaint).

[39] *See* Docket No. 23 (CRO Monica Blaker's Declaration) ¶ 47.

[40] *See* Docket No. 23 ¶ 48.

[41] *See* Docket No. 23 ¶¶ 49-50.

[42] *See* 11 U.S.C. §§ 1101(1), 1107, and 1108; *see also* 11 U.S.C. § 543(b) (turnover provision binding on receiver).

E.      **The Clash with M&T in the Bankruptcy Case Leading to the Appointment of the Trustee;**
        **The Trustee's Negotiation of a Consensual Cash Collateral Arrangement with M&T**

To fund ongoing operations, on May 22, 2024, the Debtors filed an emergency motion to use cash collateral.[43]   M&T objected.[44]  While emergency interim approval was provided by the Court,[45] the Court denied the Debtors' request for further interim relief on June 7, 2024, when the Debtors failed to establish that M&T's liens would be adequately protected.[46]

Shortly thereafter, on June 12, 2024, M&T filed a motion for the appointment of a chapter 11 trustee.[47]  The Debtors consented to the request.[48]  Consequently, on June 14, 2024, the Court entered an order directing the appointment of a chapter 11 trustee.[49]  The Trustee was then appointed, which appointment was approved by order entered on June 18, 2024.[50]

Following his appointment, the Trustee successfully reached an agreement with M&T for the use of cash collateral.  On July 11, 2024, the Trustee filed and served the proposed agreed order.[51]  On July 15, 2024, Borisch filed an objection, asserting, among other things, that certain of the stipulated facts and proposed waivers and releases of claims agreed upon within the proposed order, while subject to challenge during a challenge period, could negatively impact Borisch's rights and defenses in the M&T Case.[52]   Ultimately, the Court overruled Borisch's

---

[43] *See* Docket No. 12 (cash collateral motion).

[44] *See* Docket No. 21 (M&T objection).

[45] *See* Docket Nos. 52, 76 and 95 (interim cash collateral orders).

[46] *See* Docket No. 149 (order denying request for entry of fourth interim cash collateral order); *see also* Docket No. 147 (transcript of Court's ruling).

[47] *See* Docket Nos. 157, 158 and 159 (motion and supporting brief and appendix).

[48] *See* Docket No. 170.

[49] *See* Docket No. 173.

[50] *See* Docket Nos. 174 and 178.

[51] *See* Docket No. 231.

[52] *See* Docket No. 245.

objections, finding that his individual rights and defenses against M&T were not impaired, and on

July 17, 2024, entered the proposed order with certain unrelated modifications (the "**Cash

Collateral Order**").[53]

Later, at a hearing conducted on August 1, 2024, the Trustee announced that in resolving a

Bankruptcy Rule 2004 examination dispute involving Borisch and M&T, the Trustee, Borisch,

M&T, and the Official Unsecured Creditors Committee (the "**Committee**") had agreed to a

modification of one of the provisions of the Cash Collateral Order.  Being comfortable with the

agreement reached, on August 7, 2024, the Court entered the agreed order pursuant to which

paragraph 23 of the Cash Collateral Order was amended and restated to provide for the following

(the "**Carve-Out Provision**"):[54]

> 23. <u>Binding Effect of Final Order</u>.  In settlement of the Motion Under Bankruptcy Rule 2004 for an Order Authorizing Examination of M&T Bank (the "2004 Exam Motion") filed by [Borisch] on July 26, 2024 [DN 298] and the objection to the 2004 Exam Motion filed by [M&T] on July 31, 2024 [DN 308], the deadline of August 24, 2024 to file a Challenge Proceeding under paragraph 19(ii) above (the "Paragraph 19(ii) Deadline") shall not apply to [Borisch], and outside of these Chapter 11 cases none of the Chapter 11 Trustee's Stipulations, admissions, agreements or releases contained in this Final Order shall be binding upon or otherwise affect any claims, defenses, affirmative defenses or counterclaims which may be asserted by [Borisch] under applicable law as of the Paragraph 19(ii) Deadline which would otherwise have been barred if a Challenge Proceeding was not filed by him by the Paragraph 19(ii) Deadline ("Borisch Claims and Defenses") including, without limitation, in the pending [M&T Case] between [M&T] and [Borisch].  The validity or enforceability of any of the Borisch Claims and Defenses, including without limitation whether [Borisch] has legal standing to assert any of the Borisch Claims and Defenses, shall be determined, if at all, in courts of competent jurisdiction pursuant to applicable law.  Notwithstanding the entry of this Final Order, [Borisch] shall retain and may assert the Borisch Claims and Defenses and [M&T] shall retain and may assert all claims, defenses, affirmative defenses, or counterclaims (the "Secured Lender Claims and Defenses") in respect of the Borisch Claims and Defenses.

---

[53] *See* Docket No. 272 (Cash Collateral Order).

[54] *See* Docket No. 353 (order approving Carve-Out Provision).

**F.** **Borisch Files Suit Against Malibu; The Trustee Puts Borisch
On Notice of His Alleged Violation of the Automatic Stay**

On June 24, 2024, shortly after the Trustee's appointment, Malibu filed a motion to dismiss
all of the Debtors' claims in the Debtor Malibu Case.[55]  In response, desiring to buy additional
time to evaluate each of the claims before engaging in litigation, the Trustee elected to nonsuit the
Debtor Malibu Case.[56]  Hence, on July 3, 2024, the Trustee filed a notice of voluntary dismissal
without prejudice.[57]

This apparently frustrated Borisch, resulting in his decision to pursue litigation against
Malibu on his own.  Hence, on August 16, 2024, he filed suit against the Malibu Parties in
Tennessee federal court in his own name ("**Borisch Malibu Case**").[58]  Pursuant to the Complaint
filed by Borisch (the "**Borisch Malibu Complaint**"), Borisch asserted claims for fraudulent
misrepresentation, negligent misrepresentation, breach of implied contract, and unjust enrichment
(collectively, the "**Malibu Case Claims**").[59]  While the Borisch Malibu Complaint is not a mirror
image of the Debtor Malibu Complaint, on a holistic basis there is a clear overlap of underlying
factual allegations, complained of actions, and asserted causes of action within both complaints.

Learning of the Borisch Malibu Case, the Trustee directed his counsel to take action to
protect the Estates' interest in causes of action belonging to the Estates.  Thus, on August 22, 2024,
Trustee's counsel sent a letter to Borisch's counsel (the "**Trustee's Notice Letter**") to put Borisch
and his counsel on notice of the following: (i) that the automatic stay precludes any attempt by

---

[55] *See* Debtor Malibu Case Docket No. 32.

[56] *See* 11 U.S.C. §§ 323(a) (recognition of a trustee's authority to serve as the sole representative of the debtor's estate) and 1108 (providing authorization for appointed chapter 11 trustee to operate all aspects of the debtor's business); Fed. R. Bankr. P. 6009(a) (recognition of trustee's authority to prosecute, or appear in and defend, any pending action by or against the debtor).

[57] *See* Debtor Malibu Case Docket No. 39.

[58] Case No. 3:24-CV-00339, U.S. District Court, E.D. of Tennessee (the Borisch Malibu Case).

[59] *See* Trustee's Exh. 5 (Borisch's Malibu Complaint).

