| | |
|---|---|
| Russell A. Devenport (SBN 24007109) | Marc M. Bakst (P41575) (*Pro Hac Vice*) |
| H. Dustin Fillmore IV (SBN 24105858) | Floyd B. Gates, Jr. (P54234) (*Pro Hac Vice*) |
| MCDONALD SANDERS, P.C. | BODMAN PLC |
| 777 Main Street, Suite 2700 | 1901 St. Antoine Street |
| Fort Worth, Texas 76102 | Sixth Floor at Ford Field |
| Telephone: (817) 336-8651 | Detroit, Michigan 48226 |
| Email: rad@mcdonaldlaw.com | Telephone: (313) 393-7530 |
| Email: hdf@mcdonaldlaw.com | Email: mbakst@bodmanlaw.com |
| | Email: fgates@bodmanlaw.com |

ATTORNEYS FOR MATTHEW BORISCH AND BORISCH PARTIES

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | |
|---|---|
| **IN RE:** | **CHAPTER 11** |
| **TOMMY'S FORT WORTH, LLC,** *et al*,[1] | **CASE NO.: 24-90000** |
| **DEBTORS.** | **(JOINTLY ADMINISTERED)** |

**OBJECTION OF BORISCH PARTIES TO (i) MODIFICATION OF CHAPTER 11 PLAN AND TO (ii) CONFIRMATION, AND (iii) BORISCH PARTIES' AMENDMENT OF <u>BALLOTS IF THE PLAN IS MODIFIED</u>**

Matthew Borisch and the Borisch Parties[2], for their Objection to (i) Modification of Chapter 11 Plan and to (ii) Confirmation, and (iii) Amendment of Ballots if the Plan is Modified, state:

---

[1] The Debtors in these Chapter 11 Cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

[2] Capitalized terms not defined in this Objection have the meanings set forth in the solicitation version of the Plan of Reorganization filed May 1, 2025 [Docket No. 879], provided, however, that the defined term Borisch Parties

4912-2555-7842_1

## INTRODUCTION AND SUMMARY OF OBJECTION

The trustee has expressed great interest in confirming a plan of reorganization. Based upon the amended ballot summary [Docket No. 942] filed by the trustee, only the solicitation version of the Plan [Docket No. 879] ("Plan") noticed to creditors may be confirmed. But, instead of proceeding to confirmation with the Plan, the trustee seeks to modify the Plan, after the balloting and objection deadline, for the improper purpose of favoring one creditor and treating the Borisch Parties disparately relative to other Consenting Creditors and in a manner impermissible under the Bankruptcy Code. Because the modification of the Plan [Docket No. 935] fails to meet the requirements of the Bankruptcy Code, the Plan should not be modified or confirmed in the manner sought. Instead, only the solicitation version of the Plan should be considered by the Court for confirmation.

## DISCUSSION

1. On May 1, 2025, the trustee obtained approval of the Plan for solicitation to creditors for balloting.

2. Importantly, section X.D. of the Plan (second paragraph) states clearly and unambiguously that the Released Parties (i.e. expressly including M&T Bank) "shall be deemed to have … released and discharged each Consenting Creditor" (i.e. those "holders of Claims or Equity Interests" … "who do not"… opt out of the Third-Party Releases") "to the fullest extent under applicable law, from any and all claims, … [including from] **guaranties**…" (emphasis added). The entirety of the Third-Party Releases provision of the Plan follows:

   **D.** *Third-Party Releases.*

---

as used in this Objection also includes The Michael Alan Borisch Trust and the Matthew Allen Borisch Trust UAD September 19, 2005.

**Except as otherwise expressly set forth in the Plan or the Confirmation Order, and in exchange for other good and valuable consideration, the adequacy of which is hereby confirmed, each of the Releasing Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Released Party, to the fullest extent permissible under applicable law, from any and all claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively (including any Causes of Action asserted or assertable on behalf of the Debtors, the Trustee, the Creditor Trust, or the Estates, as applicable), matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with the Debtors (or any predecessor entity) or the Chapter 11 Cases or affecting property of the Debtors' Estates, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**<u>The Released Parties shall be deemed to have expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged each Consenting Creditor to the fullest extent permissible under applicable law, from any and all claims</u>, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, <u>guaranties</u>, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise, arising from, relating to, or connected with, the Debtors (or any predecessor entity) or the Chapter 11 Cases or affecting property of the Debtors' Estates, the Plan or the administration and implementation of the Plan, or based upon any other related act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date.**

**Notwithstanding anything contained herein to the contrary, the foregoing releases do not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, or (ii) the rights of holders of Allowed Claims to receive Distributions under the Plan.**

