Jason S. Brookner (Texas Bar No. 24033684)
Aaron M. Kaufman (Texas Bar No. 24060067)
Lydia R. Webb (Texas Bar No. 24083758)
Emily F. Shanks (Texas Bar No. 24110350)
**GRAY REED**
1601 Elm Street, Suite 4600
Dallas, TX 75201
Telephone: (214) 954-4135
Facsimile: (214) 953-1332
Email:     jbrookner@grayreed.com
           akaufman@grayreed.com
           lwebb@grayreed.com
           eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**FORT WORTH DIVISION**

| | | |
|---|---|---|
| In re: | § | Chapter 11 |
| | § | |
| TOMMY'S FORT WORTH, LLC., *et al.*,[1] | § | Case No. 24-90000 (ELM) |
| | § | |
| Debtors. | § | (Jointly Administered) |
| | § | |

**TRUSTEE'S SUPPLEMENTAL REPLY IN SUPPORT OF**
**TRUSTEE'S FIRST AMENDED JOINT CHAPTER 11 PLAN**

Mark E. Andrews, as the chapter 11 trustee (the "Trustee") appointed in the above-captioned chapter 11 bankruptcy cases of Tommy's Fort Worth, LLC and its debtor affiliates (collectively, the "Debtors"), respectfully states the following (this "Supplemental Reply") in

---

[1] The Debtors in these chapter 11 cases, along with the last four digits of each Debtor's federal tax identification number, are: Tommy's Fort Worth, LLC (3473); Tommy's Holding Company, LLC (2662); Tommy's Grand Rapids, LLC (9224); Tommy's Castaic, LLC (7501); Tommy's Lewisville, LLC (4750); High Country Watersports, LLC (6160); Walloon Lake Village Marina, LLC (0277); MKB Florida Holdings, LLC (5698); Tommy's Detroit, LLC (5242); Tommy's California Fresno, LLC (8597); Tommy's Phoenix, LLC (3036); Tommy's Las Vegas, LLC (7721); Tommy's Chattanooga, LLC (0839); Tommy's California Ventura, LLC (5149); Tommy's Rancho Cordova, LLC (1070); Tommy's Stockton, LLC (1338); and Tommy's Knoxville, LLC (8052).

4905-1218-9523

further support of the *Trustee's First Amended Joint Chapter 11 Plan* [Docket No. 879, as modified by Docket No. 935-1] (as modified, amended, or supplemented from time to time, the "Plan"),[2] and in response to the objection filed by the Borisch Parties (the "Borisch Objection").[3]

## Introduction and Background

1. The Debtors commenced these cases by filing voluntary petitions on May 20, 2024 (the "Petition Date"). The Trustee was appointed weeks later on June 18, 2024. In the year since the Trustee's appointment, the Trustee has liquidated the Debtors' inventory of hundreds of boats. With M&T Bank's consent, the Trustee has paid millions of dollars in sales taxes, customer refunds, and other necessary administrative costs to maximize the value of the Debtors' assets. The Trustee has resolved most of the Debtors' customer complaints, has resolved the Debtors' prepetition lawsuit against Malibu Boats, and has negotiated a plan that is overwhelmingly supported by the Debtors' non-insider creditors, including the Committee, customers, trade creditors, and M&T Bank.

2. The initial plan and disclosure statement were approved for solicitation purposes on May 1, 2025. The solicitation materials made clear that claims against the Borisch Parties were not being released. For example, at the Court's request, the Trustee included a two-page summary of the plan with the Notice of Confirmation Hearing,[4] which stated the following:

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to such terms in the Plan. The Trustee incorporates by reference the *Trustee's Omnibus Reply in Support of Trustee's First Amended Joint Chapter 11 Plan* [Docket No. 937] (the "Omnibus Reply"), filed on June 9, 2025.

[3] *See* Docket No. 923.

[4] *See* Docket No. 884.

> To be clear, claims and causes of action against insiders and affiliates such as Matthew A. Borisch and his related companies are not released under this Plan. Rather, such claims and causes of action are expressly reserved as Retained Causes of Action under the Plan and will be Assigned Causes of Action assigned to the Prepetition Lender M&T Bank. The proceeds of such litigation, if any, shall be the sole property of the Prepetition Lender.