Borisch to exercise control over property of the Estates, including causes of action constituting property of the Estates; (ii) that based upon a preliminary review of the Borisch Malibu Complaint, it appeared that the complaint included claims that *likely* belong to the Estates; and (iii) that, as a result, the Borisch Malibu Case *likely* violates the automatic stay.[60]   While reserving all rights of the Trustee to take further action, Trustee's counsel made the following preliminary request on behalf of the Trustee:[61]

> The Trustee requests that you amend the [Borisch Malibu Complaint] immediately to clarify that Borisch is asserting *only* claims based on individualized harm caused to him that is independent of the harm caused to the Debtors and that he owns in his individual capacity.  The Trustee further requests that Borisch clarify that he is not attempting to assert, direct, or exercise control over any claims that were previously asserted, or which could have been assert[ed], by the Debtors in the [Debtor Malibu Case], or that otherwise belong to the Debtors' bankruptcy estates.

On August 27, 2024, Borisch's counsel responded to the Trustee's Notice Letter on behalf of Borisch.[62]   While cordial in nature, the response disputed any violation of the automatic stay, only expressing a willingness to consider any concerns if made on an allegation-by-allegation basis, with specificity, in reference to the Borisch Malibu Complaint.[63]   Consistent with the response, no action was taken by Borisch to amend the Borisch Malibu Complaint.

## G.   *Borisch Requests Leave in the M&T Case to Assert a Counterclaim Against M&T*

Separately, in the M&T Case, Borisch also determined to take a more aggressive stance. Thus, on October 3, 2024, Borisch filed the Motion for Leave to request leave to assert a

---

[60] *See* Trustee Exh. 6 (Trustee's Notice Letter) (emphasis added).

[61] *See* Trustee's Notice Letter, at pp.2-3 (emphasis in orig.).

[62] *See* Trustee's Exh. 7.

[63] *See id*.

counterclaim against M&T.[64]  Borisch attached a copy of his proposed counterclaim to the motion

(the "**Proposed Counterclaim**").[65]

Pursuant to the Proposed Counterclaim, Borisch seeks to assert claims against M&T for

breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty,

fraudulent inducement, negligence, and declaratory relief (collectively, the "**M&T Case**

**Claims**").[66]  As of the date hereof, the Motion for Leave remains pending.

## H.     The Trustee Reaches an Agreement with Malibu to Settle the Estates' Claims; Borisch Amends His Complaint Against the Malibu Parties

Meanwhile, on October 1, 2024, the Trustee, Malibu, M&T, and the Committee engaged

in a full-day mediation with the Honorable Nancy F. Atlas (ret.).  With the assistance of Judge

Atlas, an agreement was reached in resolution of all claims and causes of action held by the Estates

against Malibu and by Malibu against the Estates (the "**Malibu Settlement Agreement**").[67]  Of

note, the effectiveness of the Malibu Settlement Agreement is subject to satisfaction of the

following condition precedent, unless waived by Malibu in its sole discretion:[68]

> The Trustee shall use reasonable good faith best efforts to file a motion to enforce
> the automatic stay against Borisch by October 7, 2024, seeking a determination that
> the claims presently asserted in the [Borisch Malibu Case] constitute property of
> the Debtors' estates and that Borisch is enjoined from pursuing such claims or any
> other claims that constitute property of the Debtors' bankruptcy estates.

On October 7, 2024, the Trustee filed a motion for approval of the Malibu Settlement Agreement.[69]

On the same date, the Trustee filed the current Enforcement Motion.

---

[64] *See* Trustee's Exhs. 10 (Motion for Leave) and 11 (brief in support).

[65] *See* Trustee's Exh. 10, at pp.33-55 (Proposed Counterclaim).

[66] *See* Proposed Counterclaim.

[67] *See* Docket No. 602 (Malibu Settlement Agreement attached thereto).

[68] *See* Malibu Settlement Agreement ¶ 9(iii).

[69] *See* Docket No. 486; Borisch Exh. 24 (Trustee's motion for approval of Malibu Settlement Agreement).

In response to both motions, not only did Borisch file the Objection,[70] but on October 29, 2024, he filed his First Amended Complaint against the Malibu Parties in the Borisch Malibu Case (the "**Amended Borisch Malibu Complaint**").[71]   In an apparent effort to walk back the strong stance that had been taken in the response to the Trustee's Notice Letter, Borisch added the following statement in the introductory section of the Amended Borisch Malibu Complaint (the "**Introductory Amended Complaint Statement**"): "Although Tommy's also sustained its own damages as a result of Defendants' misconduct, this action only seeks to recover damages Defendants caused to Borisch individually….This case is about the financial harm Mr. Borisch personally suffered as a direct result of Defendants' misrepresentations to him."[72]   Other than adding such language, the Amended Borisch Malibu Complaint did very little to substantively change the original Borisch Malibu Complaint.  Among other things, the Amended Borisch Malibu Complaint continues to assert each of the Malibu Case Claims.

## *DISCUSSION*

Section 362 of the Bankruptcy Code imposes a broad-based, protective injunction in favor of the debtor and the bankruptcy estate upon the filing of a petition for bankruptcy relief.  This injunction – commonly referred to as the "automatic stay" – is immediately imposed and enforceable against all individuals and entities as of the filing of the petition without the necessity of the filing of a separate action to obtain it.[73]   The automatic stay is central to the bankruptcy

---

[70] Borisch objects to both the Enforcement Motion and the Trustee's motion for approval of the Malibu Settlement Agreement within the Objection.

[71] *See* Trustee Exh. 8 (Amended Borisch Malibu Complaint).

[72] *See* Amended Borisch Malibu Complaint, ¶¶ 1 and 3.

[73] *See* 11 U.S.C. § 362(a) (the bankruptcy petition "operates as a stay, applicable to all entities"); *see also* 11 U.S.C. §§ 101(15) (defining "entity" as including a "person") and 101(41) (defining "person" as including an "individual, partnership, and corporation" (subject to certain limitations that are not relevant to this case)); *Sosebee v. Steadfast Ins. Co.*, 701 F.3d 1012, 1025 (5th Cir. 2012) (the automatic stay "goes into effect without any action required by the bankruptcy court"; and "[p]arties need not receive formal service of process in order to be subject to the stay"); *In re*

process, providing not only a temporary breathing spell to the debtor from creditor collection activity, but also protection to all creditors against the possibility of only a few of them – those who successfully win the proverbial race to the courthouse – obtaining a preferential recovery to the detriment of all other similarly situated creditors.[74]

Among the conduct enjoined by the automatic stay is "any act … to exercise control over property of the estate."[75] Property of the estate is governed by section 541 of the Bankruptcy Code. Pursuant to section 541, the estate includes (subject to certain exceptions that are inapplicable in this case) "all legal or equitable interests of the debtor in property as of the commencement of the case."[76] Legal and equitable interests include causes of action owned by the debtor as of the commencement of the case.[77] Thus, the automatic stay enjoins any unauthorized act to exercise control over any cause of action that, as of the commencement of the bankruptcy case, was owned by the debtor and automatically became property of the bankruptcy estate as of such date.

Importantly, in a case where a trustee has been appointed, it is the trustee who has exclusive control of causes of action of the bankruptcy estate.[78] Any attempt by anyone else to exercise such

---

*Freemyer Indus. Pressure, Inc*., 281 B.R. 262, 266-67 (Bankr. N.D. Tex. 2002) ("Even had [an entity] received no notice whatsoever, any act done in violation of the stay would be subject to being undone by order of this Court").

[74] *See Reliant Energy Servs., Inc. v. Enron Canada Corp*., 349 F.3d 816, 825 (5th Cir. 2003) ("The purposes of the bankruptcy stay under 11 U.S.C. § 362 'are to protect the debtor's assets, provide temporary relief from creditors, and further equity of distribution among the creditors by forestalling a race to the courthouse'") (quoting *GATX Aircraft Corp. v. M/V Courtney Leigh*, 768 F.2d 711, 716 (5th Cir. 1985)); *see also Commonwealth Oil Refin. Co., Inc. v. EPA (In re Commonwealth Oil Refin. Co., Inc.)*, 805 F.2d 1175, 1182 (5th Cir. 1986), *cert. denied*, 483 U.S. 1005 (1987); *Hunt v. Bankers. Trust Co*., 799 F.2d 1060, 1069 (5th Cir. 1986).