**Each of the Releasing Parties knowingly grants the Third-Party Releases notwithstanding that each Releasing Party may hereafter discover facts in addition to, or different from, those which either such Releasing Party now knows or believes to be true, and without regard to the subsequent discovery or existence of such different or additional facts, and each Releasing Party expressly waives any and all rights that such Releasing**

3

**Party may have under any statute or common law principle which would limit the effect of the Third-Party Release to those claims actually known or suspected to exist as of the Effective Date. In connection with their agreement to the foregoing Third-Party Releases, the Releasing Parties knowingly and voluntarily waive and relinquish any and all provisions, rights, and benefits conferred by any law of the United States or any state or territory of the United States, or principle of common law, which governs or limits a person's release of unknown claims, comparable or equivalent to California Civil Code § 1542, which provides: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS SETTLEMENT WITH THE DEBTOR.** (Emphasis added).

3. The Plan was circulated to creditors with a detailed balloting package which, at the Court's direction on May 1, 2025, reproduced the Plan language above. The Court directed that language explaining the consequences of choosing to opt out, or not opt out, of the Third-Party Releases be explicit and included in the package.

4. The Plan and the voting package were explicit that the Borisch Parties were not Released Parties.

5. Under the Plan solicited, there is no question that Matthew Borisch and the other Borisch Parties are included within the definition of Consenting Creditors:

> **Consenting Creditors** means collectively the following, in each case in its capacity as such with each being a "*Consenting Creditor*": (a) all holders of Claims or Equity Interests that vote to accept or are deemed to accept the Plan <u>and</u> who do not check the box on the applicable Ballot to affirmatively opt out of the Third-Party Releases; and (b) all holders of Claims or Equity Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan <u>and</u> who do not (i) check the box on the applicable Ballot to affirmatively opt out of the Third-Party Releases or (ii) object to the Plan in respect of the Third-Party Releases.

6. Under the second paragraph of section X.D. of the Plan, Released Parties (which is different from the Estate) agree, as consideration for the Third-Party Releases, to release Consenting Creditors from all things related to the Debtors.

4

7. Article XII.D. of the Plan states that in the event of any inconsistency among the Plan, the Disclosure Statement, or any exhibit or schedule to the Disclosure Statement or the Plan, the provisions of the Plan shall govern.

8. Despite numerous requests to the trustee and his counsel to be included in Plan negotiations and drafting, Matthew Borisch and Borisch Parties were excluded from Plan negotiations and drafting. M&T Bank, in contrast, was included and integrally involved in the drafting of the Plan from December 2024 forward.

9. The trustee and M&T Bank knew how to strike Borisch Parties from the definition of Released Parties and did so stating explicitly that "*provided, however,* that the Borisch Parties shall not be 'Released Parties.'" Likewise, therefore, both knew how to strike Borisch Parties from the definition of Releasing Parties and Consenting Creditors had they intended to do so.

10. In an opinion dated May 22, 2025, this Court dissected litigation pursued by Matthew Borisch in State Circuit Court in Kent County, Michigan, and agreed with Matthew Borisch that at least some of the claims he sought to pursue in that state court, including on account of $29 million of losses he personally suffered, are personal claims which he could pursue against M&T Bank.

11. As ordered by this Court, Matthew Borisch's motion to amend his counterclaim in the Michigan litigation (in order to conform with the Court's decision) is pending.

12. M&T Bank's Michigan complaint may be for $50 million or more. Matthew Borisch disputes that liability and instead believes that he may recover on affirmative claims against the bank.

13. Regardless, in light of the risks of litigation, Matthew Borisch and the other Borisch Parties made a determination to be treated consistent with and akin to other creditors under the

5

Plan similarly situated and to accept the benefit of the second paragraph of X.D. by choosing not to opt out of the Third-Party Release that M&T Bank and others demanded be in the Plan.

14. The deadline for objections to the Plan solicited was June 5, 2025. M&T Bank accepted the Plan as solicited and filed no objections to confirmation of it and sought no extension of time for objection.

15. All other Consenting Creditors get the benefit of choosing not to opt out and receiving a release from Released Parties under the second paragraph of X.D. The trustee's attempt to modify the Plan now (i.e. solely to preclude only Borisch Parties from giving and getting a release as a Consenting Creditor after the objection and balloting deadline, renders the proposed modification of the Plan unconfirmable under Bankruptcy Code section 1127(a) and Bankruptcy Code section 1123(a)(4).

16. Section 1127(a) states that a plan proponent may "not modify such plan so that such plan as modified fails to meet the requirements of sections 1122 and 1123 of this title."