3. Indeed, the term "Released Party" clearly excluded the Borisch Parties in the original plan. Despite these clear and unequivocal statements throughout the solicitation materials, the Borisch Parties contend (inexplicably) that the Trustee and M&T Bank intended to release them under the original plan.

4. On June 6, 2025, after the initial objection and voting deadline, but before the initial date set for confirmation, the Trustee made three clarifying modifications to the Plan as they relate to the Borisch Parties (the "<u>Plan Modifications</u>"):

   i. The definition of "Consenting Creditor" in Article I, Paragraph 27:

> 27. *Consenting Creditors* means collectively the following, in each case in its capacity as such with each being a "*Consenting Creditor*": (a) all holders of Claims or Equity Interests that vote to accept or are deemed to accept the Plan <u>and</u> who do not check the box on the applicable Ballot to affirmatively opt out of the Third-Party Releases; and (b) all holders of Claims or Equity Interests that abstain from voting on the Plan, vote to reject the Plan, or are deemed to reject the Plan <u>and</u> who do not (i) check the box on the applicable Ballot to affirmatively opt out of the Third-Party Releases or (ii) object to the Plan in respect of the Third-Party Releases<s>.</s> <u>; provided, however, that the Borisch Parties shall not be "Consenting Creditors."</u>

   ii. The definition of "Releasing Parties" in Article I, Paragraph 84:

> 84. *Releasing Parties* means collectively the following, in each case in its capacity as such with each being a "*Releasing Party*": (a) the Debtor; (b) the Trustee; (c) the Committee; (d) the Creditor Trustee; and (e) Consenting Creditors<s>.</s><u>; provided, however, that the Borisch Parties shall not be "Releasing Parties."</u>

   iii. The Third-Party Release provision in Article X.D:

> Notwithstanding anything contained herein to the contrary, the foregoing releases do not release (i) any obligations of any party under the Plan or any document, instrument, or agreement executed to implement the Plan, or (ii) the rights of holders of Allowed Claims to receive Distributions under the Plan. <u>Furthermore, notwithstanding anything contained herein to the contrary, nothing in this section X.D shall apply to any of the Borisch Parties. For the avoidance of doubt, the Borisch Parties are expressly excluded from the definitions of Consenting Creditors, Released Parties, and Releasing Parties, the intent of the Trustee being that the Borisch Parties are neither giving nor receiving any releases under this Plan.</u>

3

5. Pursuant to a scheduling order entered on June 11, 2025,[5] the initial confirmation hearing was adjourned from June 13, 2025, to July 8, 2025, and the Court granted the Borisch Parties additional time to take discovery, amend their ballots, and file objections to the Plan. The Borisch Objection raises four primary concerns:[6]

    i. First, the Borisch Parties contend that the Plan, as modified through the above Plan Modifications, does not satisfy section 1129(a)(3)'s requirement of "good faith" because the Plan unfairly favors M&T Bank and other creditors, while disfavoring the Borisch Parties. Borisch Objection, ¶¶ 23–35.

    ii. Second, the Borisch Parties contend that the Plan, as modified by the Plan Modifications, violate section 1123(a)(4)'s requirement of equal treatment, because the Borisch Parties were denied the opportunity to "not to opt out" and obtain a release from the Trustee and M&T Bank. Borisch Objection, ¶¶ 13, 15, 20, 29.

    iii. Third, the Borisch Parties contend that the Plan cannot satisfy cramdown under section 1129(b)(2), because the Plan unfairly discriminates against them by denying their right "not to opt out." Borisch Objection, ¶¶ 36–37.

    iv. Fourth, the Borisch Parties contend that the prior version of the plan should be confirmed, but confirmation of the actual Plan (as modified by the Plan Modifications) must be denied. Borisch Objection, ¶ 38.

6. This Supplemental Reply will address each point in turn below. In short, the Court can overrule the Borisch Objection on the record to be presented at the Confirmation Hearing.

7. The evidence at the hearing will show that the Trustee spent several weeks working directly with Mr. Borisch to bring him to the table for settlement discussions before filing the Plan. Mr. Borisch knew (or should have known) from these discussions that a

---

[5] Docket No. 945

[6] This summary is in no way intended to mischaracterize the Borisch Objection but is, instead, the Trustee's best efforts to understand the bases for the Borisch Parties' opposition to the Plan. If there were additional arguments intended to be raised in the Borisch Objection that are not covered by this summary, the Trustee reserves the right to respond to them at the Confirmation Hearing.