[75] 11 U.S.C. § 362(a)(3).

[76] *See* 11 U.S.C. § 541(a)(1).

[77] *See Schertz-Cibolo-Universal City, Indep. Sch. Dist. v. Wright (In re Educators Group Health Trust)*, 25 F.3d 1281, 1283 (5th Cir. 1994); *Louisiana World Exposition v. Federal Ins. Co*., 858 F.2d 233, 245 (5th Cir. 1988); *American Nat'l Bank of Austin v. MortgageAmerica Corp. (In re MortgageAmerica Corp.)*, 714 F.2d 1266, 1274 (5th Cir. 1983).

[78] *Highland Capital Mgmt. LP v. Chesapeake Energy Corp. (In re Seven Seas Petroleum, Inc.)*, 522 F.3d 575, 584 (5th Cir. 2008); *Educators Group Health Trust*, 25 F.3d at 1284.

control will constitute a violation of the automatic stay, subjecting the violator to the possibility of, among other things, a finding of contempt and the imposition of monetary sanctions.[79]

It is against this backdrop that the current dispute comes before the Court. The Trustee asserts that the Malibu Case Claims asserted by Borisch against the Malibu Parties in the Borisch Malibu Case belong to the Debtors' Estates. Therefore, the Trustee argues that Borisch's filing of the Amended Borisch Malibu Complaint violated the automatic stay and that his continuing prosecution of the Malibu Case Claims asserted thereby constitutes a continuing violation of the automatic stay. Similarly, the Trustee asserts that the M&T Case Claims sought to be asserted by Borisch against M&T in the M&T Case belong to the Debtors' Estates. Therefore, the Trustee argues that Borisch's filing of the Motion for Leave to file the Proposed Counterclaim violated the automatic stay and that his continuing prosecution of the Motion for Leave constitutes a continuing violation of the automatic stay.

Borisch disputes the Trustee's contentions, asserting that all of the Malibu Case Claims and M&T Case Claims are owned by him, individually. Additionally, Borisch asserts that the Enforcement Motion is procedurally defective because it was not pursued in the form of an adversary proceeding. Each of these contentions is considered below.

### A.    *Borisch's Procedural Objection*

Borisch first attacks the Enforcement Motion on procedural grounds, arguing that the Trustee is attempting to obtain both declaratory and injunctive relief without having filed an adversary proceeding. In response, the Trustee asserts that he is merely attempting to enforce the automatic stay, as to which the initiation of an adversary proceeding is unnecessary. While the

---

[79] *See Wilson v. Arbors of Central Park ICG, LLC (In re Wilson)*, 610 B.R. 255, 279 (Bankr. N.D. Tex. 2019) (citing *Placid Ref. Co. v. Terrebonne Fuel & Lube, Inc. (In re Terrebonne Fuel & Lube, Inc.)*, 108 F.3d 609, 613 (5th Cir. 1997) and *Maritime Asbestosis Legal Clinic v. LTV Steel Co., Inc. (In re Chateaugay Corp.)*, 920 F.2d 183, 186-87 (2nd Cir. 1990)).

Court agrees with the basic premise advanced by the Trustee – *i.e.*, that an adversary proceeding is unnecessary to simply enforce the automatic stay[80] – the Enforcement Motion asks for more than just that.  Therefore, it is necessary to consider all aspects of the relief sought by the Trustee and the ramifications of having failed to commence an adversary proceeding.

To frame the issue, in a bankruptcy case a contested request for relief will initiate either a contested matter proceeding within the main bankruptcy itself or an independent adversary proceeding for which a separate docket is maintained.  A contested matter is typically triggered by a request for relief involving the debtor or property of the estate that is expressly governed by provisions of the Bankruptcy Code.  Examples include a request to use, sell, or lease property of the estate under § 363 of the Bankruptcy Code,[81] a request under § 364 of the Bankruptcy Code to grant a lien on property of the estate in connection with obtaining post-petition financing,[82] a request to confirm a proposed chapter 11 plan of reorganization under § 1129 of the Bankruptcy Code,[83] a claim objection under § 502(b) of the Bankruptcy Code,[84] or a request for relief from the automatic stay under § 362(d) of the Bankruptcy Code.[85]  Unless governed by a separate Bankruptcy Rule, a contested matter is procedurally governed by Bankruptcy Rule 9014.[86]

An adversary proceeding, on the other hand, is typically triggered by a request to recover money or property from another, a request for the resolution of a dispute involving the validity,

---

[80] *See Amedisys, Inc. v. National Century Fin. Enters., Inc. (In re National Century Fin. Enters., Inc.)*, 423 F.3d 567, 579 (6th Cir. 2005) ("[A] [trustee] is not required to initiate an adversary proceeding in order to move the bankruptcy court to enforce the automatic stay").

[81] *See* 11 U.S.C. § 363; Fed. R. Bankr. P. 4001(b) and 6004.

[82] *See* 11 U.S.C. § 364(c); Fed. R. Bankr. P. 4001(c).

[83] *See* 11 U.S.C. § 1129(a)-(b); Fed. R. Bankr. P. 3020(b).

[84] *See* 11 U.S.C. § 502(b); Fed. R. Bankr. P. 3007(a).

[85] *See* 11 U.S.C. § 362(d); Fed. R. Bankr. P. 4001(a).

[86] *See* Fed. R. Bankr. P. 9014(a).

priority, and/or extent of a party's asserted lien or other interest in property, a request to obtain injunctive or other equitable relief, or a request to prevent the debtor from obtaining an overall discharge or the discharge of a particular debt. Examples include a request to avoid and recover a preferential or fraudulent transfer from a non-debtor party,[87] a request for the recovery of damages for breach of a contract or tortious conduct,[88] a request to obtain injunctive relief,[89] or an objection to the grant of a discharge to a chapter 7 debtor on account of dishonest conduct.[90] Because these types of requests for relief seek to impact the property rights or freedom of action of a party in a way that goes beyond the relief automatically provided under the Bankruptcy Code, they are treated in much the same manner as a nonbankruptcy federal civil action. As such, they are given a separate docket, they are procedurally governed by most of the Federal Rules of Civil Procedure applicable to nonbankruptcy federal civil actions, and they are typically placed on a longer trial track.[91] Bankruptcy Rule 7001 details the types of proceedings that constitute adversary proceedings governed by the adversary proceeding rules.[92]

With the foregoing in mind, Borisch's first procedural complaint is that the Trustee is attempting to obtain declaratory relief with respect to the ownership of the Malibu Case Claims and M&T Case Claims without having initiated an adversary proceeding. In this regard, subject to certain exceptions that are inapplicable in this case, Bankruptcy Rule 7001(b) provides that "a

---

[87] *See* 11 U.S.C. §§ 547 and 548; Fed. R. Bankr. P. 7001(a).

[88] *See* Fed. R. Bankr. P. 7001(a).

[89] *See* Fed. R. Bankr. P. 7001(g).

[90] *See* 11 U.S.C. § 727; Fed. R. Bankr. P. 7001(d).

[91] *See generally* Federal Rules of Bankruptcy Procedure, Part VII (bankruptcy rules governing adversary proceedings, most of which, in turn, make applicable corresponding rules of the Federal Rules of Civil Procedure); *see also Toma Steel Supply, Inc. v. TransAmerican Natural Gas Corp. (In re TransAmerican Natural Gas Corp.)*, 978 F.2d 1409, 1416 (5th Cir. 1992) (describing an adversary proceeding as a full blown federal lawsuit), *cert. denied*, 507 U.S. 1048 (1993).