17. "A fundamental objective of the Bankruptcy Code is to treat similarly situated creditors equally." Pension Benefit Guar. Corp. v. Belfance (In re CSC Indus., Inc.), 232 F.3d 505, 508 (6th Cir. 2000). Therefore, a plan may be confirmed only if it does not discriminate unfairly and is fair and equitable. Under section 1123(a)(4), a plan shall "provide the same treatment for each claim or interest of a particular class, unless the holder of a particular claim or interest agrees to a less favorable treatment of such particular claim or interest." 11 USC 1123(a)(4). "[T]he key inquiry under [Section] 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity." In re Mesa Air Group, Inc., 2011 Bankr. LEXIS 3855 at *19 (Bankr. S.D.N.Y. Jan. 20, 2011).

18.     Matthew Borisch and other Borisch Parties hold claims against Debtors based upon guaranties. The creditors asserting guaranties made by Borisch Parties to them, to whose rights the Borisch Parties succeed, are not excluded from not opting out. So, unfairly and disparately, while those creditors (not Borisch Parties) do indeed get the benefit of a release from the Released Parties by not opting out, should the Borisch Parties as guarantors pay those creditors and succeed to their rights (as contemplated under the solicitation Plan and Bankruptcy Code section 509(a)) they are barred from their full subrogation rights. The Fifth Circuit has long rejected disparate treatment of similar claims in similar context. <u>In re Greystone III Joint Venture</u>, 948 F.2d 134 (5th Cir. 1992). In <u>Greystone III</u>, the Court rejected a plan proponent's efforts to classify separately unsecured claims in two classes with the same treatment to obtain an accepting class. The Court rejected the plan proponent's efforts as "specious, for it fails to distinguish between the *classification* of claims and the *treatment* of claims." <u>Id</u>. at 141. Here, the trustee has no classification issues to obtain an accepting class because he knew that M&T Bank would provide him with an accepting class. However, the rationale of <u>Greystone III</u> still applies to the treatment of the unsecured claims of Borisch Parties should they pay other unsecured creditors who have the benefit of the second paragraph of X.D. Disparate treatment of Borisch Creditors is not permissible.

19.     Matthew Borisch also has a class 3 secured claim for $35 million scheduled in the case of Tommy's Holding Company, LLC, which is deemed to accept the plan (along with other secured parties other than M&T Bank).

20.     Trustee and M&T Bank were fully aware that Matthew Borisch and the Borisch Parties fell within the definition of Consenting Creditor and, as such could elect not to opt out of the Third-Party Release.

21. After working collaboratively for months with M&T Bank to propose a Plan for confirmation to this Court, within a matter of just a few hours of Matthew Borisch and the other Borisch Parties declining to opt out of the Third-Party Release, trustee sought modification of this Plan to carve out them, and only them, from the relief other Consenting Creditors similarly situated could benefit from. This is inconsistent with and impermissible under both sections 1127(a) and 1123(a)(4).

22. The trustee, as Plan proponent, should be agnostic about what happens as between Matthew Borisch and the Borisch Parties, on the one hand, and M&T Bank, on the other hand. Indeed, neither the trustee nor the post-confirmation Creditor Trust are to retain claims against Matthew Borisch or the Borisch Parties.

23. The trustee is not agnostic, far from it. The trustee is clearly doing the bidding for M&T Bank. The modification of the Plan is not confirmable. As so modified (which it should not be), in addition to issues under 1123(a)(4), there would be a failure to meet the requirement of good faith for confirmation.

24. At the June 9, 2025 status conference regarding the proposed modification, the trustee asserted that this modified filing about the Borisch Parties is a clarification due to "ambiguity." There is no ambiguity and the proposed modification of the Plan is not for "clarification." That is a bold misrepresentation. Moreover, it changes everything for Matthew Borisch and the Borisch Parties, and it materially alters the Plan treatment of selected creditors to protect M&T Bank's claims. It would not have been permissible when the plan was initially solicited, and it is impermissible now. The bait and switch by the trustee on behalf of M&T Bank has forever compromised Matthew Borisch's settlement posture vis a vis the Michigan state court

litigation (i.e. M&T Bank has now improperly flushed out Matthew Borisch's willingness to wash claims).

25. The modification, if permitted would also make this, or any subsequent plan that does not permit the Borisch Parties to have the benefits of the second paragraph of X.D., unconfirmable. Under Bankruptcy Code section 1129(a)(3), a plan can only be confirmed if it is proposed in good faith considering the totality of the circumstances, with the burden of proof on good faith being on the proponent. In re Briscoe Enter. Ltd., II, 994 F.2d 1160, 1165 (5th Cir. 1993).

26. On its face, had the Plan treated Matthew Borisch and the Borisch Parties so markedly different than other creditors it would have been subject to objection and could not be confirmed.

27. To get the valuable Third-Party Release, the Released Parties (which specifically includes M&T Bank) offered consideration to Consenting Creditors.