"walk away" release was a non-starter for M&T Bank. He nevertheless declined to meet M&T Bank's preconditions for further settlement discussions, leaving the Trustee with no choice but to preserve claims against the Borisch Parties under the Plan.

8. The legal arguments raised by the Borisch Parties are also without merit. Whether the Trustee offers to settle with the Borisch Parties or not has no bearing on whether the Plan satisfies section 1123(a)(4). *See In re Adelphia Commc'ns Corp.*, 368 B.R. 140, 251 (Bankr. S.D.N.Y. 2007) ("The exculpation and release provisions have no bearing on the Plan's treatment of claims. Equal treatment of claims is all that is required by section 1123(a)(4) of the Bankruptcy Code."). The fact that the Trustee chose to settle with some, but not all, creditors in the Plan does not mean that the Plan violates section 1123(a)(4), especially given the Trustee's pre-filing, albeit unsuccessful, attempts to negotiate a settlement with Mr. Borisch. *See In re Mallinckrodt PLC*, 639 B.R. 837, 862 (Bankr. D. Del. 2022) ("[T]he Pension Trust and the Strougo Plaintiffs had the same opportunity as the Shenk Plaintiffs to reach a settlement and their failure to do does not mean Debtors treated them unequally. Therefore, the fact that Debtors settled with some holders of Class 13 claims does not result in unequal treatment in violation of Section 1123(a)(4) of the Bankruptcy Code.").

9. For the same reasons, the Court can also overrule the Borisch Parties' objection to cramdown. The Plan is overwhelmingly accepted by non-insider creditors in Classes 2, 4, and 5. Of the voting classes, only Class 6 voted to reject the Plan. Class 6 is comprised solely of the insider Borisch Parties' claims arising from various guarantees. In other words, Class 6 is comprised of insider, co-debtors whose claims are subject to statutory subordination under section 509 of the Bankruptcy Code. The Borisch Parties have different liabilities to the Estates and other creditors like M&T Bank. Thus, the Trustee can readily show good faith and rational

4905-1218-9523

reasons to classify and treat the Borisch Parties' claims separately, consistent with the Bankruptcy Code and applicable public policies. To the extent the Borisch Parties call this discrimination, it is not so "unfair" as to "run rampant over [their] rights" as creditors. *In re Tribune Co.*, 972 F.3d 228, 242 (3d Cir. 2020); *see also Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc)*, 622 F.2d 872, 879–80 (5th Cir. 1980).

10. Finally, while the Borisch Parties ask the Court to confirm the "solicitation version" of the Plan, no such plan is before the Court. By operation of section 1127(a) of the Bankruptcy Code, the Plan, as modified by the Plan Modifications, is the only plan before this Court. The Borisch Parties offer no authority for this Court to confirm a plan that is not properly before it.

## Argument and Authorities

### I. The Plan Is Filed in Good Faith, Consistent with 11 U.S.C. § 1129(a)(3).

11. "The generally applicable test for good faith under section 1129(a)(3) is that the plan has been proposed with the legitimate and honest purpose to reorganize and has a reasonable hope of success." *In re Village at Camp Bowie I, L.P.*, 454 B.R. 702, 709 (5th Cir. 2011) (quoting *Brite v. Sun Country Dev., Inc. (In re Sun Country Dev., Inc.)*, 764 F.2d 406, 408 (5th Cir. 1985)) (cleaned up). The Court can find, based on the record in this case, that the Trustee has proposed the Plan with the honest purpose of liquidating the Debtors' assets and distributing them in an equitable manner, consistent with the Bankruptcy Code. Based on a compromise with M&T Bank, the Plan offers to use an additional $4 million of M&T Bank's cash collateral (i.e., the Contributed Cash Collateral) to pay allowed administrative expense claims and to fund reserves for additional payments to priority tax claimants, priority non-tax

claims, customer claimants, and general unsecured claimants.[7] In exchange for this compromise, M&T Bank will receive, among other things, the remaining cash held by the Trustee, including the Malibu Settlement Payment, as well as an assignment of certain Retained Causes of Action (namely, the Causes of Action against the Borisch Parties).