[92] See Fed. R. Bankr. P. 7001.

proceeding to determine the validity … or extent of … [an] interest in property" constitutes an adversary proceeding.[93]  Thus, Borisch asserts that the Trustee is precluded from proceeding on his request for declaratory relief because he failed to commence an adversary proceeding.  In response, the Trustee appears to suggest that, because the determination is to made in conjunction with a request to enforce the automatic stay, an adversary proceeding is not required.

The Court agrees with Borisch's assessment that the Trustee's request for a determination of the ownership of the Malibu Case Claims and M&T Case Claims fits within the description set out in Bankruptcy Rule 7001(b), thereby warranting an adversary proceeding.  However, the Court disagrees with Borisch's argument that the Court is precluded from considering the request based solely upon the failure of the Trustee to commence a separately docketed adversary proceeding.  Instead, as explained below, the Court must assess the impact, if any, of such failure on Borisch's rights and, based upon such assessment, determine whether Borisch has waived the right to an adversary proceeding.

Borisch's second procedural complaint is that the Trustee is attempting to obtain injunctive relief against Borisch without having initiated an adversary proceeding.  In this regard, Borisch points to Bankruptcy Rule 7001(g) which, subject to certain inapplicable exceptions, provides that "a proceeding to obtain an injunction" constitutes an adversary proceeding.[94]  As to this argument, the Trustee emphasizes that he is not seeking to _obtain_ an injunction against Borisch; he is only seeking to _enforce_ the statutorily-imposed injunction that already exists pursuant to § 362(a)(3) of the Bankruptcy Code.

---

[93] *See* Fed. R. Bankr. P. 7001(b).

[94] *See* Fed. R. Bankr. P. 7001(g).

The Court finds merit in the distinction made by the Trustee.  If the Trustee were seeking to expand the scope of the injunction imposed pursuant to § 362(a) of the Bankruptcy Code to protect non-debtor parties, or seeking to preclude conduct that is not identified within § 362(a), then clearly that would equate to an effort to "obtain" an injunction that is not already in place. With respect to the injunctive protections that are already in place pursuant to § 362(a), however, a request for the Court to take action to enforce the protections and prevent a violator from continuing to violate such protections is not a request to "obtain" an injunction; rather, it is a request to enforce the injunction that already exists.  Accordingly, the initiation of an adversary proceeding is unnecessary to pursue such a request.[95]

Even if the Trustee's request to enforce the automatic stay were construed as a request to obtain an injunction for purposes of Bankruptcy Rule 7001(g), however, the absence of a separately docketed adversary proceeding will not, in and of itself, preclude the Court from considering the requested relief.  As indicated above, it simply means that the Court must assess the impact, if any, of the failure to initiate an adversary proceeding on Borisch's rights and, based upon that assessment, determine whether Borisch has waived the right to an adversary proceeding.

Turning to the impact and question of waiver, Borisch claims that the Fifth Circuit Court of Appeals, in *Zale Corp.*, ruled that the failure to initiate an adversary proceeding in relation to a Bankruptcy Rule 7001 matter is fatal.[96]  In reality, however, the Fifth Circuit did not go that far. Instead, the Fifth Circuit explained that the right to an adversary proceeding is a right that may be waived if "the parties are apprised of and have a chance to address all the issues being decided."[97]

---

[95] *See National Century Fin. Enters.*, 423 F.3d at 579.

[96] *See* Objection, at p.18 (citing *Feld v. Zale Corp. (In re Zale Corp.)*, 62 F.3d 746, 762 (5th Cir. 1995)).

[97] *See Zale Corp.*, 62 F.3d at 763 (recognizing the possibility of a waiver if "the parties are apprised of and have a chance to address all the issues being decided") (quoting *Haber Oil Co., Inc. v. Swinehart (In re Haber Oil Co., Inc.)*, 12 F.3d 426, 440 (5th Cir. 1994)); *see also Bayou v. Medical Ctr. Hosp. of Garland, Inc. (In re American Dev. Int'l Corp.)*, 188 B.R. 925, 935 (N.D. Tex. 1995) ("[P]arties have waived their right to protest the lack of an adversary

In other words, provided a litigant has been afforded the desired procedural protections of an adversary proceeding, then form should not preside over substance. And here, substance has been provided. Borisch was very clearly apprised of all of the relief sought against him by the Trustee, he was afforded all desired procedural protections that would otherwise be applicable in an adversary proceeding, and he was given a full and fair opportunity to address all of the issues presented.

In this regard, the Enforcement Motion was filed and served on October 7, 2024. While the complex chapter 11 procedures applicable in the Bankruptcy Case would have imposed a shorter response deadline, the Trustee agreed to Borisch's request for a longer period. Specifically, Borisch and the Trustee agreed to a response deadline of November 8, 2024, which aligns with the answer period normally applicable in an adversary proceeding.[98] Moreover, in advance of the deadline, Borisch requested the Court's setting of an expedited status conference for the purpose of further addressing procedural issues. The Court granted the request and on November 7, 2024, conducted the status conference.[99] At the status conference hearing, despite asserting that the Enforcement Motion should be decided as a matter of law based solely upon the parties' submissions, Borisch's counsel argued that an adversary proceeding would be required if the Trustee was planning to present any evidence. While Trustee's counsel disagreed with the reasoning advanced on behalf of Borisch, noting that many of the procedural rules applicable to an adversary proceeding are applicable to a contested matter proceeding,[100] he confirmed that some evidence was contemplated. Thus, in an effort to further accommodate Borisch, Trustee's counsel

---

proceeding when the court afforded them all the protections of an adversary proceeding yet they knowingly failed to litigate a Rule 7001 issue which they had an opportunity to litigate") (quoting *Zale Corp.*, 62 F.3d at 763).

[98] *See* Fed. R. Bankr. P. 7012(a)(1) (providing for a 30-day answer deadline, unless ordered otherwise).

[99] *See* Docket Nos. 544 and 550.

[100] *See* Fed. R. Bankr. P. 9014(c)(1) (listing the adversary rules automatically made applicable).

offered to agree to the application of any other adversary proceeding rules that Borisch deemed necessary or desirable.[101]  Picking up on the offer, the Court inquired of Borisch's counsel what additional rules were desired.  Additionally, the Court asked if Borisch was in need of any specific discovery and/or timing accommodations.  In response, Borisch's counsel did not identify any additional rules, procedures, discovery, or time needed.  The only request made was for leave to file a response in excess of the page limits set by the Court's local rules, which the Court granted.  Also, because Borisch had not yet responded to the Enforcement Motion, the Court set a follow-up scheduling conference to take place after Borisch had filed his response, explaining that the follow-up hearing was being set to provide the parties with an additional opportunity to confer on scheduling needs.

On November 8, 2024, Borisch filed his 340-page Objection to the Enforcement Motion.[102]  Thereafter, on November 12, 2024, the Court conducted the follow-up scheduling conference.[103]  After receiving a report that the parties had failed to reach an agreement in resolution of Borisch's procedural objections, the Court once again made a series of inquiries into what additional rules, procedures, discovery, and/or time was required by Borisch and his counsel to fully prepare for the hearing on the Enforcement Motion.  Borisch's counsel failed to point to any specific needs, simply resting on the premise that an adversary proceeding was required.  Consequently, the Court simply cautioned the parties that should any party determine that there is a need for more time, discovery, or anything else in advance of the scheduled hearing on the Enforcement Motion, such party should

---

[101] *See id*. ("At any stage of a contested matter, the court may order that one or more other [adversary proceeding] rules apply").