28. Matthew Borisch and the Borisch Parties accepted that offer. Again, any modification or any plan which treats them differently cannot be confirmed and trustee should be estopped from attempting to extricate M&T Bank from the Plan it helped draft and for which it voted in favor and did not object.

29. The giving of a Third-Party Release in exchange for getting in return a release from the beneficiaries of the Third-Party Release is not a new concept for the plan proponent. There was no lack of clarity and no ambiguity. Both M&T Bank and the trustee simply miscalculated the Borisch Parties' willingness not to opt out (i.e. a difficult decision for Matthew Borisch to be sure following this Court confirming his ability to pursue affirmative counterclaims against M&T Bank in the Michigan state court litigation).

4912-2555-7842_1

30. On March 3, 2025, in a case in the U.S. Bankruptcy Court for the Southern District of Texas, the same counsel that represents the trustee in this case advocated for and obtained confirmation of a Chapter 11 plan with the same relief for consenting creditors in In re Tehum Care Services, Inc., Case No. 23-90086 (Bankr. S.D. Texas) [Docket No. 2010]. (Excerpts of the Tehum Care Services plan are attached at **Exhibit A**, including Article IV.B.8. on page 35 (and pages 3 and 11 to provide the defined terms used in IV.B.8.)[3] about the releases by Released Parties of creditors who or which did not opt out.)  Indeed, the releases the Borisch Parties now to be denied by the trustee were recognized in Tehum Care Services as essential and critical provisions of the plan.  The confirmation order in that case [Docket No. 2014] at paragraph 43 commands:

> "43. **Releases by the Debtor and the Settlement Parties of Holders of Claims in 4, 6, 8, and 9**. The release of Causes of Action by the Released Parties as set forth in Article IX.E. of the Plan is an essential and critical provision of the Plan and forms an integral part of the agreement embodied in the Plan among all parties in interest."

It is no different here in this case for the Borisch Parties.

31. The inclusion of section X.D. in the Plan in this case was the work product of both the trustee and M&T Bank and was intentional.

32. The Plan as modified does not meet the requirement of Bankruptcy Code Section 1129(a)(3) that it be proposed in good faith.

33. "The good faith requirement [under 1129(a)(3)] serves to guard against 'abuses of the system.'" In re Geijsel, 480 B.R. 238, 255 (Bankr. N.D. Tex. 2012) (quoting In re Bashas' Inc., 437 B.R. 874, 911 (Bankr. D. Ariz. 2010). "[T]he good faith standard required for confirmation focuses on a debtor's intention to perform the obligations required by the plan or to abuse the

---

[3] The entirety of the voluminous confirmed plan in the Tehum Care Services case is available on ECF at the website for the U.S. Bankruptcy Court for the Southern District of Texas at Docket No. 2010.
https://www.txs.uscourts.gov/page/bankruptcy-court

4912-2555-7842_1

process." In re Worthy, 2010 Bankr. LEXIS 1592 (Bankr. E.D. La. May 18, 2010).  According to the Fifth Circuit, the bankruptcy judge is "in the best position to assess the good faith of the parties' proposals." Jasik v. Conrad (In re Jasik), 727 F.2d 1379, 1383 (5th Cir. 1984).  The Fifth Circuit has stated that the good faith requirement of § 1129(a)(3) must be "viewed in the light of the totality of the surrounding establishment of a Chapter 11 plan." In re T-H New Orleans Ltd. P'ship, 116 F.3d 790, 802 (5th Cir. 1997).  To satisfy the good faith requirement, the plan must (1) be proposed with the legitimate and honest purpose to reorganize; and (2) have a reasonable hope of success. Id.  In other words, the court assesses whether the "plan was proposed with honesty and good intentions and with a basis for expecting that a reorganization can be effected." In re Dernick, 624 B.R. 799, 811 (Bankr. S.D. Tex. 2020) (citation omitted).  A plan proponent must prove that the Chapter 11 plan was proposed in good faith by a preponderance of the evidence. Briscoe Enter., Ltd., II, supra.

34.    No one objected to assert that the Plan was not proposed in good faith.  Not only does the trustee have the votes needed to confirm the Plan, but the proposed modification is solely focused on extricating M&T Bank from its vote in favor of the Plan.  In June 2024, this Court when considering the objections to use of cash collateral cautioned M&T Bank to be careful with what it wished for.  It succeeded then in denying use of cash collateral and led to the appointment of the trustee and everything that has followed.  Here, at the confirmation hearing, M&T Bank is getting the Plan it negotiated with the Third-Party Release of it that it commanded be included in the Plan.  To get that, it accepted the consequences of the second paragraph of X.D. for Consenting Creditors.  That Plan is what the Court should approve.  In contrast, for all the reasons indicated, if the modification is permitted, based upon the totality of the circumstances, the modified Plan is not proposed in good faith and cannot be confirmed.