12.     The Plan is the result of extensive negotiations with M&T Bank and the Committee, with input from several creditors constituencies, including several Class 4 customer claimants. As the record will show at the Confirmation Hearing, the Trustee did not exclude the Borisch Parties from these discussions. Indeed, the Trustee spent several weeks and months working with Mr. Borisch in an effort to bring him to the table in the plan discussions. Through the Trustee, M&T Bank communicated certain preconditions for its willingness to attend a global mediation or settlement conference with Mr. Borisch. After weeks of discussions with Mr. Borisch and his counsel, Mr. Borisch indicated his inability or unwillingness to meet these preconditions, leaving the Trustee with no choice but to proceed with the plan process, which would maintain the status quo as to the Borisch Parties.

13.     Unlike other creditors in these cases, Mr. Borisch's position is unique:

  a.    Mr. Borisch has direct exposure to M&T Bank on account of his personal guaranty (as well as whatever direct counterclaims he may assert against M&T Bank);

  b.    the Estates have claims against the Borisch Parties based on their management of, and prepetition transfers from, the Debtors; and

  c.    all claims asserted by the Borisch Parties (other than Mr. Borisch's disputed $35 million secured Class 3 claim) arise from guarantees and, as such, are subject to statutory subordination and subrogation under section 509 of the Bankruptcy Code.

---

[7] *See Stipulation and Agreed Order Fixing the Amount of Certain Plan Reserves* [Docket No. 1004] (increasing the amount of plan reserves from approximately $2.9 million to approximately $4 million).

14.     Under the circumstances, the Trustee has given the Borisch Parties the same (or better) opportunities to participate in negotiations over potential releases under a plan. The Borisch Parties simply declined to meet the conditions necessary to take advantage of these opportunities, hence the Trustee's decision to file a plan that expressly preserved such claims.

15.     As to the Plan Modifications, the Court can agree that these are not material or inconsistent with the solicitation materials previously approved. The disclosure statement and ballot forms made clear that the Borisch Parties would not receive releases under the Plan. The evidence will show that Mr. Borisch was aware (or should have been aware) that pre-filing discussions did not result in a global settlement between the Borisch Parties and M&T Bank. Thus, it should come as no surprise to Mr. Borisch that M&T Bank would not support a plan that released him from his obligations under his personal guaranty to M&T Bank, regardless of whether the Borisch Parties contend the prior language was intentional or inadvertent.

16.     The "good faith" standard is considered in light of "the totality of circumstances surrounding the establishment of a Chapter 11 plan." *In re Sun Country Dev., Inc.*, 764 F.2d at 408; *see also Hanson Permanente Cement, Inc. v. Kaiser Gypsum Co., Inc. (In re Kaiser Gypsum Co., Inc.)*, 134 F.4th 185, 194 (4th Cir. 2025) ("And while we do not go so far as to say compliance with the objectives of the Code conclusively establishes good faith, we agree it provides strong evidence of that standard being met. Still, in determining whether a plan is consistent with these objectives and purposes, courts must consider the totality of the circumstances.") (collecting cases).

17.     While the Borisch Parties do not expressly object to the Plan's classification as being "bad faith," the Trustee can readily show a rational reason to classify the Borisch Parties' guaranty claims separately from other customers and trade creditors. Not only are such claims

8

subordinated under section 509 of the Bankruptcy Code, but, also, the Borisch Parties have materially different liabilities to the Estates and their largest creditor, M&T Bank. Under well-standing Fifth Circuit case law, there is a valid basis for separate classification of the Borisch Parties' claims. *See Brinkley v. Chase Manhattan Mortgage & Realty Trust (In re LeBlanc)*, 622 F.2d 872, 879–80 (5th Cir.1980) (decided under the Bankruptcy Act); *see also In re Heritage Org., L.L.C.*, 375 B.R. 230, 299–303 (Bankr. N.D. Tex. 2007) (following *LeBlanc* and concluding that "an insider's superior knowledge of the risks involved in doing business with the debtor, along with the opportunity to protect himself, could suffice as a basis for separate classification").

18. Under the circumstances, the Court can readily find that the Trustee's efforts to propose the Plan and Plan Modifications have been made in good faith, with the legitimate purpose of making meaningful distributions to creditors in these cases. There is no basis for this Court to conclude that the Trustee is acting nefariously by modifying the Plan, is "doing the bidding" of M&T Bank, or is seeking to discriminate against the Borisch Parties in an unfair manner such as to justify denial of confirmation that would see millions of dollars paid back the Debtors' third-party creditors, including taxing authorities, employees, customers, and trade creditors. The Borisch Objection can be overruled on this ground.