[102] The Objection, which jointly opposed both the Enforcement Motion the Trustee's motion for approval of the Malibu Settlement Agreement, is comprised of a 34-page response and nearly 300 pages of attached exhibits.

[103] *See* Docket No. 563.

file a motion for continuance, detailing the party's needs. No such motion was filed by Borisch or anyone else.

Leading up to the November 19, 2024, hearing, Borisch filed his witness and exhibit list, identifying four different witnesses and 100 different exhibits (totaling in excess of 1,400 pages).[104] Then, at the hearing, Borisch's counsel was given an opportunity to provide an opening statement, was given the opportunity to cross-examine the Trustee's witnesses, was given the opportunity to present evidence (with the Court admitting substantially all of Borisch's 100 separately-designated exhibits), and was given the opportunity to present a closing argument. In short, the hearing was conducted by the Court in the same manner as an adversary proceeding trial. At no point during the hearing did Borisch's counsel assert that Borisch had not been fully apprised of all of the issues being presented to the Court for determination pursuant to the Enforcement Motion, nor was any argument ever made on behalf of Borisch that Borisch was denied the opportunity to adequately prepare for or to address any of those issues.

Based upon the foregoing, it is clear that the failure of the Trustee to initiate an adversary proceeding to pursue the relief requested against Borisch pursuant to the Enforcement Motion had absolutely no impact on Borisch's rights and, thus, Borisch waived the right to an adversary proceeding.

### B.    *Ownership of the Malibu Case Claims and M&T Case Claims*

Turning now to the merits of the Enforcement Motion, whether a particular cause of action belongs to the estate depends on whether, under applicable law, the debtor could have raised the claim as of the commencement of the bankruptcy case.[105] As part of this inquiry, a court is to look

---

[104] *See* Docket No. 594.

[105] *Seven Seas Petroleum*, 522 F.3d at 584; *Educators Health Trust*, 25 F.3d at 1284 (citing *S.I. Acquisition, Inc. v. Eastway Delivery Serv., Inc. (In re S.I. Acquisition, Inc.)*, 817 F.2d 1142 (5th Cir. 1987)).

at the nature of the injury for which relief is sought and consider the relationship between the debtor and the injury.[106]  "If a cause of action alleges only indirect harm to a creditor (i.e., an injury which derives from harm to the debtor), and the debtor could have raised a claim for its direct injury under the applicable law, then the cause of action belongs to the estate."[107]  "Conversely, if the cause of action does not explicitly or implicitly allege harm to the debtor, then the cause of action could not have been asserted by the debtor as of the commencement of the case, and thus is not property of the estate."[108]  The question of whether a specific cause of action belongs to the bankruptcy estate is a question of law for the court to determine based upon an application of the foregoing standards in reference to the facial allegations of the complaint in question.[109]

With the foregoing in mind, initially both the Trustee and Borisch seemingly attempt to over-simplify the dispute in making broad-based arguments.  First, from the Trustee's end, the Trustee starts with the allegations previously included within the Debtor Malibu Complaint (which Borisch approved as President of the Debtors) and compares them to the allegations contained within the Amended Borisch Malibu Complaint and Proposed Counterclaim.  Then, highlighting the significant overlap/similarity in such allegations, he asserts that Borisch has largely repackaged the allegations from the Debtor Malibu Complaint with a substituted reference to himself in place of Tommy's in an effort to re-assert the Debtors' causes of action for his own benefit.

---

[106] *Seven Seas Petroleum*, 522 F.3d at 584; *Educators Group Health Trust*, 25 F.3d at 1284.

[107] *Seven Seas Petroleum*, 522 F.3d at 584 (quoting *Educators Group Health Trust*, 25 F.3d at 1284 (citations omitted)); *see also Meridian Capital CIS Fund v. Burton (In re Buccaneer Res., LLC)*, 912 F.3d 291, 293 (5th Cir. 2019) ("If the harm to the creditor comes about only because of harm to the debtor, then its injury is derivative, and the claim is property of the estate").

[108] *Seven Seas Petroleum*, 522 F.3d at 584 (quoting *Educators Group Health Trust*, 25 F.3d at 1284).

[109] *Educators Group Health Trust*, 25 F.3d at 1285; *see also Seven Seas Petroleum*, 522 F.3d at 583; *In re Dexterity Surgical, Inc*., 365 B.R. 690, 701-02 (Bankr. S.D. Tex. 2007) (noting that the court must assess the nature of a particular claim by reviewing the actual allegations of the complaint as opposed to any labels or characterizations used to headline the claim).

Consequently, the Trustee argues that the existence of the overlapping/similar allegations warrants the entry of an order requiring Borisch to dismiss *all* of the claims that he has asserted within the Amended Borisch Malibu Complaint, and to withdraw *in full* the Motion for Leave.[110]  Borisch takes issue with the Trustee's position, claiming that he is entitled to rely upon the same or similar factual allegations in asserting his own claims.

In principle, the Court agrees with Borisch.  The existence of overlapping or similar factual allegations does not, in and of itself, compel the conclusion that the causes of action asserted by Borisch must be owned by the Estates.  "A claim does not belong to the estate merely because the debtor has also been harmed by the same series of events."[111]  As explained by the Fifth Circuit, "the estate and a [non-debtor party] may have separate claims against a third party arising out of the same events."[112]  That said, it is also true that a simple change of all references from Tommy's to Borisch, coupled with a relabeling of causes of action asserted as Borisch's causes of action, does not magically transform the Debtors' (now Estates') causes of action into causes of action now owned by Borisch.  "[W]hatever label[s] [are] put on [Borisch's] claim[s], what matters is the nature of the injury he is seeking compensation for."[113]

Separately, Borisch oversteps in appearing to argue that because he was the individual to whom each alleged misrepresentation was directed, then he is entitled to assert an individual claim

---

[110] *See* Enforcement Motion, at pp.21-22 & Exh. A (prayer for relief and proposed order).

[111] *Wesco Aircraft Holdings, Inc. v. SSD Invests. Ltd. (In re Wesco Aircraft Holdings, Inc.)*, Adversary No. 23-3091, 2024 WL 156211, at *4 (Bankr. S.D. Tex. Jan. 14, 2024) (Isgur, J.).

[112] *Buccaneer Res.*, 912 F.3d at 293; *see also Seven Seas Petroleum*, 522 F.3d at 585 ("[T]he existence of common parties and shared facts between the bankruptcy and the [non-debtor party's] suit does not necessarily mean that the claims asserted by the [non-debtor party] are property of the estate….[I]t is entirely possible for a bankruptcy estate and a [non-debtor party] to own separate claims against a third party arising out of the same general series of events and broad course of conduct").

[113] *Buccaneer Res.*, 912 F.3d at 295 (citing *Seven Seas Petroleum*, 522 F.3d at 584)); *see also Dexterity Surgical, Inc.*, 365 B.R. at 702 (finding the plaintiffs' allegations to be "merely a clever restatement of a claim" owned by the estate).

for any individual loss thereafter allegedly suffered, whether direct or derivative.  That also goes

too far.  In relation to each alleged misrepresentation, it is necessary to consider the relationship,

if any, that existed between Borisch and the nature of the injury suffered on account of the alleged

misrepresentation.[114]  In this regard, one of the things that makes the analysis difficult in this case

is the fact that, at any given time, Borisch interacted with Malibu, Springer, or M&T, as applicable,

in either a representative capacity on behalf of the Debtors (as their President)[115] or in an individual

capacity (as the guarantor of the M&T loans or a direct or indirect equity owner of each of the

Debtors).[116]  This is critically important to the analysis undertaken by the Court because most of

the allegations that refer to Borisch, when considered in context, are clearly to Borisch in his

representative capacity on behalf of the Debtors as opposed to his individual capacity.  Thus, the

injury referenced in relation thereto is to the Debtors, not to Borisch, even if Borisch suffered

indirect injury as a guarantor or owner on account of the direct injury to the Debtors.  Ultimately,

"[a]s long as the injury [Borisch] is pursuing against [the Malibu Parties and M&T] does not stem

from the depletion of estate assets, the injury is a direct one that does not belong to the [Estates]."[117]

### 1.      The Amended Borisch Malibu Complaint and Malibu Case Claims

With the foregoing in mind, the Court now turns to the facial allegations of the Amended

Borisch Malibu Complaint.[118]  Applying the above principles to such allegations, it is clear that

---

[114] *See Educators Group Health Trust*, 25 F.3d at 1285.