11

## AMENDMENT OF BALLOTS FOR MODIFIED PLAN

35.     If the Court permits the modification of the solicitation version of the Plan as was requested on June 6, 2025 [Docket No. 935], then the Borisch Parties must amend their respective ballots to REJECT the modified Plan. Concurrently with the filing of this Objection, Borisch Parties have also filed their amended ballots rejecting the Plan as modified (but not rejecting the Plan as initially solicited). Upon such rejections the modified Plan can only be confirmed (which it cannot be) under cramdown applying Bankruptcy Code 1129(b) if it satisfies all elements of 1129(a) other than (a)(8).

## NO CRAMDOWN OF THE MODIFIED PLAN

36.     Under Section 1129(b), the Court may confirm a reorganization plan with less than all classes accepting the plan over a creditor's objection only if "the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that it impaired under, and has not accepted, the plan." In making a determination whether the discrimination is unfair, courts have applied four factors as follows: (a) whether the discrimination is supported by reasonable basis; (b) whether the debtor can confirm and consummate a plan without discrimination; (c) whether the discrimination is proposed in good faith; and (d) the treatment of the classes discriminated against. See In re Aztec Co., 107 B.R. 585 (M.D. Tenn. 1989); In re American HomePatient, Inc., 298 B.R. 152 (Bankr. M.D. Tenn. 2003).

37.     Here, none of the four factors support cramdown:

(a)     For all the reasons stated in this objection, treatment of the Borisch Parties' claims differently from all others is not reasonable. The 18 of them and their respective current and former officers, directors, employees, managers, attorneys, professional advisors and agents cut out in the proposed modification from the choice of not opting out of the Third-Party Releases are simply creditors but for a relationship to the last name Borisch. Further, the claims to which they succeed have the right of not opting out. Without explanation, Borisch Parties are treated worse than the claimants whose claims they guaranty.

    (b)    Yes, the trustee can confirm the solicitation Plan. He has the votes and there are no objections to confirmation.

    (c)    The discrimination is proposed solely to address the misplaced hope that the Borisch Parties would decline to be Consenting Creditors and instead opt-out. The solicitation Plan did not discriminate against the rights of Borisch Parties to have the same opportunities as all other creditors. The modified Plan reverses that and is not proposed in good faith.

    (d)    The driving cause for the modification is discrimination against the Borisch Parties for the benefit of M&T Bank, only.

Here in this case, the impairment of Borisch Parties' claims is not about distribution. Distribution to general unsecured creditor is nominal (1%). Rather the unfair discrimination is about unequal treatment and opportunity. See Mesa Air Group, supra.

38. The solicitation Plan is ready for confirmation. In contrast, the modified Plan cannot be confirmed.

39. Further, for the reasons noted previously, the modified Plan does not satisfy the requirement that it be proposed in good faith under section 1129(a)(3). Cramdown is not even available for a plan not proposed in good faith.

## RELIEF REQUESTED

The modification of the Plan fails to meet the requirements of the Bankruptcy Code, the Plan may not be modified or confirmed in the modified manner sought after balloting concluded and the objection deadline passed. Borisch Parties request that the modification as it relates to them and the privileges accorded them, along with all other Consenting Creditors, under the second paragraph of section X.D. of the Plan be disallowed. Trustee should be estopped from doing the bidding of M&T Bank.

Instead, only the Plan as solicited on May 1, 2025 should be considered by the Court for confirmation. Based upon the ballot summary, that version of the Plan is ready for confirmation and should be confirmed.

If the modification is allowed, then the Borisch Parties have amended their Ballots to reject the Plan, and the Plan cannot be confirmed by cramdown under 1129(b). Confirmation of the Plan as modified on June 6, 2025 should be denied.

                                                Respectfully submitted,

Dated: June 30, 2025                    */s/ Marc M. Bakst*

Marc M. Bakst
Floyd B. Gates, Jr.
BODMAN PLC
For Matthew Borisch and Borisch Parties
1901 St. Antoine Street
6th Floor at Ford Field
Detroit, MI 48226
(313) 393-7530
mbakst@bodmanlaw.com
fgates@bodmanlaw.com

*/s/ H. Dustin Fillmore IV*

H. Dustin Fillmore IV
MCDONALD SANDERS, P.C.
For Matthew Borisch and Borisch Parties
777 Main Street, Suite 2700
Fort Worth, TX 76102
(817) 336-8651
hdf@mcdonaldlaw.com

14

4912-2555-7842_1

# EXHIBIT A

# EXCERPTS OF THE TEHUM CARE SERVICES PLAN

4912-2555-7842_1

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| In re: | ) |
| | ) Chapter 11 |
| | ) |
| TEHUM CARE SERVICES, INC.,[1] | ) Case No. 23-90086 (CML) |
| | ) |
| Debtor. | ) |
| | ) |