**II. The Plan Provides Equal Treatment Within Classes 3 and 6, Consistent with 11 U.S.C. § 1123(a)(4).**

19. The Borisch Parties next contend that, because other creditors are receiving releases under the Plan, it would be inequitable to deny the Borisch Parties the same opportunity "not to opt out." This objection can be overruled for several reasons.

9

20.     First, as discussed above, it is factually inaccurate to say that Mr. Borisch and the other Borisch Parties were denied an opportunity to negotiate for releases from the Trustee and M&T Bank. As noted above, the Trustee spent months trying to bring Mr. Borisch to the table.

21.     Second, as other courts have recognized, releases under a plan have no bearing on whether the plan provides equal *treatment* for purposes of section 1123(a)(4). *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 251 ("The exculpation and release provisions have no bearing on the Plan's treatment of claims. Equal treatment of claims is all that is required by section 1123(a)(4) of the Bankruptcy Code."); *see also In re Quigley Co., Inc.*, 377 B.R. 110, 119 (Bankr. S.D.N.Y. 2007) (refusing to find, as a matter of law, that a plan's treatment of non-settling creditors differently from settling creditors was inequitable); *In re Mallinckrodt PLC*, 639 B.R. at 862 (overruling similar objections and confirming a plan that included settlements with some, but not all, creditors within a particular class). Here, the record demonstrates that the Borisch Parties had the same, if not better, opportunities to settle with M&T Bank and the Trustee. The fact that the Trustee has proposed a plan that did not offer a release for Borisch Parties does not make their treatment "inequitable" or "unfair." They will still receive the same distributions as other similarly situated creditors under the Plan, and their rights against the Estates and M&T Bank are preserved.

22.     Third, with the exception of Mr. Borisch's disputed $35 million Class 3 secured claim, all the Borisch Parties' claims are classified in their own Class 6. Mr. Borisch does not object to the Plan's classification under section 1122. *See* Borisch Objection, ¶ 18 ("Here, the trustee has no classification issues to obtain an accepting class because he knew that M&T Bank would provide him with an accepting class."). All Class 6 creditors are receiving the same treatment in compliance and satisfaction of section 1123(a)(4).

4905-1218-9523

23. Similarly, Mr. Borisch's Class 3 Claim is receiving the exact same treatment as all other Class 3 creditors. The Plan provides:

> C. **Class 3 – Other Secured Claims.**
>
> Except to the extent a holder of an Allowed Other Secured Claim agrees to a different treatment, each holder of an Allowed Other Secured Claim shall at the option of the Trustee or Creditor Trustee (as applicable), upon consultation with the Committee, receive either of the following treatments on the Effective Date or as soon as reasonably practicable thereafter: (i) payment in full, in Cash; (ii) the collateral securing such Allowed Other Secured Claim; or (iii) such other treatment that renders such Allowed Other Secured Claim unimpaired in accordance with section 1124 of the Bankruptcy Code.

*See* Plan, art. III.C.

24. The Plan Modifications did not change this treatment. As the holder of a Class 3 Claim, Mr. Borisch will receive the same treatment on account of his Class 3 claim as all other similarly situated Class 3 Claim holders. The release provisions do not factor into the treatment analysis for purposes of section 1123(a)(4). *See In re Adelphia Commc'ns Corp.*, 368 B.R. at 251.

25. Mr. Borisch contends, citing *In re Mesa Air Group, Inc.*, 2011 Bankr. LEXIS 3855 at *19 (Bankr. S.D.N.Y. Jan. 20, 2011), that his denial of the opportunity "not to opt out" constitutes inequitable treatment in violation of section 1123(a)(4). His reliance upon *Mesa* is misplaced.

26. The quote attributed to *Mesa* in Paragraph 17 of the Borisch Objection is actually a direct quote from the *Dana Corp.*, with an additional citation to *Quigley*. The full context of this statement from the *Dana Corp.* is as follows:

> ***Likewise, the fact that some claimants have settled while others have not does not, by itself, indicate unequal treatment***. The key inquiry under § 1123(a)(4) is not whether all of the claimants in a class obtain the same thing, but whether they have the same opportunity.

11

*Ad Hoc Comm. of Personal Injury Asbestos Claimants v. Dana Corp. (In re Dana Corp.)*, 412 B.R. 52, 62 (S.D.N.Y. 2008) emphasis added).