[115] *See* Borisch Declaration ¶ 1 (attesting to his role as President of each of the Debtors).

[116] According to verified disclosures filed in the cases, at all relevant times Borisch was the sole member of Debtor Tommy's Holding Company, LLC, and Tommy's Holding Company, LLC was the sole member of each of the other Debtors.  See the Statement of Financial Affairs (response to Question 28) filed for each of the Debtors.

[117] *Buccaneer Res.*, 912 F.3d at 295.

[118] Importantly, the Court has not analyzed and expresses no opinion with respect to the plausibility (or lack thereof) of any cause of action alleged within the Amended Borisch Malibu Complaint.  The Court's focus is solely on the ownership of the Malibu Case Claims, whether viable or not.

Borisch is attempting to assert both causes of action that belong to him, individually, and causes of action that belong to the Estates (in the latter case, the "**Estate Malibu Party Claims**").

Starting with Counts I and II of the Amended Borisch Malibu Complaint – the fraudulent and negligent misrepresentation causes of action[119] – in summary, Borisch alleges that the Malibu Parties made the following misrepresentations: that certain market data supported the massive increases to Tommy's floor plan capacity that Malibu was pushing for in 2022; that Tommy's needed to have the volume and mix of inventory that Malibu was pushing for instead of the volume and inventory mix that Borisch and his team at Tommy's was requesting; that Malibu was going to honor prior agreements and adhere to the parties' customs and practices relating to rebates, incentives, and interest recoupment payments; that Malibu would enter into new 2024 dealership agreements; and that Malibu would enter into a repurchase agreement with M&T.  In relation thereto, on the one hand, Borisch further alleges that the Malibu Parties made the misrepresentations with the intent to induce "Mr. Borisch" to acquiesce in an increase to Tommy's floor plan capacity, to cause Tommy's to accept higher-end inventory, and to keep Tommy's purchase orders high in the face of declining demand.  In such context, the references to "Mr. Borisch" are clearly to Borisch in his representative capacity on behalf of the Debtors, not to Borisch individually, and the complained of injuries were to Tommy's directly.  Thus, such allegations constitute or involve Estate Malibu Party Claims, even if Borisch also allegedly suffered indirect or derivative injury as a result of the direct injury to the Debtors.

On the other hand, Borisch also alleges that the Malibu Parties made such misrepresentations to induce "Mr. Borisch" to personally guarantee the increased floor plan loans and to put some of his own money into Tommy's in order to keep the business afloat.  In this

---

[119] *See* Amended Borisch Malibu Complaint ¶¶ 117-157.

context, the references to "Mr. Borisch" are clearly to Borisch in his individual capacity as a guarantor and/or owner, and the complained of injuries were to Borisch directly. As such, the allegations, to such extent (and only to such extent), do *not* constitute or involve Estate Malibu Party Claims.

Next, in Count III of the Amended Borisch Malibu Complaint, Borisch asserts a cause for action for breach of an implied contract.[120] Here, Borisch alleges the existence of an implied contract between himself and Malibu. Thereafter, however, the allegations become muddied and more difficult to follow because many of them appear to focus on alleged promises made to the Debtors through Borisch, as their representative, as opposed to Borisch individually. For example, Borisch alleges that Malibu repeatedly assured and represented to "Mr. Borisch" that it would honor its prior agreements and adhere to the parties' customs and practices relating to rebates, incentives, and interest recoupment payments; that it would enter into new 2024 dealership agreements; and that it would enter into a repurchase agreement with M&T. The references to "Mr. Borisch" here are clearly to Borisch in his representative capacity on behalf of the Debtors, not to Borisch individually. As such, the alleged injury from any breach of such promises was to the Debtors directly, and such allegations constitute or involve an Estate Malibu Party Claim.

Similarly, in relation to damages, Borisch largely blurs the line between himself and the Debtors, making it difficult to ascertain what Borisch is alleging to be his own damages as opposed to damages to the Debtors. As a matter of law, Borisch will obviously be limited to the recovery of his own damages, whatever they may be (if any), for any alleged breach of an implied contract to which he alone (in his individual capacity) is a party. Correspondingly, to the extent that Borisch is improperly using Count III as a vehicle to attempt to recover damages directly caused to the

---

[120] *See* Amended Borisch Malibu Complaint ¶¶ 158-166.

Debtors for his own benefit, Borisch is impermissibly attempting to recover on an Estate Malibu Party Claim.

Finally, in relation to Count IV of the Amended Borisch Malibu Complaint – the unjust enrichment cause of action[121] – Borisch is patently attempting to recover on an Estate Malibu Party Claim. Referencing back to alleged misrepresentations made by the Malibu Parties, Borisch asserts that it would be inequitable to allow Malibu to retain the profits that it allegedly made, and to allow Springer to retain the increased compensation, bonuses, severance, and other benefits that he allegedly received, during the period in which the Debtors continued to do business with Malibu. Thus, Borisch asserts that Malibu and Springer should be compelled to disgorge such amounts. While Borisch includes reference to alleged misrepresentations made to him in an individual capacity, as detailed above in relation to Counts I and II, that does not change the fact that the sole alleged source of the complained of "enrichment" obtained by the Malibu Parties was payments made by the Debtors to Malibu. There is no allegation that Borisch made any direct payment or transfer to the Malibu Parties himself. Hence, because the alleged injury associated with the unjust enrichment claim resides directly with the Debtors, and only indirectly or derivatively with Borisch, Count IV constitutes or involves an Estate Malibu Party Claim.

### 2. The Proposed Counterclaim and M&T Case Claims

Turning to the Proposed Counterclaim, Borisch initially argues that the Trustee has violated the Carve-Out Provision of the Cash Collateral Order in attempting to preclude his pursuit of the M&T Case Claims. The Trustee responds in two ways. First, he emphasizes that he is not attempting, nor has he ever attempted, to in any way preclude Borisch from asserting any *defenses* that he may hold in relation to claims asserted by M&T *against* Borisch in the M&T Case. Second,

---

[121] *See* Amended Borisch Malibu Complaint ¶¶ 167-175.

with respect to the M&T Case Claims that Borisch seeks to pursue against M&T pursuant to the

Proposed Counterclaim, the Trustee argues that nothing within the Carve-Out Provision grants

Borisch the right to pursue any of those claims that are owned by the Estates.  The Court agrees.