**FIRST MODIFIED JOINT CHAPTER 11 PLAN OF THE TORT CLAIMANTS'
COMMITTEE, OFFICIAL COMMITTEE OF UNSECURED CREDITORS, AND DEBTOR**

| | |
|---|---|
| **BROWN RUDNICK LLP**<br>David J. Molton (*pro hac vice*)<br>Eric R. Goodman (*pro hac vice*)<br>D. Cameron Moxley (*pro hac vice*)<br>Gerard T. Cicero (*pro hac vice*)<br>Meghan McCafferty (*pro hac vice*)<br>Amir Shachmurove (*pro hac vice*)<br>Seven Times Square<br>New York, NY 10036<br>Telephone: (212) 209-4800<br>Facsimile: (212) 209-4801<br>Email: dmolton@brownrudnick.com<br>egoodman@brownrudnick.com<br>cmoxley@brownrudnick.com<br>gcicero@brownrudnick.com<br>mmccafferty@brownrudnick.com<br>ashachmurove@brownrudnick.com<br><br>*Co-Counsel to the Tort Claimants' Committee*<br><br>**BERRY RIDDELL, LLC**<br>Michael W. Zimmerman<br>6750 E. Camelback Road, Suite #100<br>Scottsdale, AZ 85251<br>Telephone: (480) 385-2727<br>Email: mz@berryriddell.com<br><br>*Co-Counsel to the Tort Claimants' Committee* | **STINSON LLP**<br>Nicholas Zluticky (SD TX Bar No. 3846893)<br>Zachary Hemenway (SD TX Bar No. 3856801)<br>1201 Walnut, Suite 2900<br>Kansas City, MO 64106<br>Telephone: (816) 842-8600<br>Facsimile: (816) 691-3495<br>Email: nicholas.zluticky@stinson.com<br>zachary.hemenway@stinson.com<br><br>*Counsel to the Official Committee of Unsecured Creditors*<br><br>**GRAY REED**<br>Jason S. Brookner (TX Bar No. 24033684)<br>Micheal W. Bishop (TX Bar No. 02354860)<br>Aaron M. Kaufman (TX Bar No. 24060067)<br>Lydia R. Webb (TX Bar No. 24083758)<br>Amber M. Carson (TX Bar No. 24075610)<br>1300 Post Oak Boulevard, Suite 2000<br>Houston, TX 77056<br>Telephone: (713) 986-7127<br>Facsimile: (713) 986-5966<br>Email: jbrookner@grayreed.com<br>mbishop@grayreed.com<br>akaufman@grayreed.com<br>lwebb@grayreed.com<br>acarson@grayreed.com<br><br>*Counsel to the Debtor and Debtor in Possession* |

> THE PLAN PROVIDES, AMONG OTHER THINGS, FOR THE ISSUANCE OF A CHANNELING INJUNCTION PURSUANT TO SECTIONS 105(a) OF THE BANKRUPTCY CODE THAT CHANNELS ALL CLASS 4, CLASS 6, AND CLASS 9 CLAIMS, *I.E.*, CLAIMANTS WHO HAVE NOT OPTED OUT OF THE CONSENSUAL CLAIMANT RELEASE (AS DEFINED HEREIN), TO SEPARATE TRUSTS. CLAIMANTS WHO ELECT TO OPT OUT OF THE CONSENSUAL CLAIMANT RELEASE SHALL HAVE NO RIGHT TO RECOVER FROM THE TRUSTS, BUT MAY PURSUE RECOVERIES IN THE CIVIL JUSTICE SYSTEM.

---

[1] The last four digits of the Debtor's federal tax identification number is 8853. The Debtor's service address is: 205 Powell Place, Suite 104, Brentwood, Tennessee 37027.

16

4912-2555-7842_1

15. "*Bar Date*" means, as applicable, (i) the Claims Bar Date, (ii) any other date or dates established or to be established by this Plan or by a Final Order of the Bankruptcy Court setting a deadline by which Proofs of Claim must be Filed and (iii) the Administrative Claims Bar Date.

16. "*Business Day*" means any day, other than a Saturday, Sunday, or a "legal holiday," as defined in Bankruptcy Rule 9006(a).

17. "*Cash*" or "*$*" means legal tender of the United States of America.