27. The fact that the Trustee seeks to preserve claims by and against the Borisch Parties is not inequitable treatment. The cases addressing this issue do not support Mr. Borisch's view of the law.

28. In *Mallinckrodt*, the plan offered one class of creditors an opportunity to either settle claims in exchange for payment from insurance policy proceeds, or opt out and litigate claims (which would potentially have been paid out of the same policies). *See In re Mallinckrodt PLC*, 639 B.R. at 862. The Court held that the fact that some creditors had already agreed to a settlement did not result in unequal treatment for the non-settling claimants. *Id*. The fact that the non-settling claimants retained their rights meant that they had the same opportunity as others.

29. The facts here are similar to those in *Mallinckrodt*. The Trustee has chosen to settle with M&T Bank and offer settlements to third-party creditors whose positions are readily distinguishable from the Borisch Parties' position as insiders, guarantors, and recipients of significant prepetition transfers. The fact that the Plan offers to settle with third-party creditors but not the insider Borisch Parties is not a basis to conclude that the Plan provides disparate treatment in violation of section 1123(a)(4).

30. Similarly, in *Quigley*, the plan treated all PI claimants in the same class, but certain non-settling claimants were receiving different treatment. At the disclosure statement hearing, the Court held that it could not conclude, as a matter of law, that such treatment was inequitable. The issue was deferred to confirmation. *See In re Quigley Co., Inc.*, 377 B.R. at 119. On the facts of this case, the Court can readily find that the Borisch Parties have received

4905-1218-9523

the same—and, in some regards, an even better—opportunity to obtain releases under the Plan. The fact that the Plan does not offer them an opportunity to give or receive releases does not mean that they have received inequitable treatment.

31.  Courts finding that a plan violated section 1123(a)(4) have done so on distinguishable facts. In *In re AOV Industries, Inc.*, 792 F.2d 1140, 1152–54 (D.C. Cir. 1986), the plan forced an objecting creditor to release its direct claims against a third-party in order to obtain the pro rata distribution offered under the plan. The Court held that equality of treatment meant all creditors should provide similar consideration for similar distributions. Because the objecting creditor would have had to release its direct claims against a third-party to receive the same distributions as similarly situated creditors, the Court held that the objecting creditor was not receiving the same treatment under the plan, in violation of section 1123(a)(4). *Id.*[8]

32.  The facts presented here are the exact opposite of what happened in *AOV Industries*. In this case, the Plan does not _force_ the Borisch Parties to release their claims. On the contrary, the Plan proposes to provide the Borisch Parties the same distributions as similarly situated creditors _without_ requiring them to release their claims against M&T Bank or others. This is, by definition, equitable treatment in compliance with section 1123(a)(4).

33.  In summary, the Borisch Parties' argument that they are not receiving equitable treatment is without factual or legal merit. The Borisch Objection may be overruled on this ground.

---

[8] Court are divided on this rule. This Court need not decide whether to adopt it, because the facts of this case are readily distinguishable, rendering this line of authority inapplicable.

4905-1218-9523

**III.      The Plan Meets the Requirements for Cramdown of Classes 3 and 6, Consistent With 11 U.S.C. § 1129(b)(2).**

34.     The Borisch Parties contend that the Plan cannot be crammed down on them under section 1129(b)(2), because the Plan discriminates against them unfairly. Because the Borisch Parties do not dispute that Class 3 is deemed to accept the Plan, this argument would apply, if at all, to the Borisch Parties' Class 6 claims.

35.     First, the Plan satisfies the "fair and equitable" requirement, because no junior classes of creditors (i.e., equity) will receive distributions under the Plan. Second, the argument that the Plan discriminates unfairly is without merit. As Judge Ambro, writing for the Third Circuit, succinctly explained in *Tribune*: "[Y]ou can treat differently (discriminate) but not so much as to be unfair. There is, as is typical in reorganizations, a need for flexibility over precision. The test becomes one of reason circumscribed so as not to run rampant over creditors' rights." *In re Tribune Co.*, 972 F.3d 228, 242 (3d Cir. 2020).