To understand this, it is important to put the Carve-Out Provision in context.  In this regard,

pursuant to Paragraph D of the Cash Collateral Order, the Trustee acknowledged, stipulated, and

agreed to certain matters, subject only to the challenge rights set forth in Paragraph 19 of the Cash

Collateral Order.  Among other things (using the defined terms set forth in the Cash Collateral

Order), the Trustee, on behalf of the Estates, acknowledged and stipulated to the validity and

amount of the Prepetition Obligations of M&T, acknowledged and stipulated to the existence and

validity of the Prepetition Liens held by M&T in the Prepetition Collateral to secure the Prepetition

Obligations, stipulated and agreed to the non-avoidability of the Prepetition Obligations, payments

made in relation thereto, and the Prepetition Liens, and agreed to waive any right to challenge, and

to release any causes of action against M&T with respect to, the Prepetition Obligations and the

Prepetition Liens.[122]  Pursuant to Paragraph 19 of the Cash Collateral Order, in addition to

expressly providing for such acknowledgments, stipulations, agreements, waivers and releases to

be binding on the Trustee and the Estates, the order provided for the same to be binding on all

other parties in interest acting or seeking to act on behalf of the Estates unless such party in interest

obtains standing to act on behalf of the Estates and files a Challenge Proceeding against M&T

within the Challenge Period specified therein.[123]

With the foregoing in mind, the agreed-upon Carve-Out Provision provides for the

following exceptions to Paragraph 19 of the Cash Collateral Order:

---

[122] *See* Cash Collateral Order ¶ D(iii)-(vi) and (x).

[123] *See* Cash Collateral Order ¶ 19(ii).

*First*, that the Challenge Period deadline will not apply to Borisch. This simply means that Borisch will be able to pursue standing on behalf of the Estates at any time[124] and then, if granted standing, to file a Challenge Proceeding on behalf of the Estates against M&T, notwithstanding expiration of the Challenge Period.

*Second*, that outside of the Bankruptcy Case, including in the M&T Case, none of the Trustee's stipulations, admissions, agreements or releases shall be binding upon or otherwise affect any claims, defenses, affirmative defenses or counterclaims *which may be asserted by [Borisch] under applicable law* as of the [end of the Challenge Period] which would otherwise have been barred if a Challenge Proceeding was not filed by him by the [end of the Challenge Period]. This simply means that nothing within the Cash Collateral Order shall prevent Borisch from asserting in any proceeding outside of the Bankruptcy Case, including in the M&T Case, any claim, defense, affirmative defense, or counterclaim that, under applicable law, Borisch *owns or has been granted standing to pursue on behalf of the Estates*. Importantly, this provision does not grant standing to Borisch to pursue any cause of action that is owned by the Estates.

*Third and finally*, that the validity or enforceability of any such claim, defense, affirmative defense, or counterclaim owned by Borisch or as to which he has been granted standing to pursue, including the question of whether Borisch does, in fact, have standing to assert such claim, defense, affirmative defense, or counterclaim, shall be determined in a court of competent jurisdiction pursuant to applicable law. Importantly, again, this provision does not grant standing to Borisch to pursue any cause of action owned by the Estates. And it does not preclude this Court from (a) determining whether any claim/counterclaim sought to be asserted by Borisch constitutes property of the Estates or (b) determining whether Borisch has standing to pursue any claim/counterclaim owned by the Estates.[125]

In short, the Carve-Out Provision does not grant Borisch a blank check to assert any of the M&T Case Claims that are owned by the Estates.

With that resolved, the Court now turns to the facial allegations of the Proposed Counterclaim.[126] Almost immediately, the Court is struck by the following preamble to the causes of action alleged within the Proposed Counterclaim: "Matthew Borisch has standing to pursue all

---

[124] *See, e.g., Louisiana World Exposition v. FDIC*, 858 F.2d 233, 247 (5th Cir. 1988) (identifying standards applicable to obtaining standing).

[125] *See* 28 U.S.C. § 1334(b) and (e)(1).

[126] Importantly, the Court has not analyzed and expresses no opinion with respect to the plausibility (or lack thereof) of any cause of action alleged within the Proposed Counterclaim. The Court's focus is solely on the ownership of the M&T Case Claims, whether viable or not.

counterclaims against M&T because he personally guaranteed [the Debtors'] obligations which will be specifically determined in the bankruptcy proceeding and thus, he has been injured by M&T's conduct."[127]  This is a brazen overstatement (if not outright misstatement) of the law.  Yet it foreshadows the extent to which Borisch thereafter attempts to assert causes of action belonging to the Estates (the "**Estate M&T Claims**").

Starting with Count I of the Proposed Counterclaim – a breach of contract cause of action for breach of the covenant of good faith and fair dealing[128] – Borisch alleges that M&T took actions in breach of both the M&T loan agreements and the Borisch Guaranty.  Clearly, to the extent Borisch alleges that M&T breached an implied duty of good faith and fair dealing under the loan agreements, such duty was owed to the Debtors, not Borisch, and any direct injury that resulted from a breach was to the Debtors, not Borisch.  Thus, to such extent (including all damages alleged on account thereof), Count I constitutes or involves an Estate M&T Claim.  Only to the extent that Count I alleges a breach of the implied duty of good faith and fair dealing with respect to the Borisch Guaranty (and any damages directly caused to Borisch, individually, in relation thereto) does Count I *not* constitute or involve an Estate M&T Claim.

Next, pursuant to Count II of the Proposed Counterclaim, Borisch seeks to assert a cause for action for breach of the M&T floor plan financing loan agreements.[129]  Because the Debtors are the ones who are party to the floor plan loan agreements, not Borisch, Count II patently asserts an Estate M&T Claim.  Borisch attempts to get around this evident fact by alleging that "as a direct result of M&T's breach, Borisch has suffered damages."  But Borisch's attempt to mischaracterize his injury as a "direct" injury is unavailing.  Any direct injury on account of a breach of the loan

---

[127] *See* Proposed Counterclaim ¶ 64.

[128] *See* Proposed Counterclaim ¶¶ 65-70.

[129] *See* Proposed Counterclaim ¶¶ 71-76.

agreements is to the Debtors, not to Borisch.  Any injury suffered by Borisch in relation thereto is indirect or derivative of the harm caused to the Debtors.

Third, pursuant to Count III of the Proposed Counterclaim, Borisch seeks to assert a cause of action for breach of fiduciary duty.[130]  Here, again, Borisch seemingly attempts to bolster any claim that he personally owns by combining it with the Estates' claim.  He starts by alleging that M&T owed a fiduciary duty both to the Debtors and to him, individually as a guarantor.  He then alleges that M&T breached such duties by allegedly failing to obtain "customary agreements," including a repurchase agreement from Malibu, employing a person who temporarily and wrongfully obtained financial control of the underlying business (presumably referring to a prelitigation consultant hired by M&T), and obstructing and failing to timely liquidate the Tommy's inventory during the summer selling season.  Finally, he alleges that M&T's actions resulted in substantial harm to the Debtors and Borisch before requesting that he recover damages alone.  Obviously, Count III asserts an Estate M&T Claim to the extent that the allegations refer to the existence of a fiduciary duty owed by M&T to the Debtors, the breach of that duty, and the injury to and damages suffered by the Debtors on account of the breach.  In relation to the asserted breach and damages, M&T's alleged failure to obtain a repurchase agreement, its employment of a person who allegedly obtained financial control of the underlying business (presumably referring to the Tommy's business), and its obstruction/failure to timely liquidate Tommy's' inventory all involve and relate to direct injuries to the Debtors, not Borisch individually.  Only to the extent that Count III asserts the existence of a fiduciary duty owed by M&T to Borisch individually, as a guarantor, the breach of such duty, and the injury to and damages incurred directly by Borisch does Count III *not* constitute or involve an Estate M&T Claim.

---

[130] *See* Proposed Counterclaim ¶¶ 77-82.