18. "*Causes of Action*" means any claims, causes of action, interests, damages, remedies, demands, rights, actions (including Avoidance Actions), suits, debts, sums of money, obligations, judgments, liabilities, accounts, defenses, offsets, counterclaims, crossclaims, powers, privileges, licenses, liens, indemnities, guaranties, and franchises of any kind or character whatsoever, whether known or unknown, foreseen or unforeseen, now existing or hereafter arising, contingent or non-contingent, liquidated or unliquidated, choate or inchoate, secured or unsecured, assertable, directly or derivatively, matured or unmatured, suspected or unsuspected, in contract, tort, law, equity, or otherwise.

19. "*Channeled Claim*" means a Channeled GUC Trust Claim or a Channeled PI/WD Trust Claim, as the context may require.

20. "*Channeled GUC Claim*" means a GUC Claim asserted by a GUC Claimant that does not opt out of the Consensual Claimant Release.

21. "*Channeled GUC Trust Claim*" means (a) a Channeled GUC Claim and (b) an Indirect GUC Claim that is a Channeled Indirect Claim.

22. "*Channeled Indirect Claim*" means an Indirect Claim asserted by an Indirect Claimant that does not opt out of the Consensual Claimant Release.

23. "*Channeled PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant (a) who does not opt out of the Consensual Claimant Release or (b) who does not opt out to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, *provided, however*, that an Opt-Out Insured PI/WD Claim shall become a Channeled PI/WD Claim if the Holder of the Opt-Out Insured PI/WD Claim elects or is deemed to elect to return to the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures. A PI/WD Claim asserted by the Holder of an Opt-Out PI/WD Claim shall not be a Channeled PI/WD Claim.

24. "*Channeled PI/WD Trust Claim*" means (a) a Channeled PI/WD Claim and (b) an Indirect PI/WD Claim that is a Channeled Indirect Claim.

25. "*Channeling Injunction*" means the injunction set forth in **Article IX.I** to be issued pursuant to, and included in, the Confirmation Order. For the avoidance of doubt, the Channeling Injunction shall only apply to Channeled Claims asserted by Consenting Claimants.

26. "*Chapter 11 Case*" means the above-captioned chapter 11 bankruptcy case of the Debtor.

27. "*Civil Justice System*" means any non-bankruptcy federal, state, foreign, cross-border, or international adjudicatory system, whether private or public, judicial, administrative, arbitral, or mediative, or adversarial or non-adversarial.

28. "*Claim*" means any claim against the Debtor, as defined in section 101(5) of the Bankruptcy Code.

29. "*Claimant*" means a Holder of a Claim.

30. "*Claims Agent*" means Verita Global.

124. "*Lien*" has the meaning set forth in section 101(37) of the Bankruptcy Code.

125. "*Local Bankruptcy Rules*" means the Bankruptcy Local Rules of the United States Bankruptcy Court for the Southern District of Texas as now in effect or hereafter amended.

126. "*Mediator*" means Judge Christopher S. Sontchi (ret.) in his capacity as a Court-appointed mediator in the Chapter 11 Case.

127. "*Non-Released Parties*" means (a) James Gassenheimer, Charles Gassenheimer, James Hyman, Michael Flacks, and Flacks Group LLC, and, as appropriate, their predecessors, successors, assigns, and present and former shareholders, members, Affiliates, subsidiaries, employees, agents, brokers, adjusters, managing agents, claims gents, underwriting agents, administrators, officers, directors, trustees, partners, attorneys, financial advisors, accountants, and consultants, each in their capacities solely as such; (b) any Entity co-liable with one or more Released Parties, including a Governmental Unit, on any Claim; and (c) any PI/WD Insurance Company and GUC Insurance Company.

128. "*Opt-Out GUC Claim*" means a GUC Claim asserted by GUC Claimant that opts out of the Consensual Claimant Release and, by doing so, irrevocably elects to pursue its GUC Claim in the Civil Justice System with no right to return to or recover from the GUC Trust.

129. "*Opt-Out Insured PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant who elects on his or her Ballot to pursue his or her PI/WD Claims in the Civil Justice System for the purpose of pursuing a recovery from one or more PI/WD Insurance Companies, subject to the right to return to and recover from the PI/WD Trust under and in accordance with the PI/WD Trust Distribution Procedures, and who does **not** opt out of the Consensual Claimant Release.

130. "*Opt-Out PI/WD Claim*" means a PI/WD Claim asserted by a PI/WD Claimant who opts out of the Consensual Claimant Release and who, by doing so, irrevocably elects to pursue his or her PI/WD Claim in the Civil Justice System with no right to return to or recover from the PI/WD Trust.

131. "*Opt-Out Indirect Claim*" means an Indirect Claim asserted by Indirect Claimant that opts out of the Consensual Claimant Release and, by doing so, irrevocably elects to pursue its Indirect Claim in the Civil Justice System with no right to return to or recover from the Trusts.

132. "*Opt-Out Release Form*" means the form approved by the Bankruptcy Court for opting out of the Consensual Claimant Release. Claimants may vote to accept the Plan on a Ballot and, at the same time, elect to opt out of the Consensual Claimant Release.