36.     In this case, the Plan's denial of the Borisch Parties' ability "not to opt out" of the Third-Party Releases may seem discriminatory to the Borisch Parties, but they cannot genuinely contend that such "discrimination" is "unfair." The Borisch Parties are insiders whose claims are contingent upon them paying the underlying creditors in full. Section 509 of the Bankruptcy Code already provides for subordination of these claims. The Borisch Parties also received or otherwise benefited from significant amounts of prepetition transfers from the Debtors, as Mr. Borisch acknowledged when he signed the Debtors' statements of financial affairs. Mr. Borisch is also a guarantor on the Debtors' obligations to M&T Bank. Despite the Trustee's efforts to bring the parties together for a global resolution of these disputes, the Borisch Parties were unwilling to meet M&T Bank's preconditions for a settlement conference or mediation. The fact that the Plan does not offer them the opportunity to obtain a "walk away" release for no

14

additional consideration is by no means "unfair" discrimination, if it can be considered discrimination at all.

37. As a final point, the Borisch Parties' reliance on the *Tehum Services, Inc.* case is misplaced. *See* Borisch Objection, ¶ 30. The debtor in that case was the former operator of a prison health care company that completed a prepetition divisional merger through which the go-forward operational assets and liabilities had been allocated to non-debtor related parties (which were owned and/or managed by insiders). The debtor had been allocated some cash and the non-operating assets and liabilities of the pre-merger entities. The key creditor constituencies were trade vendors and hundreds of tort claimants, represented by two statutory committees. After nearly two years and multiple rounds of mediation, the debtor and the committees negotiated a global settlement with the insiders and related companies. The insiders placed conditions on their willingness to fund the settlement—the plan required at least 95% of the tort victims to "not opt out" of the third-party releases. As Judge Lopez held in confirming the plan, the third-party releases were indeed essential to the settling insiders for their willingness to fund the settlement. However, despite the Borisch Parties' misguided interpretation of that plan, Judge Lopez did not hold that creditors had a fundamental right to be released by the debtor and the settling insiders.

38. By comparison, the key settling party under this Plan is M&T Bank, with its agreements to provide nearly $4 million of additional Contributed Cash Collateral. Like the settling insiders in *Tehum*, M&T Bank does require third-party releases from various creditors in these cases, but unlike the settling parties in *Tehum*, M&T Bank does not require releases from the Borisch Parties. On the contrary, M&T Bank's willingness to support confirmation and

15

consummation of the Plan is conditioned upon the preservation and assignment of estate causes of action against the Borisch Parties.

39. In short, the Borisch Parties do not have a "right" to be released under the Plan, and there is no authority for the proposition that insiders like the Borisch Parties have a fundamental right to obtain a third-party release from settlement creditors like M&T Bank. The Plan's denial of this opportunity does not "discriminate unfairly" against the Borisch Parties' Class 6 claims in a manner that would warrant denial of cramdown under section 1129(b)(2) of the Bankruptcy Code. The Borisch Objection can be overruled on this basis.

### IV. The Plan, as Modified, Is the Only Plan Under Consideration.

40. Finally, the Court can overrule the Borisch Objection that the old plan should be confirmed. Under the plain language of section 1127(a), once a proponent files a modification to the plan before confirmation, the modified plan becomes the "plan." In other words, the so-called "solicitation plan" is no longer before this Court. The Trustee is only seeking confirmation of the Plan, as modified.

WHEREFORE, the Trustee respectfully requests that the Court enter an order confirming the Plan, overruling the Borisch Objection, and granting such other relief as the Court deems appropriate under the circumstances.

Respectfully submitted this 7th day of July, 2025.

**GRAY REED**

By:   */s/ Aaron M. Kaufman*
Jason S. Brookner
Texas Bar No. 24033684
Aaron M. Kaufman
Texas Bar No. 24060067
Lydia R. Webb
Texas Bar No. 24083758
Emily F. Shanks
Texas Bar No. 24110350
1300 Post Oak Boulevard, Suite 2000
Houston, Texas 77056
Telephone: (713) 986-7127
Facsimile: (713) 986-5966
Email: jbrookner@grayreed.com
           akaufman@grayreed.com
           lwebb@grayreed.com
           eshanks@grayreed.com

*Counsel to Mark E. Andrews,*
*Chapter 11 Trustee*

## Certificate of Service

I certify that on July 7, 2025, I caused a copy of the foregoing document to be served by the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas to all parties authorized to receive electronic notice in this case.

           */s/ Aaron M. Kaufman*
           Aaron M. Kaufman

4905-1218-9523