Pursuant to Count IV of the Proposed Counterclaim, Borisch seeks to assert a cause of action for fraudulent inducement.[131]  Once again, Borisch throws together a mixture of allegations constituting both an Estate M&T Claim and individual Borisch claim.  In this regard, Borisch alleges that M&T misrepresented its willingness to refinance the Debtors' long-term debt to Mercantile Bank with both an intent to induce the Debtors into entering into the M&T floor plan loan agreements and to induce Borisch to enter into the Borisch Guaranty.  To the extent such allegations refer or relate to the inducement of the Debtors to enter into the M&T floor plan loan agreements, and any damages suffered as a result thereof, such allegations obviously constitute or involve an Estate M&T Claim.  Only to the extent the allegations refer or relate to the inducement of Borisch in relation to the Borisch Guaranty, and any damages suffered as a result thereof, do such allegations *not* constitute or involve an Estate M&T Claim.

Borisch separately alleges in Count IV that M&T fraudulently promised to refinance the Debtors' long-term debt after three successful audits, and alleged that M&T made the promise with the intent to induce Borisch to infuse enough cash into the Debtors to enable the Debtors to keep operating through the completion of the three audits.  Borisch additionally alleges that, in reliance upon such promise, he did, in fact, tap into personal assets and sell certain business interests to provide $29 million in financial support to the Debtors.  In considering such allegations, the Court is not tasked with evaluating the plausibility of such allegations; instead, the Court is tasked with only considering the ownership of the cause of action alleged thereby, whether viable or not.  Hence, because these allegations facially describe an alleged fraudulent promise made to Borisch with the intent to cause Borisch, in his individual capacity, to infuse his own money into the

---

[131] *See* Proposed Counterclaim ¶¶ 83-102.

Debtors, the injury alleged thereby is to Borisch, individually.  Thus, such allegations, to such extent, do *not* constitute or involve an Estate M&T Claim.

Next, pursuant to Count V of the Proposed Counterclaim, Borisch seeks to assert a cause of action for negligence.[132]  Count V also includes a mixture of causes of action.  In this instance, Borisch alleges that M&T owed certain duties to both the Debtors and Borisch, that M&T breached those duties, and that the breach caused damages to both the Debtors and Borisch.  Simply put, Borisch improperly seeks to assert an Estate M&T Claim to the extent such allegations refer or relate to duties allegedly owed by M&T to the Debtors, the breach of those duties in relation to the Debtors or the Tommy's business, and any damages suffered by the Debtors as a result thereof.  Only to the extent the allegations refer or relate only to an alleged duty owed by M&T to Borisch individually, as a guarantor, the breach of such duty in relation to Borisch or his individual interests, and any damages suffered as a result thereof do such allegations *not* constitute or involve an Estate M&T Claim.

Finally, pursuant to Count VI of the Proposed Counterclaim, Borisch seeks declaratory relief in the form of a determination that Borisch is discharged from his obligations under the Borisch Guaranty.[133]  In this case, Borisch re-alleges much of the same matters as outlined above in claiming that his obligations under the Borisch Guaranty should be determined to be discharged.  Notwithstanding the mixture of allegations (some of which are only relevant to Estate M&T Claims), because the count focuses specifically on the enforceability of the Borisch Guaranty – an obligation of Borisch in his individual capacity – the count does *not* constitute or involve an Estate M&T Claim.

---

[132] *See* Proposed Counterclaim ¶¶ 103-110.

[133] *See* Proposed Counterclaim ¶¶ 111-116.

### C.    *Borisch's Violation of the Automatic Stay Necessitating Enforcement Relief*

Section 362(a)(3) of the Bankruptcy Code precludes Borisch from taking any act to exercise control over property of the Estates.[134] Borisch has violated that automatic stay protection by asserting the Estate Malibu Party Claims within the Amended Borisch Malibu Complaint and attempt to assert the Estate M&T Claims by requesting leave of court to file the Proposed Counterclaim. Even worse, Borisch has taken such contumacious actions knowingly and willfully.

In relation to the Estate Malibu Party Claims, before the Amended Borisch Malibu Complaint was filed, the Trustee put Borisch and his counsel on notice of the impermissible assertion of estate causes of action in violation of the automatic stay. Instead of addressing the concerns raised by the Trustee, or alternatively seeking a comfort order from this Court before taking any further action, Borisch doubled down with the filing of the Amended Borisch Malibu Complaint. In doing so, his inclusion of the Introductory Amended Complaint Statement within the Amended Borisch Malibu Complaint was unavailing. It is nothing more than mere window dressing given the continued assertion of Estate Malibu Party Claims within the operative cause of action paragraphs of the Amended Borisch Malibu Complaint.

In relation to the Estate M&T Claims, before filing the Motion for Leave to move forward with the Proposed Counterclaim, in connection with the cash collateral proceedings, Borisch engaged in a direct debate with the Trustee with respect to the control of causes of action against M&T. Ultimately, Borisch succeeded in obtaining the Carve-Out Provision to the Cash Collateral Order as a form of belts and suspenders protection to ensure that nothing within the Cash Collateral Order would affect any of *his* rights, claims, or defenses against M&T in the M&T Case. Now,

---

[134] *See* 11 U.S.C. § 362(a)(3).

however, he tunes out all of the prior claim ownership admonitions and plows forward with an attempt to assert estate causes of action in violation of the automatic stay.

In short, Borisch's assertion of the Estate Malibu Party Claims, and his efforts to pursue Estate M&T Claims, are not a result of oversight or mistake.  Instead, they constitute knowing and willful actions taken in the face of multiple automatic stay red flags.  To date, Borisch has taken no steps to purge himself of such stay violations.  For these reasons, the Trustee has established more than sufficient cause for the issuance of § 362(a)(3) enforcement relief.

## *CONCLUSION*

Based upon the foregoing, the Court will separately enter an order granting in part, and denying in part, the Enforcement Motion, pursuant to which:

(a) it is determined that the Estate Malibu Party Claims and the Estate M&T Claims constitute property of the Estates;

(b) it is determined that Borisch's filing of the Amended Borisch Malibu Complaint with the inclusion of the Estate Malibu Party Claims constituted an act to exercise control over property of the Estates in violation of § 362(a)(3) of the Bankruptcy Code, and that Borisch's failure, to date, to withdraw or amend the complaint to remove all references to the Estate Malibu Party Claims constitutes a continuing violation of § 362(a)(3) of the Bankruptcy Code;

(c) it is determined that Borisch's filing of the Motion for Leave to file the Proposed Counterclaim with the inclusion of the Estate M&T Claims constituted an act to exercise control over property of the Estates in violation of § 362(a)(3) of the Bankruptcy Code, and that Borisch's failure, to date, to withdraw or amend the Motion for Leave/Proposed Counterclaim to remove all references to the Estate M&T Claims constitutes a continuing violation of § 362(a)(3) of the Bankruptcy Code;

(d) Borisch is compelled to promptly take such action as is necessary or appropriate to withdraw or dismiss without prejudice all Estate Malibu Party Claims asserted by Borisch in the Borisch Malibu Case;

(e) Borisch is compelled to promptly take such action as is necessary or appropriate to amend the Motion for Leave/Proposed Counterclaim to remove all references to the Estate M&T Claims included within the Proposed Counterclaim;

(f) consistent with § 362(a)(3) of the Bankruptcy Code, Borisch is enjoined from taking any further or additional acts to exercise control over property of the Estates, including the Estate Malibu Party Claims and Estate M&T Claims, other than the remedial acts identified in paragraphs (d) and (e) above; and

(g) all other relief requested by the Trustee within the Enforcement Motion is denied, but without prejudice to the right of the Trustee to separately request further or additional relief from the Court in the event of Borisch's failure to comply with any of the foregoing obligations.

### # # END OF MEMORANDUM OPINION # # #