133. "*Ordinary Course Professional*" means a Professional employed by the Debtor pursuant to the Ordinary Course Professionals Order.

134. "*Ordinary Course Professionals Order*" means the *Amended Order (I) Authorizing the Retention and Compensation of Certain Professionals Utilized in the Ordinary Course of Business and (II) Granting Related Relief* [Docket No. 638].

135. "*Other Priority Claim*" means any Claim other than an Administrative Claim or a Priority Tax Claim entitled to priority in right of payment under section 507(a) of the Bankruptcy Code, to the extent such Claim has not already been paid during the Chapter 11 Case.

136. "*Other Secured Claim*" means any Secured Claim, other than a DIP Claim.

137. "*Other Secured Claims Reserve*" means a reserve established by the Debtor on the Effective Date to be used to pay Holders of all Other Secured Claims, to the extent the same have not been paid prior to the Effective Date.

Parties upon demand, the releases set forth this Article IV.B.7 shall be void. If such releases become void, then the relevant Statute of Limitations applicable to any claim or Cause of Action that could then be asserted against the Released Parties shall be tolled and extended to the date that is ninety (90) days following the date that such releases become void and notice of the same is published by the Trusts. Any Released Party may enforce the Consensual Claimant Release before the Bankruptcy Court, which shall retain jurisdiction for such purpose. The Released Parties shall not seek to recover the cost or expense of such enforcement action from the Trusts.

8. <u>Releases by the Debtor and the Settlement Parties of Holders of Claims in Classes 4, 6, 8, and 9</u>

As of the Final Payment Date, for good and valuable consideration, the adequacy of which is hereby confirmed, as an integral component of the Plan, to the maximum extent permitted under applicable law, Released Parties shall, and shall be deemed to, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever release and discharge each of the Holders of Claims in Class 4 (Channeled GUC Claims), Class 6 (Channeled PI/WD Claims), Class 8 (Opt-Out Insured PI/WD Claims), and Class 9 (Channeled Indirect Claims) of and from any and all Causes of Action based on or relating to, or in any manner arising from, in whole or in part, any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between the Debtor and any such Holder, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation or implementation thereof, the pursuit of Plan confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing; provided, however, that the releases set forth in this Article IV.B.8 shall not, and shall not be construed to: (a) release any post-Effective Date obligations under the Plan Documents or any document, instrument, or agreement executed to implement the Plan; (b) impair any recoveries that may be sought with respect to any Insurance Actions; or (c) modify, reduce, impair or otherwise affect the ability of any Consenting Claimants to recover from the Trusts in accordance with the Plan and the Trust Documents.

9. <u>Release of Estate Causes of Action Against the Released Parties</u>

As of the Final Payment Date, except for the claims or theories of recover or remedies distributed to or retained by Holders of Opt-Out GUC Claims, Holders of Opt-Out PI/WD Claims, and Holders of Opt-Out Indirect Claims, and except for the rights that remain in effect from and after the Effective Date to enforce the Plan and the Confirmation Order, for good and valuable consideration, the adequacy of which is hereby confirmed, pursuant to sections 105(a) and 1123(b) of the Bankruptcy Code and Bankruptcy Rule 9019, each Released Party shall be, and shall be deemed to be, expressly, conclusively, absolutely, unconditionally, irrevocably, and forever released and discharged by the Debtor, its Estate, and each of their respective successors or assigns, including the Trusts, of and from any and all Estate Causes of Action based on or relating to, or in any manner arising from any act, omission, transaction, event, or other circumstance taking place or existing on or before the Effective Date in connection with or related to the Debtor, the Estate, their respective current or former assets and properties, the Chapter 11 Case, the Plan of Divisional Merger, the Payment Agreement, any Claim or Interest that is treated by the Plan, the business or contractual arrangements between one or both of the Debtor and any Released Party, the restructuring of any Claim or Interest that is treated by the Plan before or during the Chapter 11 Case, any of the Plan Documents, or any related agreements, instruments, and other documents created or entered into before or during the Chapter 11 Case or the negotiation, formulation, preparation, or implementation thereof, the pursuit of confirmation, the administration and implementation of the Plan, the solicitation of votes with respect to the Plan, the distribution of any property under the Plan, or any other act or omission, transaction, agreement, event, or other occurrence taking place on or before the Effective Date related or relating to the foregoing. Notwithstanding anything to the contrary in the foregoing, the releases set forth in the Plan shall not be construed to release any Insurance Actions or any post-Effective Date obligations under the Estate Party Settlement or any document, instrument, or agreement executed to implement the Estate Party Settlement. If, following the Final Payment Date, any